IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| CHAD MCCUNE, et al. | § |
| | § |
| PLAINTIFFS, | § |
| | § |
| V. | § Case No 5:2009cv00107 |
| | § |
| GRACO CHILDREN'S PRODUCTS, INC., et al., | § |
| | § |
| DEFENDANTS. | § |

**DEFENDANT GRACO CHILDREN'S PRODUCTS, INC.'S OPPOSED MOTION
TO COMPEL DOWNLOAD OF RESTRAINT CONTROL MODULE DATA**

Defendant Graco Children's Products Inc. ("Graco") respectfully moves this Court for an order compelling access to data stored in the Restraint Control Module ("RCM") that is a component of the subject Ford Explorer SportTrac involved in this car/tractor accident. In support of its motion, Graco states as follows:

### INTRODUCTION

On July 29, 2007, Carmen McCune was driving her 2005 Ford Explorer Sport Trac southbound on US 65 near Damascus, Arkansas when she drove into the back of a John Deere tractor traveling ahead of her in her lane. She apparently did so without applying the brakes or attempting to steer out of the way. *See* Test. of J. Cummings at 10-12 (attached as Ex. A) (testifying that she was traveling behind Ms. McCune at the time of the accident and did not observe brake lights or any evasive steering); Test. of W. Cummings at 9 (attached as Ex. B) (same). The collision caused the tractor to flip over and pushed it 163 feet forward. *See* Test. of Trooper R. Hitchock at 43 and photograph of tractor at scene of accident (attached as Ex. C). The Ford SportTrac sustained severe damage as a result. *See* Ex. D (photograph of Sport Trac at scene of accident).

The forces, speeds, and other data about the dynamics of the crash will be important to fundamental issues in this case, including determining the cause of J.M.'s injuries. Graco has asserted an affirmative defense that the cause of the accident and J.M.'s resulting injuries were Ms. McCune's negligent driving. Information regarding this crash is available for download from the Ford Explorer's RCM, which records certain data regarding the forces experienced by the vehicle at the time of the crash. To access this data, the RCM must be downloaded and the data decoded using proprietary software and algorithms.

The RCM on the McCune vehicle was manufactured by Autoliv ASP, Inc. ("Autoliv"), a non-party to this case. Autoliv considers the source code, data decoding software and algorithm information necessary to download and interpret the RCM data to be highly proprietary. *See* C. Boran Aff., ¶5 (attached as Ex. E). Neither party to this case, nor their experts, is able to download the RCM data without assistance from Autoliv. Graco has therefore coordinated with Autoliv to perform the download, and has requested that the subject vehicle—now in possession of plaintiffs' counsel in a warehouse near their Kansas City office—be made available to Autoliv for downloading of the data. *See* H. Oertle October 25, 2010 Email (attached as Ex. F). Graco has agreed to several of plaintiffs' requests regarding that procedure, including that plaintiffs may be present during the downloading process; that the downloading process may take place at a neutral third-party site or at plaintiffs' counsel's warehouse instead of at Autoliv's offices; and that plaintiffs receive a copy of the same raw data and decoded end product from Autoliv at the same time Graco does. *Id.*

However, Plaintiffs are insisting on a list of additional conditions and are objecting to the download taking place at all unless all those conditions are met. *See* R. Douglas Gentile November 4, 2010 Email (attached as Ex. G). Many of these conditions are unreasonable or

impossible for Graco to satisfy because Graco is not in possession of Autoliv's proprietary decoding information plaintiffs insist on having. Autoliv will not agree to produce much of the requested information because doing so would compromise the confidentiality of Autoliv's proprietary business information. *See* Boran Aff., ¶¶ 7-9 (Ex. E). The effect of plaintiffs' demands is therefore to block Graco's ability to discover this important data about the subject collision, which plaintiffs claim "belongs to them". *See* R. Douglas Gentile October 14, 2010 Email (included as part of Ex. F) ("We begin with two incontrovertible facts: (i) the module belongs to the plaintiffs and (ii) any data contained within the module is the plaintiffs' property.").

Among the conditions plaintiffs seek to impose are the production of 14 separate categories of documents, including:

- Every document necessary for a non-Autoliv employee to access, read and interpret the RCM data;
- The memory map or other documents that identify the locations on the RCM which store data;
- The specifications for the RCM components; and
- Decoding documents used by Autoliv to decode downloaded data.

*See* Ex. G. Plaintiffs also insist that they be present at Autoliv during the decoding process and be permitted take photographs of that process while Autoliv decodes the data. Taken as a whole, these demands amount to a request for Autoliv's proprietary software, decoding algorithms and its trade secret information about how the RCM works. Graco is not in possession or control of the documents/information plaintiffs are demanding, and Autoliv will not agree to plaintiffs'

requests because of the threat they pose to Autoliv's intellectual property. *See* Boran Aff (Ex. E).

Because the RCM is uniquely able to afford objective data about the circumstances regarding the subject crash, and because the conditions plaintiffs seek to impose are unreasonable, the Court should compel plaintiffs to allow Graco to discover this information, and to allow Autoliv to perform a download of the RCM data, to decode that information without plaintiffs being present, and to provide the results simultaneously, and in identical form, to both plaintiffs and Graco, as set forth more fully below.

## ARGUMENT

The Federal Rules of Civil Procedure are accorded a broad and liberal treatment to affect their purpose of adequately informing civil litigants. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Federal Rule 34 "permit[s] entry upon designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Rule 26 provides that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

It is beyond dispute that the RCM data from the subject vehicle is reasonably calculated to lead to the discovery of admissible evidence in this matter. Indeed, numerous other courts have recognized the relevancy and admissibility of RCM data, and have compelled its discovery. *See, e.g., Padilla v. Price Toyota*, 2005 WL 6209494 at *4 (D. N.J. October 28, 2005) ("[I]n light of the fact that the black box data at issue is from the vehicle involved in this accident, and the liberality with which relevancy is construed at the discovery stage, the Court rejects Defendants' argument that Plaintiffs' requests are not reasonably calculated to lead to the

discovery of admissible evidence and finds that Plaintiffs have met their burden for production of the discovery [of RCM data]."); *Bachman v. General Motors Corp.*, 776 N.E.2d 262, 289 (Ill. App. Ct. 2002) ("Records directly generated by the computer itself are generally admissible as representing the tangible result of the computer's internal operations.") (citation omitted); *Matos v. State*, 899 So.2d 403, 407 (Fl. Ct. App. 2005) ("The process of recording and downloading SDM data is not a novel technique or method. . . when used as a tool of automotive accident reconstruction, the SDM data is generally accepted in the relevant scientific field, warranting its introduction.").

While plaintiffs have insisted that this data "belongs to them" (*see* Ex. F), there can also be no claim that this data is privileged. There exists no rationale recognized by the Federal Rules or this Court that would serve as a basis for precluding Graco from discovering whatever data is available on the RCM.

Graco anticipates that plaintiffs will argue they are not blocking access to the RCM data, but rather insisting on certain conditions because they fear Autoliv may improperly collect or manipulate the data during the download and decoding process. At this juncture, however, the data has not even been collected. The data is plainly discoverable, and any questions regarding the validity and accuracy of the data, if they exist at all, cannot even be known until the collection of the data occurs. To the extent plaintiffs have concerns over whether the data is somehow corrupt or infirm, they will have the opportunity to raise those concerns when the time comes to determine the data's admissibility. The conditions plaintiffs seek to impose on the mere collection of the data are, however, unreasonable and because they are impossible for Graco to comply with, they effectively prevent access to the data completely. Further, there is

nothing about the protocol Graco proposes that fails to ensure that the RCM data will be collected accurately.

Other courts have rejected similar attempts by one party to control access to evidence unilaterally. *See, e.g., Mancuso v. v. D.R.D. Towing Co.,* 2006 WL 889383 at *2 (E.D. La. March 10, 2006) (compelling defendants to allow plaintiffs' experts to inspect the scene of the accident without defense experts being present to observe the inspections). The decoding documents plaintiffs seek as a condition precedent to Graco's accessing the RCM data are not documents or information within Graco's custody or control. They are uniquely within the control of the RCM's manufacturer, Autoliv, who will not disclose the requested information because of concerns regarding trade secrets and proprietary information. *See* Boran Aff (Ex. D).

Graco will never be in possession of the RCM, which will be returned to plaintiffs after Autoliv performs the download. Autoliv is not a party to this case and has no interest in the outcome of this case. Although Autoliv has agreed to perform the download because the subject RCM is an Autoliv product, Autoliv has no interest in the results. Autoliv will be asked only to download the data using its proprietary procedures and algorithms pursuant to the protocol set forth below, provide the results to both plaintiffs and Graco, simultaneously and in an identical form, and to do nothing else. Accordingly, there is no justification for the conditions plaintiffs seek to impose supposedly in the interest of preventing data tampering, destruction or manipulation by Graco or anyone else.

For those reasons, Graco requests that the Court order requiring plaintiffs to permit Autoliv to extract the RCM data according to the following protocol:

- Autoliv will depower the system by disconnecting the battery ground cable and waiting at least one minute.

- Autoliv will remove the center console from the Ford Explorer Sport Trac as set forth on Exhibit H ("Restraint Control Module Removal Protocol").
- Autoliv will remove the floor console from the Ford Explorer Sport Trac as set forth on Exhibit H.
- Autoliv will disconnect the large and small RCM electrical connectors in the manner set forth on Exhibit H
- Autoliv will remove the RCM.

Each of the foregoing steps will be photo documented, and representatives for plaintiffs and Graco may be present during this process.

- Autoliv will then download the data at either its offices, the warehouse where the RCM is currently stored, or a third-party site to be agreed upon by the parties. Plaintiffs may photograph the download process and take screen shots of that process. Plaintiffs will also be provided with the raw data downloaded from the RCM immediately after the download.
- Autoliv will then decode the data at its own offices without anyone from either party in this litigation present. It will provide a report regarding the decoded data to plaintiffs and to Graco simultaneously.
- The RCM will be returned to plaintiffs' counsel, and reinstalled in the vehicle, if plaintiffs so desire.

This protocol adequately protects the evidence from being corrupted or manipulated in any way, addresses Autoliv's concerns about its proprietary information, and allows both sides fair access to this important, and certainly discoverable, evidence.

## CONCLUSION

For the foregoing reasons, Defendant Graco Children's Products Inc. respectfully requests that the Court enter an order compelling plaintiffs to make the RCM module on the subject vehicle available for download, and for other such relief this Court deems just.

Respectfully submitted,

/s/ Heidi Oertle
Heidi Oertle

Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile

ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on January 13, 2011, she filed the foregoing document on all counsel of record via ECF.

/s/ Heidi Oertle<br>
Heidi Oertle

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Counsel have complied with Local Rule CV 7(h) in that local counsel for Graco Children's Products Inc., John Greer and met and conferred telephonically with counsel for plaintiffs, Darby Doan, at least three times over the last 60 days, with the last conference taking place on January 12, 2011. National counsel for Graco Children's Products Inc., Joseph Krasovec, also met and conferred with counsel for plaintiffs, R. Douglas Gentile, at least three times telephonically or in person in the last 60 days, as well as over email, with the last email exchange taking place between January 5, 2011 and January 12, 2011, and that counsel for plaintiffs will not agree to the relief sought in this motion.

/s/ Heidi Oertle<br>
Heidi Oertle