IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CHAD MCCUNE, et al. | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | Case No 5:2009cv00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS, INC., et al., | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANT GRACO CHILDREN'S PRODUCTS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Graco Children's Products Inc. ("Graco") respectfully moves this Court for entry of summary judgment in its favor and against plaintiffs on plaintiffs' claims for punitive damages, breach of express and implied warranty, and marketing defect, and as to all claims should the Court exclude certain opinions of plaintiffs' experts. In support of its motion, Graco submits the following memorandum of law, and its Statement of Undisputed Material Facts, filed simultaneously herewith.

**BACKGROUND**

This case arises from a July 29, 2007 accident in which Carmen McCune drove into the back of a John Deere tractor traveling at speeds in excess of 70 miles per hour, apparently while sending and receiving text messages on her cell phone. Her then four-year old son, J.M., was allegedly restrained in a Graco TurboBooster child restraint in the right rear seating position, and received severe injuries as a result of the accident.

Plaintiffs filed this suit on July 29, 2009, alleging that J.M.'s injuries resulted from design defects in the TurboBooster child restraint in which he was allegedly restrained at the time of the accident. They asserted claims for strict liability, negligence, and breach of implied and express

warranty. Plaintiffs' theory is, in part, that the TurboBooster's armrest design is defective and unreasonably dangerous because the armrest allegedly separated from the body of the TurboBooster during the subject accident.

Based on the undisputed facts of this case, Graco is entitled to summary judgment on plaintiffs' claim for punitive damages, on their breach of warranty claims, on their marketing defect claims, and on their claim that the armrest design is defective, should certain expert opinions be excluded by this Court.

## ARGUMENT

### I.     Legal Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986). To avoid summary judgment, the plaintiff "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Wright v. Ford Motor Co.*, 508 F.3d 263, 274 (5th Cir. 2007) (quotation omitted). Summary judgment is appropriate where the non-movant fails to make a showing sufficient to establish the existence of an element essential to his or her case. *Id.*

### II.    The Court Should Grant Summary Judgment For Graco on Plaintiffs' Punitive Damage Claims.

Plaintiffs seek to recover exemplary or punitive damages against Graco. *See* Third Am. Compl. at ¶39, 63(b) (Docket #52). To recover punitive damages, a plaintiff must prove by clear and convincing evidence that his injuries were caused by gross negligence, malice, or fraud. Tex. Civ. Prac. & Rem. Code § 41.003(a); *see also Munoz v. State Farm Lloyds of Texas*, 522

F.3d 568, 574 (5th Cir. 2008). In this case, plaintiffs have alleged gross negligence and malice. *See* Third Am. Compl. at ¶39. They are unable to prove either allegation based on the record in this case, however.

### A. Plaintiffs Cannot Demonstrate that Graco Acted with Gross Negligence.

A defendant's actions constitute gross negligence where it has actual, subjective awareness of the risk of injury suffered by the plaintiff, but nevertheless chose to proceed in conscious indifference to the rights, safety or welfare of others. Tex. Civ. Prac. & Rem. Code § 41.001(11); *see also Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 170-171 (Tex. 2005) (finding insufficient evidence to support an award of punitive damages). Evidence of simple negligence alone is not sufficient to establish gross negligence. *Id.* at 172. "[T]he Texas view of gross negligence contemplates something just short of intentional wrongdoing." *Woolard v. Mobil Pipe Line Co.*, 479 F.2d 557, 565 (5th Cir. 1973) (reversing award of punitive damages based on insufficiency of evidence). Even where a defendant has taken measures to avoid an accident which may, in retrospect, turn out to be inadequate, plaintiffs cannot sustain their burden of proof. *Id.* at 566.

There is no evidence in this record that rises to the level of gross negligence on the part of Graco in this case. The Graco TurboBooster, when used in the backless mode, consists of a plastic base on which the child sits. *See* Statement of Undisputed Material Facts ("SUMF") at ¶4. Once seated on the TurboBooster, the child is restrained by the vehicle's lap shoulder belt – the TurboBooster does not contain its own harness or belt system. *Id.* Two armrests on either side of the child provide, as their name suggests, places for the child to rest his/her arms. *Id.* The armrests also act as a guide to show the caregiver where to route the lap and shoulder belts

on the child. *Id.* Thus, the TurboBooster acts as a pre-crash positioner of the child in the vehicle's lap shoulder belt system, boosting the child up into a position similar to that of an adult using the same lap/shoulder belt. Once a collision begins, the vehicle's seat belts act to hold the child in place during an accident.

Plaintiffs' claim that Graco knew armrests could detach from the base is based on a tiny fraction of crash testing performed. Of the more than 300 crash tests performed by Graco on the TurboBooster, only nine of those tests exhibited an armrest separation. SUMF at ¶2. In contrast, on hundreds of tests, there was no arm rest separation at all. *Id.* Moreover, even in the tests where an armrest separated, the injury values—including head excursion and head and chest G's—measured were well below the federal standards, and the dummy always remained restrained by the lap-shoulder belt. *Id.*

Nonetheless, Graco undertook measures to strengthen the connection between the armrest and base by adding a screw. SUMF at ¶6. It did so in order to prevent the armrest from detaching and posing a potential safety hazard to an occupant inside the vehicle, and not because it had any awareness that a separation could cause the occupant to flex too far forward and sustain serious injuries. *Id.* at ¶7. "However inadequate these steps may appear in retrospect, they are nevertheless sufficient to negate a finding of an entire want of care" on the part of Graco. *Woolard*, 479 F.2d at 566.

Plaintiffs may argue that Graco took measures to avoid armrest separations because it was aware of a safety hazard associated with such an event. However, the evidence demonstrates that, at most, Graco was aware that the armrest had the potential to cause a minor injury as a loose object inside the car. *See* SUMF at ¶7. There is no evidence that Graco had actual knowledge that a child could experience injuries such as J.M. sustained here as a result of

-4-

an armrest separation during the crash. *See* SUMF at ¶¶5-9. Indeed, Graco performed more than 300 crash tests in which the observed injury values were well under the federal requirements set forth in Federal Motor Vehicle Safety Standard ("FMVSS") 213, the standard applicable to all child car seats, including the TurboBooster. *Id.* at ¶5. Independent testing by the National Highway Traffic Safety Administration ("NHTSA") reached the same results. *Id.* Graco had no reason to believe that an armrest detachment could produce serious injuries such as J.M.'s. This lack of knowledge further precludes plaintiffs' recovery of exemplary damages. *See Diamond Shamrock*, 168 S.W.3d at 172 (holding that plaintiff must demonstrate actual subjective awareness of the risk at issue to recover punitive damages).

Moreover, it is undisputed that J.M.'s injuries were caused not by being struck by the loose armrest during the accident, but rather by his upper body becoming unrestrained, which allowed his head and neck to flex too far forward. This lack of connection between the safety hazard of which Graco was aware and the cause of J.M.'s injuries further precludes plaintiffs from seeking punitive damages. *See Woolard*, 479 F.2d at 564 (finding that lack of proximate cause between the alleged grossly negligent conduct and the decedent's injuries was fatal to the claim for punitive damages).

### B. Plaintiffs Cannot Demonstrate that Graco Acted with Malice.

Texas law defines malice as "a specific intent by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code § 41.001(7). To establish malice, the plaintiffs must show that Graco's conduct involved an extreme risk of harm, and that Graco had actual awareness of the extreme risk. *KPH Consolidation, Inc. v. Romero*, 102 S.W.3d 135, 143 (Tex. Ct. App. – Houston 2003) (finding evidence insufficient to support finding of malice). Evidence of simple negligence is insufficient to prove either the subjective or objective

component of malice. *Id.*

As noted above, the lack of evidence of actual, subjective knowledge of an extreme hazard associated with armrest separation—instead of the much more minor hazard associated with the armrest becoming loose in the car after separation—is fatal to plaintiffs' ability to prove malice. *See KPH Consolidation*, 102 S.W.3d at 144 (The extreme risk requirement "is not satisfied if the defendant's conduct merely creates a remote possibility of serious injury; rather, the defendant's conduct must create the 'likelihood of serious injury' to the plaintiff."). Moreover, plaintiffs lack any evidence that Graco acted with the requisite specific intent to cause injury to J.M. Graco is accordingly entitled to summary judgment on plaintiffs' claim for punitive damages.

### III.   Graco is Entitled to Summary Judgment on Plaintiffs' Warranty Claims.

Plaintiffs have asserted claims for alleged breach of implied and express warranty. *See* Third Am. Compl. at ¶53-61 (Count III). Graco is entitled to summary judgment on Count III of plaintiffs' complaint because they cannot prove essential elements of those claims.

#### A.   Plaintiffs' Express Warranty Claim Fails Because They Cannot Demonstrate Reliance.

To prevail on their express warranty claim, plaintiffs must demonstrate that they relied on some affirmative statement by Graco that became part of the basis of the bargain, that Graco breached that warranty, and that plaintiffs suffered injury. *Ackerman v. Wyeth Pharmaceuticals*, 471 F. Supp. 2d 739, 744 (E.D. Tex. 2006) (granting summary judgment on express warranty claim based on lack of reliance); *Scott v. Dorel Juvenile Group*, __ F. Supp. 2d __, 2011 WL 778581 at *7 (N.D. Tex. March 7, 2011) (same). They cannot do so here.

Plaintiffs' Third Amended Complaint generally alleges that Graco made "numerous affirmations of fact or promises which related to the seat", and that Graco breached those

promises, but they fail to specify what those implied or express warranties consisted of. Third Am. Compl. at ¶55-56. Regardless of what specific warranties plaintiffs complain of, however, they are unable to demonstrate the requisite element of reliance. Plaintiffs Chad and Carmen McCune testified that they never saw the packaging or box in which J.M.'s TurboBooster came, and that they never read the instruction manual. *See* SUMF ¶¶ 14-15. Tina McCune, who purchased the booster seat, chose the seat because it had cup holders, because J.M. fit its height and weight requirements, and because the box stated that it complied with government standards. *Id.* at ¶12. Tina McCune could not recall reviewing any additional written statements about the TurboBooster at the time she purchased it. *Id*.

Thus, the only two statements on which Tina McCune relied were the height/weight limits of the seat and the TurboBooster's compliance with federal standards. It is undisputed that J.M. was within the requisite height and weight limits for the TurboBooster, and the height/weight requirements are simply facts which cannot constitute the basis for a breach of warranty claim. Moreover, NHTSA found in seven different compliance tests it conducted that the TurboBooster complied with the applicable federal standard, as discussed above. SUMF at ¶5. There is no other evidence, other than the inadmissible, speculative opinion of plaintiffs' expert Allan Kam, that the TurboBooster did not comply with federal requirements.[1] Plaintiffs therefore cannot succeed on their claim for breach of express warranty because they cannot demonstrate the necessary element of reliance on any affirmation by Graco. *See Ackerman,* 471 F. Supp. 2d at 744.

---

[1] Graco has filed simultaneously a *Daubert* motion to preclude Mr. Kam's testimony that the TurboBooster did not satisfy the applicable Federal Motor Vehicle Safety Standard.

### B. Plaintiffs' Express Warranty Claim Fails For Lack of Privity.

Only plaintiffs who were in privity with the seller of a product may recover for breach of express warranty. *Scott*, 2011 WL 778581 at *7. Here, the subject booster seat was purchased by J.M.'s grandmother, Tina McCune, who is not a party to this action. *See* SUMF at ¶10. The *Scott* opinion addressed nearly identical circumstances:

> Here, it is undisputed that the latches were purchased by K.A.'s grandmother Bobbie Scott, not Plaintiff. Thus, the representations Plaintiff cites were made to Bobbie Scott, not Plaintiff, and became part of the benefit of the bargain between Dorel and Bobbie Scott. There was no bargain between Plaintiff and Dorel for Plaintiff to base her breach of express warranty claims upon. Plaintiff's claim for breach of express warranty must be dismissed.

*Scott*, 2011 WL 778581 at *8. The same rationale precludes plaintiffs' express warranty claims here, for any representations on the TurboBooster, its packaging, or its written materials, are the basis of the bargain between Graco and Tina McCune, not the plaintiffs. The Court should grant summary judgment for Graco on the express warranty claim.

### C. Plaintiffs Cannot Prove Their Claim for Breach of Warranty for Particular Purpose.

Texas law provides that to maintain an action for breach of warranty of fitness for a particular purpose, plaintiffs must show that the product was being used for some purpose different than the product's ordinary purpose. *See Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686 (E.D. Tex. 2006). The particular purpose must be different from the ordinary use, and must be a specific use by the buyer peculiar to the nature of his business. *Id.* Here, plaintiffs have not alleged that J.M. was using his TurboBooster in any peculiar way. Rather, they allege that he was riding in it in a motor vehicle—the ordinary purpose for which it was intended. Plaintiffs therefore have no claim for breach of warranty of fitness for a particular purpose in this

case. *See Strauss*, 439 F. Supp. 2d at 687 (granting motion to dismiss where plaintiff was using car for transportation, which precluded particular purpose warranty claim).

### D. Plaintiffs' Warranty Claims Fail Because of Their Failure to Provide Pre-Suit Notice to Graco.

To prevail on a claim for breach of implied or express warranty, Texas law requires plaintiffs to provide notice of their injuries to defendant before filing suit. *See* Texas Business & Commerce Code § 2.607(c)(1); *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 893 (N.D. Tex. 2005) (granting summary judgment on express and implied warranty claims because of lack of pre-suit notice). This notice requirement is a condition precedent for a buyer's cause of action. *Martin,* 369 F. Supp. 2d at 893; *Ackerman,* 471 F. Supp. 2d at 745 ("[A] plaintiff who is a mere beneficiary must notify the seller that an injury has occurred" to prevail on a claim for breach of implied warranty.) Plaintiffs never provided Graco with notice regarding J.M.'s injuries before filing this suit. Both their express and implied warranty claims are therefore barred.

## IV. Plaintiffs' Marketing Defect Claim Fails.

Plaintiffs have asserted a claim for marketing defect based on alleged inadequate warnings that accompanied the TurboBooster. *See* Third Am. Compl. ¶13, 16-18, 31, 34, 41. In essence, their theory is that Graco should have warned caregivers not to use the TurboBooster with children of J.M.'s height and weight, and that he should have instead been using a child restraint equipped with an integrated five-point harness. To sustain a marketing defect claim, plaintiffs must show 1) a risk of harm inherent in the product or which may arise from the anticipated use of the product; 2) that the manufacturer knew or should have reasonably known of the risk of harm when the product was manufactured; 3) that the product contains a marketing defect; 4) the absence of a warning renders the product unreasonably dangerous; and 5) the

failure to warn constitutes a causative nexus in the alleged injury. *Wright*, 508 F.3d at 274-275. Texas law supplies a presumption that an adequate warning would have been followed, but not where there is evidence that the warning would not have been followed. *Id.* at 275. If such a showing is made, the burden shifts back to the plaintiff to show that the warning would have been followed. *Id.*

Here, the evidence is that neither Chad McCune nor Carmen McCune read the instruction manual that came with the TurboBooster. SUMF at ¶¶14, 15. The purchaser of the seat, Tina McCune, could recall reading only the portion that pertained to assembly. *Id.* at ¶13. Plaintiffs therefore have no evidence with which to establish that any different warning would have been followed or altered the outcome of this accident. Graco is therefore entitled to summary judgment on plaintiffs' marketing defect claims. *See Wright*, 508 F.3d at 275 (affirming summary judgment for defendant where purchaser of Ford vehicle testified he would have bought the vehicle regardless of warnings regarding blind spot); *Scott*, 2011 WL 778581 at *4 (granting summary judgment for manufacturer where purchaser of cabinet lock admitted she never read warnings because "even if the alleged superior warning had been on the package, Plaintiff cannot show it would have affected [the purchaser's] conduct.").

Graco is further entitled to summary judgment on plaintiffs' marketing defect claims because plaintiffs cannot demonstrate a causal nexus between the alleged lack of any warning and J.M.'s injuries. First, Plaintiffs have "provided no evidence of what the 'proper warnings, guidelines and instructions' should have been[.]" *Shaw*, 329 S.W.3d at 919. Second, there is no evidence that they chose to use the TurboBooster with J.M. instead of another child restraint as a result of any of Graco's warnings or other written material. Carmen McCune testified that she moved J.M. from a five-point harness to a booster seat because he did not like the straps coming

over his torso, that J.M. wanted to be like an adult, and because she found adjusting the five-point harness before every trip a "pain in the butt". SUMF at ¶16. Tina McCune testified that she purchased a TurboBooster seat for J.M. because he had been using a different booster seat (as opposed to a seat with a five-point harness), but it was dirty, and because she liked the cupholders on the TurboBooster. *Id.* at ¶¶11, 12. There is no evidence that a warning that children of J.M.'s height and weight might be safer in five-point harnesses would have influenced Tina and Carmen McCune's decision to use a booster seat with J.M. In fact, the evidence in this record is to the contrary—J.M.'s parents moved him out of a five-point harness seat because he did not want to sit in it, and they did not want to deal with securing him in it. SUMF at ¶16. In light of this evidence, plaintiffs are unable to show that a marketing defect was the producing or proximate cause of J.M.'s injuries. *See Shaw*, 329 S.W.3d at 919 (granting summary judgment on marketing defect claim for lack of causal nexus); *Wright*, 508 F.3d at 275 (noting evidence that purchaser would have bought the Ford vehicle regardless of warnings regarding blind spot).

## V.    All of Plaintiffs' Claims Fail Because of Their Inability to Establish Causation.

As set forth in more detail in Graco's Motion to Exclude Certain Opinions of Gary Whitman and Wayne K. Ross, M.D., plaintiffs cannot prevail on any of their claims because they are unable to demonstrate any link between the armrest separation and J.M.'s injuries. Without any expert opinion establishing that the armrest contributed to J.M.'s injuries, Plaintiffs are unable to sustain their claims based on this theory of defect. Accordingly, if the Court grants Graco's motion to exclude these opinions, Graco is entitled to summary judgment on all of plaintiffs' claims based on the separation of the armrest on the subject TurboBooster.

## **CONCLUSION**

For the reasons stated above, Graco respectfully requests that this Court grant summary judgment in its favor and against plaintiffs on plaintiffs' claims for punitive damages, breach of express and implied warranties, marketing defect, and design defect claims.

Respectfully submitted,

/s/ Heidi Oertle
Heidi Oertle

Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile

ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 20, 2011, she filed the foregoing document on all counsel of record via ECF.

/s/ Heidi Oertle
Heidi Oertle
