IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CHAD MCCUNE, et al. | § | |
| | § | |
|     PLAINTIFFS, | § | |
| | § | |
| V. | § | Case No 5:2009cv00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS, INC., et al., | § | |
| | § | |
|     DEFENDANTS. | § | |

**DEFENDANT GRACO CHILDREN'S PRODUCTS INC.'S
STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Graco Children's Products, Inc. ("Graco"), pursuant to E.D. Tex. L.R. 56.1, hereby submits the following statement of undisputed material facts in support of its motion for summary judgment:

1. This is a products liability case arising from a motor vehicle accident that occurred on July 29, 2007. Plaintiffs Chad McCune and Carmen McCune allege that their then four-year old son, J.M., sustained serious injuries when the Graco TurboBooster in which he was riding at the time of the accident failed to restrain him adequately. (Third Amended Complaint ¶ 14 (Docket #52).)

2. Plaintiffs filed this suit on July 29, 2009. (Complaint (Docket #1)). Neither plaintiffs nor any other individual provided any notice to Graco before filing suit regarding J.M.'s injuries.

3. Plaintiffs' operative complaint asserts claims for strict liability, negligence, and breach of express and implied warranty. (Third Amended Complaint). Plaintiffs also seek punitive damages against Graco. *Id.*

4. The Graco TurboBooster, when used in the backless mode, consists of a plastic base on which the child sits.  (TurboBooster Owners Manual at 5 (attached as Ex. 1).)  Once seated on the TurboBooster, the child is restrained by the vehicle's lap shoulder belt – the TurboBooster does not contain its own harness or belt system.  (*Id.* at 21.)  Two armrests on either side of the child provide places for the child to rest his/her arms.  (*Id.* at 9-10.)  The armrests also act as a guide to show the caregiver where to route the lap and shoulder belts on the child.  (*Id.* at 21.)

5. Before the date of the McCune accident, Graco performed more than 300 dynamic crash tests on the TurboBooster, and on every one of those tests, the injury values measured were well below the federal requirements set forth in Federal Motor Vehicle Safety Standard 213. (Summary of Crash Tests (attached as Ex. 2).)[1]  The National Traffic Safety Administration ("NHTSA") also performed independent crash tests on the TurboBooster, and found injury values well below the federal standard on each test.  (NHTSA crash test reports (attached as Ex. 3-9).).  Only nine tests out of the more than 300 total conducted exhibited an armrest separation.  *See* Exhibit 2.  In all 300 plus tests—even those in which an armrest separated—the crash test dummy remained restrained in the lap-shoulder belt system.  (*See* Exs. 2-9).

6. After observing crash tests in which the armrest separated from the base, Graco changed the design to incorporate a different screw to secure the armrest to the base.  (D. Brunick Dep. Tr. at 30:17-31:8, 35:6-10 (attached as Ex. 10).)

---

[1] Because of the voluminous nature of the crash test reports, Graco is attaching a summary of those reports pursuant to F.R.E. 1006.  Copies of all the underlying test reports summarized in Exhibit 2 have previously been produced to plaintiffs in this case.

7. Graco compliance engineer Mark LaPlante testified that the only hazard he was aware of related to the TurboBooster's armrest separating from the base during a crash was the risk of the arm becoming loose in the occupant compartment. (M. LaPlante Dep. Tr. at 94:15-94:18 (attached as Ex. 11).)  He testified that he did not view the separation of an armrest as a safety hazard. (*Id.* at 98:5-98:7.)

8. Mark LaPlante testified that in crash tests where the armrest separated from the base, the injury values were much lower than the federal requirements, and that Graco therefore felt that the safety of the child was not at risk should a separation occur. (*Id.* at 101:2-102:7.)

9. The armrest of a TurboBooster never separated from the base during an FMVSS 213 compliance crash test. (M. LaPlante Dep. Tr. at 102:1-102:7; 102:21-103:3.) The only instances of armrest separation during a crash test occurred during hot or cold temperature tests, New Car Assessment Program tests, or where the crash test dummies were weighted over the requirements. (*Id.*)

10. The subject TurboBooster was purchased by J.M.'s grandmother, Tina McCune, on an impulse while she was shopping at Wal-Mart. (Third Amended Complaint ¶7; Tina McCune Dep. Tr. at 15:4-12 (attached as Ex. 12).) She did not do any research ahead of time about which child restraint to buy. (*Id.*)

11. Tina McCune testified that J.M. was already using a booster seat before he got the TurboBooster, and she decided to replace it because it was dirty. (Tina McCune Dep. Tr. at 12:17-25; 14:8-12.)

12. Tina McCune testified that she decided to buy the Graco TurboBooster because the cup holders caught her attention and because the package said that the seat

"was for [J.M.'s] height and his weight and it met all the standards, the government standards[.]"  (*Id.* at 14:12-23.)  She did not recall reading any other information about the TurboBooster at Wal-Mart on the day she bought the seat.  (*Id.* at 15:25-16:13.)

13. Tina McCune testified that while she read at least the portion of the TurboBooster instruction manual about how to put the seat together, she did not remember reading the entire manual.  (*Id.* at 18:1-18:7.)

14. Chad McCune testified that he never remembered reading the instruction manual for J.M.'s TurboBooster.  (Chad McCune Dep. Tr. at 33:13-33:20 (attached as Ex. 13).)  He never saw the box for the car seat.  (*Id.* at 34:18-34:20.)

15. Carmen McCune testified that she never saw the box J.M.'s TurboBooster came in, nor did she ever read the instruction manual.   (Carmen McCune Dep. Tr. at 66:12-66:20 (attached as Ex. 14).)

16. Carmen McCune testified that she moved J.M. from a five-point harness to a booster seat because he did not like the straps touching him, that he wanted to be like an adult, and because the "constant having to tighten, loosen, tighten, loosen,

-5-

the buckles weren't fitting properly, it was a pain in the butt for both." (Carmen McCune Dep. Tr. at 90:21-92:9.)

        Respectfully submitted,

        /s/ Heidi Oertle
        Heidi Oertle

        Joseph J. Krasovec, III
        Heidi K. Oertle
        Schiff Hardin LLP
        233 S. Wacker, Suite 6600
        Chicago, Illinois 60606
        312-258-5500
        312-258-5600 facsimile

        John B. Greer III
        Texas Bar No. 08420000
        Greer & Miller
        3512 Texas Boulevard
        Texarkana, Texas 75503
        (903) 791-9300
        (903) 791-9301 facsimile

        ATTORNEYS FOR DEFENDANT
        GRACO CHILDREN'S PRODUCTS INC.

-6-

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 20, 2011, she filed the foregoing document on all counsel of record via ECF.

/s/ Heidi Oertle
Heidi Oertle