IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CHAD MCCUNE, et al. | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | Case No 5:2009cv00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS INC., | § | |
| | § | |
| DEFENDANT. | § | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.'S MOTION TO EXCLUDE PLAINTIFFS'
EXPERT ALLAN J. KAM**

Plaintiffs respectfully request an order from the Court denying Defendant Graco Children Products Inc.'s ("Graco") Motion to Exclude Allan J. Kam.  Whether Graco's TurboBooster child safety seat complied with Federal Motor Vehicle Safety Standard 213 ("FMVSS 213") has been an important issue in this case from the beginning.  The McCunes allege that not only did the TurboBooster fail to comply with FMVSS 213, but that Graco knew of the non-compliance and failed in its duty to either (i) report the non-compliance to the National Highway Transportation Safety Administration ("NHTSA") or (ii) seek an exemption from the regulation.

Conversely, Graco has raised the affirmative defense that the TurboBooster complied with FMVSS 213; it seeks a rebuttable presumption of "no defect" under Texas law.  Since compliance is at issue, both offensively and defensively, Plaintiffs are entitled to put on evidence to (i) prove the allegation of non-compliance and (ii) defend against Graco's "compliance" defenses.  Mr. Kam is a former NHTSA enforcement attorney with over 25 years of experience and is an expert in NHTSA regulations and their enforcement.  He used a reliable methodology in reaching his opinions, and his testimony will aid the jury in evaluating this case.

## I.  FACTUAL BACKGROUND

This case arises out of an automobile accident that occurred on July 29th, 2007, on a four lane highway.  Plaintiffs' vehicle, a 2005 Ford SportTrac, ran into the rear of a tractor that moved off the shoulder of the road onto the highway.  J.M., then four years old, was a passenger in Plaintiffs' vehicle.[1]  He was catastrophically injured during the course of the accident. Plaintiffs contend that J.M.'s safety seat, a Graco "TurboBooster," structurally failed in the accident and that this failure, among others, caused his injuries.  Everyone other than J.M. who was involved in the accident has recovered without permanent problems.  J.M. is a quadriplegic.

Plaintiffs allege that Graco knew of the TurboBooster's lack of structural integrity but kept this knowledge from NHTSA and then "self-certified" J.M.'s seat as complying with FMVSS 213.[2]  At the same time, Graco asserts that the TurboBooster complied with FMVSS 213 and, therefore, must be a safe product.    Plaintiffs hired Mr. Kam to help them understand these issues and accurately describe the NHTSA regulations, the purpose of those regulations, the self-certifying compliance process, what "compliance" really means, and offer an opinion as to whether the TurboBooster complied with the minimum requirements of FMVSS 213.  For the Court's convenience, Mr. Kam's CV, Rule 26 reports and deposition are provided herewith as *Exhibits A* (CV), *B* (report), and *C* (deposition & errata sheet).

## II.  DISCUSSION

Federal Rule of Evidence ("Rule") 702 requires that any expert be qualified to testify by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Expert testimony must

---

[1] Graco gratuitously adds in its brief that J.M.'s mother was "apparently" speeding and texting when the wreck happened.  Graco adds the "apparently" to avoid running afoul of Fed.R.Civ.P. 11.  There isn't any evidence to support Graco's efforts at assassinating the character of J.M.'s mother.

[2] For a detailed account of the evidence supporting Plaintiffs' allegations that the TurboBooster failed to comply with FMVSS 213 and that Graco knew of the non-compliance *see* "Plaintiffs' Response to Graco's Motion for Partial Summary Judgment and Its 'Statement of Undisputed Material Facts'" (Dkt. No. 94) at pgs. 3-7.

"assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* It is the trial judge's responsibility to determine whether the expert is proposing to testify to expert knowledge and whether such testimony will assist the trier of fact to understand or determine a fact in issue. *Id.; Daubert v.Merrell Dow,* 509 U.S. 579, 592 (1993). The trial judge acts as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.; Kumho Tire Co., Ltd. V. Carmichael,* 526 U.S. 137, 149 (1999).

To constitute expert knowledge that will "assist the trier of fact," the proposed testimony must be both relevant and reliable. *E.I. duPont de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 556 (Tex. 1996). The trial judge's role is to make the initial determination of whether an expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *Id.* at 558. Relevant testimony is that which is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 556 (quotation omitted).

### A.  Mr. Kam Is Uniquely Qualified To Testify As An Expert

Mr. Kam is a highly qualified expert who spent over 25 years as a compliance attorney at NHTSA. *Exhibit A.* From 1975 to 2000, he served in the Litigation and Enforcement Division of the NHTSA Office of the Chief Counsel working primarily in the Office of Defects Investigation and the Office of Vehicle Safety Compliance. *Id.* His job was to evaluate voluminous case files, as he has done in this case, and determine whether or not manufacturers had complied with NHTSA regulations. He is intimately familiar with NHTSA administrative processes, NHTSA rule-making procedures, what the FMVSSs are, how they are interpreted, and various aspects of the Safety Act.

No court has ever found that Mr. Kam lacks the qualifications to opine on the FMVSSs or the inner workings of NHTSA. Mr. Kam has testified in both state and federal courts across

the country about various FMVSSs and their enforcement based on his expertise.  While his testimony has been limited on occasion, as it is with any expert, the limitations have been very case specific and a limitation has never been imposed due to a lack of qualifications.[3]

It is noteworthy that Graco itself has designated a former NHTSA compliance officer who will offer opinions in many of the same areas as Mr. Kam.  *See* Report of Robert Hellmuth (and CV) attached as *Exhibit D*.  Graco will likely contend that the difference between these experts is that Mr. Hellmuth is an engineer while Mr. Kam is an attorney.  This difference is meaningless in the present context.  A lack of "training or experience in the field of engineering" has no bearing on Mr. Kam's ability to understand NHTSA regulations, explain those regulations to a jury, and opine how those regulations apply to the facts of this case.

In fact, Graco's engineers have admitted that there was a compliance issue with the TurboBooster, and dozens of reports from testing conducted on the TurboBooster showed that the armrest could be pulled out by the shoulder belt in frontal impacts.  *See* FN. 2 *supra*. Engineering knowledge is hardly required to understand these admissions, read and understand crash test reports, or to evaluate that evidence to form an opinion as to whether the TurboBooster complied with the minimum standards of FMVSS 213.  What is required is an understanding of what criteria are important to NHTSA investigators and how the rules are enforced by NHTSA personnel.  This is Mr. Kam's area of expertise.

To the extent that some level of engineering knowledge is required to qualify Mr. Kam's expert opinions, he has come to his opinion by relying on Graco's engineers as well as Plaintiffs' expert Gary Whitman. *Exhibit B*, at pg. 4; *Exhibit C*, at pg. 81, L.24 - pg. 83, L.8. This clearly is

---

[3] Graco cites *Gibson ex rel. Gibson v. Chrysler Corp.*, 2004 WL 1918725, *18 (Tenn. Ct. App. Aug. 26, 2004) for the proposition that Mr. Kam was "excluded" because of a lack of qualifications.  This is incorrect.  Mr. Kam was allowed to testify on many NHTSA related issues in that case; he was only precluded from offering "opinions" about the actual post-accident recall that Chrysler implemented.

permissible, as an "expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise." *Mannino v. International Mfg. Co.,* 650 F.2d 846, 851 (6th Cir. 1981) (discussing Fed. R. Evid. 703).

The admissions of Graco's engineers and Mr. Whitman's report are exactly the kind of information Mr. Kam and other enforcement attorneys at NHTSA would rely on when conducting defect investigations – statements from employees of the investigated company and reports generated by engineers. Therefore, if engineering knowledge would be required to bridge the gap between NHTSA regulations and the non-compliance of the Graco TurboBooster, Mr. Kam is allowed to draw on the expertise of others in qualifying as an expert.

### B. Kam's Opinions Are Relevant, Reliable And Will Aid The Jury

The next prong in the analysis requires that the proffered expert's testimony be relevant. As Graco correctly points out, a connection must exist between the expert opinion being offered and "the disputed factual issues in the case." *Daubert,* 509 U.S. at 592. That connection exists here as Mr. Kam's opinions bear directly on whether the TurboBooster failed to comply with FMVSS 213.

As noted above, Plaintiffs allege that the TurboBooster failed to comply with FMVSS 213 in that "it structurally failed in this collision (and in other accidents and tests). (Dkt. No. 52, ¶ 13(d)). Under Texas law, the TurboBooster's noncompliance with FMVSS 213 is unquestionably relevant to this litigation. *Flock v. Scripto-Tokai Corp.*, 2001 WL 34111723 (S.D. Tex. Nov. 20, 2001) ("a product's noncompliance with an applicable product safety statute or administrative regulation renders the product defective with respect to the risks sought to be reduced by the statute or regulation." citing Restatement (Third) of Torts: Product Liability § 4 (1998)).

Moreover, Graco has raised the TurboBooster's alleged compliance with FMVSS 213 as an affirmative defense and seeks a rebuttable presumption of "no defect" under Texas law. (Dkt. No. 55, pg. 13). Graco wants FMVSS 213 to be relevant to its defense of the TurboBooster but, at the same time, is asserting that an "interpretation of FMVSS 213 is not relevant to [whether the TurboBooster complied with FMVSS 213]." (Dkt. No. 84, pg. 7). This is nonsense. The very statute Graco raises to try and create a presumption of non-liability shows that Mr. Kam's testimony is not only relevant, but essential. Texas Civil Practice & Remedy Code Annotated § 82.008 (2011) states in relevant part:

> (a) In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the . . . design of a product if the product manufacturer or seller establishes that the product's . . . design complied with mandatory safety standards or regulations adopted and promulgated by the federal government . . ..

> (b) The claimant **may rebut the presumption** in Subsection (a) by establishing that:

> (1) **the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage;** or

> (2) the manufacturer, before or after marketing the product**, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards** or regulations at issue in the action.

(emphasis added).

The areas of Mr. Kam's testimony include that FMVSS 213 is a *minimum* standard, that the standard is inadequate to protect children, that NHTSA has exhorted child safety seat manufacturers to do more than merely comply with the minimum, and that the seat at issue here did not even comply with the minimum standard. Further, ample evidence exists in this case that Graco withheld information about adverse testing on the TurboBooster from NHTSA. That

evidence is "relevant to the federal government's or agency's determination of adequacy of the safety standards," and Mr. Kam will testify to the relevance of that information in his opinion as a former NHTSA enforcement attorney with over a quarter century of experience conducting NHTSA investigations.

By its literal language, Section 82.008(b)(1) actually _requires_ an interpretation of the NHTSA regulations and whether they provide adequate protection in order to rebut the presumption.  Section 82.008(b)(2) requires testimony as to the relevance of withheld information and how that information would have impacted a NHTSA investigation.  Unfortunately, current NHTSA employees are categorically barred from providing testimony in civil suits.  Therefore, the best way (and arguably the only way) to present such evidence is to produce a former NHTSA regulator with personal knowledge of the inner workings of NHTSA processes and investigations and what is relevant to a NHTSA regulator.  Mr. Kam is eminently qualified to present this testimony.

### C.  Kam Used The Same Methodology Here That He Used As A NHTSA Attorney

Although the _Daubert_ factors generally pertain to scientific evidence, a court still must ensure that expert testimony is based on more than the _ipse dixit_ of the expert.  _Kumho Tire Co., supra,_ 526 U.S. at 147-148.  The _Kumho_ Court noted that "experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience."  _Id._ at 148 (internal citations omitted).  When the factors outlined in _Daubert_ are inadequate to evaluate the expert's reliability, "the relevant reliability concerns may focus upon personal knowledge or experience."  _Id._ at 150.

Here, Mr. Kam's methodology in reaching his conclusions is reliable because he used the same techniques used by himself and other NHTSA enforcement attorneys when conducting actual defect investigations.  As stated in his report, Mr. Kam "reviewed records in the case, and

arrived at my analysis, following the same general methodology that I had used at NHTSA and in providing similar analyses." *Exhibit. B*, pg. 3.   Not only did Mr. Kam utilize the methodology in this case that he used while at NHTSA, the Administration currently uses one of Mr. Kam's published papers to train NHTSA staff.   *Exhibit. B*, pg. 2.   In this regard, it is noteworthy that Hellmuth did not criticize Mr. Kam's methodology anywhere in his report.   This is presumably because, as a former NHTSA investigator himself, Mr. Hellmuth used the same methodology as Mr. Kam to render his opinions.   The difference in their opinions is that they reached different conclusions.

Mr. Kam has done far more than base his opinion on his own *ipse dixit.*   He has evaluated the evidence – far more evidence than Hellmuth analyzed – and applied the techniques used by NHTSA investigators.   This is a methodology that Mr. Kam used for over 25 years and helped develop.   Under a *Daubert* analysis, the methodology he used has been peer reviewed and published internally within NHTSA and is "generally accepted" by NHTSA investigators (the relevant community).   In sum, Mr. Kam's methodology is reliable because it is the same methodology used by federal regulators charged with investigating whether motor vehicle equipment, such as a booster seat, complies with the regulations.

## D.  Kam's Opinions Will Be Helpful To The Jury

Many potential jurors have the preconceived notion that "compliance" with a government regulation means that the product at issue has actually been approved or "certified" by a government regulator.   This gives the impression that the regulator himself, or the agency, has "signed off" on the product's compliance and that the standard adequately protects citizens from product defects.   Section 82.008 of the Texas Code embodies this common misconception.   Even without the rebuttable presumption, this notion lurks in the minds of many citizens and they must

be educated on what NHTSA is and what the NHTSA regulations are in order to properly evaluate the claims and defenses in this case.

Unlike FDA processes, NHTSA only requires that child safety seat manufacturers "self-certify" their products. *Exhibit B,* pg. 15-16. There is no mandate as to how manufacturers conduct the self-certification process. *Exhibit C, pg.* 28, L. 18 – pg. 30, L.19.[4] Many people may have never even heard of NHTSA, let alone know what regulatory function it serves or how it goes about executing that function. Graco seeks to capitalize on this lack of knowledge and seeks to use its own retained NHTSA expert to mislead the jury and the Court into thinking NHTSA is an all powerful entity with the resources to evaluate all motor vehicle equipment and that "compliance" with the regulations means that the government has "blessed" the product. Mr. Kam's testimony will aid the jury in understanding the complicated and nuanced functions and procedures of NHTSA. The district court of Clark County, Nevada nicely summarized the helpfulness of Mr. Kam's testimony by stating:

> You think that this [Mr. Kam's testimony about NHTSA] is going to invade the province of the jury? Do you think anybody sitting over there in that box is going to have any understanding of what these rules and regulations are, government rules and regulations? If you don't come from Philadelphia and have 14 letters behind your name, I guarantee none of us understands that stuff. We do absolutely need experts to testify and tell us about what regulations are and what they mean and how – we might read it as A, B, C and D, but then you've got the whole code of federal regulations that interprets E, F, X and Y. ***So, I think it's absolutely essential to have an expert on regulations.***

*Bahena v. Goodyear Tire and Rubber Co.,* Case No. A503395, Trial Transcript, pg. 36, L.9 to L.23 (Jan. 7, 2007)(emphasis added) attached as *Exhibit E.*

Graco next attempts to frame Mr. Kam's testimony as stating an impermissible legal conclusion, but this is simply wrong. Experts are allowed to offer testimony that "embraces an

---

[4] The deposition contains a scrivener's error by incorrectly identifying the testimony at pg. 28, L.20 to pg. 29, L.7 as a question from Graco's Counsel when it is actually testimony by Mr. Kam.

ultimate issue to be decided by the trier of fact," but are precluded from offering opinions "phrased in terms of *inadequately explored* legal criteria."   Fed. R. Evid. 704 & Advisory Committee Notes (emphasis added).   An occasional court has interpreted this as a bar to the admission of "legal conclusions" and wrongly decided that any discussion of the law is impermissible. *See Raley v. Hyundai Motor Co.*, 2010 WL 199976 (W.D. Okla. Jan. 14, 2010).[5] The advisory committee notes to Rule 704 show that the question is one of form and not substance.   The notes implicitly allow testimony on *adequately explored* legal criteria and by way of example, show the proper foundation for exploring legal criteria and whether it is met by stating:

> Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 Advisory Committee Notes.   The substance elicited from both questions is exactly the same.   What makes the first question objectionable is it asks for a conclusory and inadequately explored response, making it an "impermissible legal conclusion."   Nothing in the rule prohibits an expert from discussing the law itself.

The Fifth Circuit addressed this nuanced distinction in *U. S.   v. Leuben.*   812 F.2d 179, 183-185 (5th Cir. 1987)(vacated in part on other grounds).   In *Leuben*, the defendant was charged with making materially false statements to a savings and loan institution to obtain a loan, in violation of federal statutes.   The issue before the court was whether the trial court erred in disallowing defendant's expert witness to testify concerning the practices of savings and loan associations, specifically that the association would not consider certain false statements in its

---

[5] Plaintiffs submit that *Raley*, which stands alone at least in terms of Mr. Kam's ability to testify, was wrong and is contrary to the majority of other decisions addressing the admissibility of his opinions. *See, Exhibit F*. It is also contrary, clearly, to the law of the Fifth Circuit as it pertains to Graco's objection based on "legal conclusions," all discussed in more detail *infra*.

decision to make the loan.  This testimony, if believed by the jury, would have negated the required "materiality" element of the charges.  *Leuben* held that the trial court committed an abuse of discretion when it excluded the testimony because the testimony was of the "permissible, fact-oriented" type, i.e. that the statements would not "have 'the capacity to influence' a loan officer, not the legal question of whether the statements were 'material.'" *Id.*

    *Leuben* is not the only Fifth Circuit case to find that factual testimony touching on matters of law can aid the jury in resolving factual disputes.  In a securities fraud case, the Fifth Circuit found that the district court properly admitted testimony of a lawyer-expert witness. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 552 (5th Cir. 1981)(reversed in part on other grounds).  The testimony at issue concerned "the interpretation given some of the prospectus boilerplate language in the securities industry." *Id.*  This factual testimony concerning the law was properly admitted because it was "based on technical knowledge that would assist the trier of fact to understand the evidence or to determine a fact issue." *Id.* (citing Fed. R. Evid. 702).

    In a case involving trademark infringement, the court found that "although a lawyer may not testify as to purely legal matters, he or she may testify as to legal matters that involve questions of fact." *Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 522, 533 (5th Cir. 2002).  The court noted that the expert "testified as to legal matters insofar as they related to questions of fact, e.g., issues an attorney typically investigates in determining whether to pursue an *ex parte* seizure order." *Id.*  In overruling a motion to strike the testimony, the trial judge stated "in order for the jury to understand the standard of care as applies to a trademark owner's conduct in seeking a seizure, the expert has to explain what the law is, because the standard of care is defined in part by the law." *Id.*

Mr. Kam's testimony is precisely the same as that which the Fifth Circuit has repeatedly found to be helpful to the jury.  Kam's testimony consists of specialized factual knowledge he has gained through his twenty-five years of experience as an enforcement attorney for NHTSA. Like the witness in *Waco,* Mr. Kam must explain what FMVSS 213 is in order for the jury to understand what compliance means and whether the TurboBooster in fact complied because, like *Waco*, compliance is "defined in part by the law."  Consistent with the analysis in *Leuben*, *Huddleston,* and *Waco* and contrary to the analysis in *Raley,* other courts addressing the very same issues presented by the instant motion have resolved the matter in favor of allowing Mr. Kam's testimony.  The following are a few examples from other federal district courts:

> The key question, then, is whether Kam's testimony will include his opinions as to the conclusion to be drawn regarding whether the vehicle at issues was unreasonably dangerous, or whether defendants were grossly negligent. The Court finds that Kam's testimony does not provide these types of conclusions. Rather, as Plaintiffs note in their response, Kam's testimony, which is mostly rebuttal in nature, will provide background information regarding the FMVSS. He will also express his opinion that, generally, the fact that an automobile meets the requirements of the FMVSS does not necessarily mean that the subject vehicle is without defect. It will be up to the jury to determine whether such was the case with the subject Land Cruiser. Defendants also object to Kam's testimony on the grounds that it is not relevant to the issues presented in this case. If Defendants, however, assert that the vehicle met the requirements of the FMVSS and, therefore, imply that the vehicle must have been "safe" or without defect, Plaintiffs are entitled to provide evidence to rebut those conclusions.

*Evans v. Toyota Motor Corp.*, 2005 WL 3454456, at *6 (S.D.Tex. Aug. 9, 2005).

> The Court expects that Mr. Kam will testify about what NHTSA is, how it works, what methods NHTSA uses to analyze technical documents provided by product manufacturers . . . . The Court notes Mr. Kam is not testifying on an issue of law, but on an issue of fact. Mr. Kam's experience and training qualify him to offer his opinion. [ . . .] the Court concludes that Mr. Kam's twenty-five years with NHTSA supply the required reliability to his testimony. After consideration, the Court concludes that the testimony of Mr. Kam is relevant, reliable, and will assist the trier of fact.

*Garcia v. Kelly-Springfield Tire Co.*, 2004 WL 5488225, at *2 (M.D.Fla. Mar. 12, 2004).

Mr. Kam's extensive experience with the NHTSA, how the entity works and the methods it utilizes in promulgating and enforcing FMVSSs, will assist the trier of fact in understanding the background of the FMVSSs, compliance with those standards, and what bearing compliance has on whether a vehicle . . . contains a defect. Mr. Kam is not directly testifying nor is he qualified, on the ultimate issue whether the [product at issue] is defective. The Court further finds that Mr. Kam's testimony would serve as proper rebuttal expert testimony if defendants' experts testify that compliance with FMVSS 216 *ipso facto* renders the [product] defect free.

*Tiller v. Ford Motor Co.*, 2006 WL 166530, at *9 (M.D.Fla. Jan. 21, 2006).[6] Clearly, as these and other courts have found, Mr. Kam's testimony will be helpful to the jury. Because both Plaintiffs and Graco have made the "compliance" of the TurboBooster with FMVSS 213 an issue, expert testimony on the subject "fits" the case.[7]

E. The Letter From Dr. Ricardo Martinez Is An Official Statement From NHTSA

Graco's representation that the "Martinez letter" is something other than an official letter from NHTSA to multiple child safety seat manufacturers is wrong. On September 14, 1999, Dr. Ricardo Martinez – *the head of NHTSA* – sent a letter to the manufacturers imploring them to exceed the standards set forth in FMVSS 213, because in NHTSA's view, "mere compliance with the minimum requirements of the standard is not enough; minimum standards should not be the most in safety design that manufacturers provide." Letter from NHTSA Administrator Ricardo Martinez, M.D. to Graco, pg. 2, attached with Meeting Notice, 65 Fed. Reg. 1224 (Jan. 7, 2000) as *Exhibit G*.

---

[6] It should be noted that none of the preceding cases, including *Raley*, involved the type of statutory presumption of "no defect" contained in Texas Civil Practice & Remedy Code Annotated § 82.008. Further, if Mr. Kam's opinions amount to legal conclusions, then the opinions of Graco's NHTSA expert, Mr. Hellmuth, also amount to legal conclusions and Graco should be estopped from putting on the very type of evidence it wishes to bar in the instant motion.

[7] The cases cited herein are just a few rulings that have allowed Mr. Kam to testify on NHTSA related matters. Attached as *Exhibit F* to this brief are relevant excerpts from 11 other rulings from various courts denying motions to exclude Mr. Kam's testimony.

13

Dr. Martinez was more than "an internal staff member" and the letter is more than "the personal opinions of one NHTSA official." Dr. Martinez was *the* Administrator of NHTSA – the head of the Administration. This is important because the Administrator of NHTSA is vested with the power to "represent the Department [of Transportation]" and "[take] management actions of major significance, such as those relating to . . . matters of special political or public interest or sensitivity." 49 C.F.R. § 501.3. Further, the Administrator of NHTSA has the delegated authority to administer the Safety Act, under which the FMVSSs are issued. 49 C.F.R. § 1.50(a).

Further, the letter was published in part in the Federal Register as supplementary information for a "Notice of Public Meeting to Address Identification and Publication of the Relative Safety Performance of Different Child Restraint Systems." *Exhibit G,* Meeting Notice, 65 Fed. Reg. 1224 (Jan. 7, 2000).[8] The letter was a representation by the head of NHTSA and led NHTSA to conduct a public meeting concerning the subject matter of the letter.

Graco cites *Smith v. Isuzu Motors Ltd.,* 137 F.3d 859 (5th Cir. 1998) for the view that the exclusion of "internal NHTSA memoranda" is proper because they "embody the positions and opinions of individual staff members, which the agency ultimately declined to accept." (Dkt. No. 84, pg. 8). The Martinez letter was neither "internal" nor written by "an individual staff member," nor did NHTSA "decline to accept" the position. The letter was actually sent to Graco by the Administrator of NHTSA whose position is, by definition, the position of NHTSA .

## III.  CONCLUSION

Whether the TurboBooster failed to comply with the minimum safety standards of FMVSS 213 is a major factual dispute in this case. Mr. Kam, with his 25 years as a NHTSA

---

[8] Assuming *arguendo* that Graco's tangential hearsay argument has any merit, the Martinez letter is admissible under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8).

enforcement attorney, is a proper witness to educate the jury on NHTSA, its rules, and the enforcement of those rules.  His opinions are based on the same methodologies he used at the administration and his testimony will be critical in helping the jury.  Mr. Kam satisfies the requirements set forth by the Federal Rules of Evidence and *Daubert*.  Plaintiffs respectfully request an order from this Court denying Defendant Graco's motion.

Respectfully submitted,

/s/ R. Douglas Gentile
Evan A. Douthit (admitted pro hac vice)
R. Douglas Gentile (admitted pro hac vice)
Douthit Frets Rouse Gentile & Rhodes, LLC
903 E. 104th Street, Suite 610
Kansas City, Missouri 64131
(816) 941-7600
(816)941-6666 Facsimile

Alan S. Loewinsohn
Loewinsohn Flegle Deary, L.L.P.
12377 Merit Drive, Suite 900
Dallas, Texas 75251-2224
(214) 572-1700
(214) 572-1717 Facsimile

Darby Doan
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
(903) 255-1000
(903) 255-0800 Facsimile

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of June, 2011, a true and correct copy of the foregoing has been served via ECF filing all counsel of record.

/s/ R. Douglas Gentile
Counsel for Plaintiffs