IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CHAD MCCUNE, et al. | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | Case No 5:2009cv00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS, INC., et al., | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANT GRACO CHILDREN'S PRODUCTS INC.'S REPLY IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Graco Children's Products Inc. ("Graco") respectfully submits the following

reply in support of its motion for partial summary judgment (Doc. # 87).

## INTRODUCTION

Plaintiffs' response brief contains a lot of sound and fury, signifying nothing.  When the

hyperbole and aspersions are cast aside, however, at bottom there remains a complete lack of

evidence showing gross negligence on Graco's part.  Ultimately, they have done nothing to

establish that Graco had a subjective awareness of the potential for catastrophic injuries as a

result of armrest separations on the TurboBooster.

## RESPONSE TO PLAINTIFFS' "SUMMARY OF THE EVIDENCE"

Plaintiffs accuse Graco of dishonesty and selective citations to the record, but it is they

who have misrepresented facts and evidence.  To address just a few of the most egregious

examples:

- Plaintiffs wrongly assert that J.M.'s TurboBooster was a "first generation" design and

  imply that Graco made no changes to the original design until after J.M.'s seat was made,

  even after observing armrest separations during early testing.  (*See* Pls.' Resp. at 5.)  This

is emphatically not the case.  Graco immediately implemented an engineering change on the TurboBooster—a different screw designed specifically to be used with plastic parts to better secure the armrest—after noting a single separation on an early test.  (*See* Def.'s Statement of Undisputed Material Facts ("SUMF") at ¶6.) This change went into effect in October 2002, several years before J.M.'s seat was made.  (*See* Engineering Change Notice 8382 (attached as Ex. F).)  After that change, there were no more armrest separations until testing that was performed in anticipation of a change in federal standard applicable to the TurboBooster that ultimately went into effect in August, 2005, which did not apply to J.M.'s seat, as it was made in April, 2005.

- Plaintiffs' unsupported allegation that the dimensions on the plastic pad on J.M.'s arm rest is "way out of specification" (*see* Pls.' Resp. at 5, n.3) is flatly contradicted by testimony from their expert, Gary Whitman.  The part of the armrest where the screw engages is comprised of the armrest wall (or flex finger) plus the thickness of the screw pad.  These two parts combined were intended to equal .12 inches as specified in Graco's drawing.  While Mr. Whitman quarrels with the thickness of one of those two parts, he admits that the total thickness of the subject armrest in that area met the .12 inch specification, which is the only thickness specified in the drawing of this part.  (See G. Whitman Dep. Tr. Vol. II at 127:21-129:21) (attached as Ex. E).)

- The 2005 Oklahoma case that plaintiffs claim should have put Graco on notice of safety hazards with the TurboBooster armrest—*Scifres v. Ford Motor Company*—involved different allegations of defect and a completely different use pattern than are at issue here.  *Scifres* was a rollover accident in which the child L.S. died as a result of injuries sustained because he was ejected from the vehicle.  His seat belt and his mother's were

found unbuckled after the accident, and there was a fact question in the case whether either L.S. or his mother had even been wearing seat belts in the first place.  Further, Plaintiffs' experts opined that the cause of L.S.'s ejection was inertial unlatching of the vehicle seat belt. (*See* Expert Report of Anil V. Kahdilkar at 13 (attached as Ex. A); Expert Report of Peter C. Bertelson at 5, ¶3) ("[L.S.] was ejected because his booster seat became upset, likely causing slack in the seatbelt of his restraint and this inertia-released.") (attached as Ex. B).)   In fact, plaintiffs in *Scifres* sued the vehicle manufacturer, Ford, based on the alleged propensity of the seat belt buckle to inertially unlatch. Finally, L.S.'s TurboBooster was found without the armrest screw installed, and plaintiffs' theory of defect as to Graco was that the TurboBooster armrest should have been secured permanently when shipped from the factory, instead of coming with a screw the caregiver had to install.  (Ex. A at 14, 16.)  In this case, in contrast, it is undisputed that the armrest screws on J.M.'s booster seat had been installed before the accident. There were no allegations in *Scifres* that the armrest could come out when properly secured, as plaintiffs claim here.  (*Id.* at 16.)  The *Scifres* accident therefore did nothing to put Graco on notice that an armrest separation could lead to the catastrophic injuries experienced by J.M.

- Plaintiffs accuse Graco of misrepresenting the record because Graco's Exhibit H did not cite to every crash test ever run on the TurboBooster, and because some of the tests cited did not record injury values.  Exhibit H did, however, include every one of the nine tests plaintiffs' experts have relied on as indications of an alleged defect by virtue of armrest separation.  The only tests omitted were those in which no armrest separation occurred, and on which plaintiffs do not even rely.  Moreover, despite their accusations, plaintiffs

have failed to identify for the Court a *single* test—whether included in Exhibit H or not—in which the injury values were not well within the level mandated by FMVSS 213, or some other level plaintiffs feel is safe. The crash test that plaintiffs claim show the dummy's shoulder rolling out (*see* Pls.' Resp. at 21) does not record injury values, much less any that indicate a concern. (*See* Dynamic Crash Test Matrix #5848 (attached as Ex. C).).

## <u>ARGUMENT</u>

I.      **Plaintiffs' Argument Focuses on Alleged Facts that Are Not Relevant to Whether Graco Exhibited Gross Negligence.**

Much of plaintiffs' argument focuses on irrelevant issues with no bearing on the two critical elements they must establish to prove punitive damages: 1) that Graco possessed actual, subjective awareness of the risk of injury suffered by the plaintiff, but 2) nevertheless chose to proceed in conscious indifference to the rights, safety or welfare of others. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon 2011); *see also Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 170-71 (Tex. 2005). None of the so-called facts recited by plaintiffs establishes that Graco had actual, subjective knowledge that armrest separation could cause injuries like those suffered by J.M.:

- Graco's profits from sales of the TurboBooster have no place in a consideration of plaintiffs' punitive damages claim. *See In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80526 at *1 (E.D. Tex. Feb. 19, 1997) (excluding evidence of Norplant's profit margin in a products liability action seeking punitive damages). In *Norplant*, the plaintiff also sought to prove that the defendant's profit margin was a motivation for rushing its product to market without proper testing. *Id.* This Court rejected that argument and held that

evidence of profit margin was not relevant to the products liability claim, and had only possible marginal relevance to the punitive damages claim, which would be outweighed by its prejudicial value.  *Id.*

- Texas law does not recognize a post-sale duty to warn, or a duty to recall.  *See McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 430 (5th Cir. 2001).  Graco's supposed failure to perform what plaintiffs deem a necessary recall is thus not relevant to this action.

- Any alleged failure by Graco to report armrest failures to the National Highway Traffic Safety Administration ("NHTSA")—which Graco disputes—does not give rise to liability on plaintiff's strict liability or negligence claims.  *See Riley v. Cont'l Gen. Tire, Inc.*, No. 00-CV-369, 2002 WL 34357197, at *2 (E.D. Tex. Feb. 28, 2002) (finding defendant owed no duty of reasonable care to provide information about alleged tire incident to NHTSA).

Putting all of their discussion of this irrelevant information aside, plaintiffs are still left to demonstrate that Graco had actual subjective knowledge that an armrest separation could lead to a significant injury but chose to proceed anyway.  This they cannot do, as discussed below.

## II.   There is No Evidence that Graco Had Subjective Knowledge of the Risk at Issue.

Plaintiffs have no evidence supporting their claim that Graco had actual, subjective knowledge that armrest separation could lead to catastrophic injuries such as J.M.'s.  They base much of their argument on Graco's warnings and instructions about proper assembly of the armrest using the screws provided, which they characterize as an admission by Graco that the armrest was a crucial component of the seat, and that its absence could lead to serious injury or death.   But this argument, too, fails to establish gross negligence because the warning does not

mean what plaintiffs claim it does.  Graco provided warnings about proper assembly of the armrests because the armrests act as a pre-crash positioner for the vehicle seat belt.  (*See* M. LaPlante Jan. 27, 2011 Dep. Tr. at 92:23-93:10) (attached as Ex. D).)  Graco was concerned that without the proper pre-crash positioning of the vehicle belts, a child could be injured in a collision if the belts were not where they were supposed to be when the crash started.  (*Id.*) Once the collision begins, it is the vehicle seat belts that restrain the child occupant, not the armrests. Plaintiffs have failed to cite any evidence—and there is none in the record—that shows Graco had actual knowledge of a shoulder belt moving out of position as a result of an armrest separation, resulting in the type of injury at issue here.  Knowledge of other hazards different than those experienced by the plaintiff is not sufficient to constitute gross negligence, *see Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d at 171, and therefore Graco's provision of a warning about a separate hazard (not properly positioning the lap and shoulder belts pre-crash) does not satisfy plaintiffs' burden of proof.

In *Diamond Shamrock*, the defendant had experienced two prior refinery explosions caused by liquids in vapor lines.  *Id.*  But the explosion at issue dealt with liquids in a different type of line which had never given rise to an accident before.  *Id.*  The court therefore held that the evidence was insufficient to satisfy the subjective knowledge requirement regarding hazards of liquids in the subject suction line.  *Id.*  Here, the only prior accident allegedly involving an armrest separation, *Scifres*, involved a misassembled armrest, and an allegedly defective, unlatched vehicle seat belt, as discussed above.  The facts of *Scifres* taken alone do not support an argument that that lawsuit put Graco on notice of any safety hazard with the TurboBooster. Moreover, it would violate public policy to allow a finding of gross negligence based on a manufacturer's continuing to sell a product after the mere filing of a lawsuit—on which no

verdict or factual findings were ever rendered, and whose dubious allegations Graco vigorously challenged.

In addition, none of the crash tests in which an armrest separated indicated occupant kinematics or injury values anywhere near injury-producing levels. While plaintiffs crow about the nine tests out of more than 300 in which an armrest separated, they have yet to point to the Court even one in which the injury values failed the applicable FMVSS. Indeed, the government's own testing of this product demonstrated that it met the injury values in the standard by a wide margin. (*See* SMUF at ¶5.) Nor can they point to any test with armrest separation in which the shoulder belt moved out of position such that upper torso retention was lost—which is what plaintiffs' experts say had to happen in order for J.M. to sustain the injuries he did. (*See* Ex. F to Doc. #90 (crash tests showing dummy's torso remaining restrained in tests where the armrest separated).) Just as in *Diamond Shamrock*, there is accordingly insufficient evidence to find Graco grossly negligent. 168 S.W.3d at 170–71; *see also KPH Consolidation, Inc. v. Romero*, 102 S.W.3d 135, 143 (Tex. App.—Houston [14th Dist.] 2003) ("[A material fact] may not be proved by unreasonable inferences from other facts and circumstances or by piling inference upon inference.").

The circumstances in which Texas courts have permitted punitive damages claims to proceed do not compare to Graco's actions in this case. For example, in *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922-23 (Tex. 1998), there was evidence that the defendant had taken many steps to protect its own workers against benzene exposure, while at the same time ignoring the safety of contract workers, and that the hazards of benzene were common knowledge. In *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785-86 (Tex. 2002), the defendant provided fall protection for its own employees but not for its subcontractors, and again the hazards of falling

from a ten-storey building were obvious.  In *Phillips Oil Co. v. Linn*, 194 F.2d 903, 905-06 (5th Cir. 1952), the defendant admitted it knew a gas line was mislabeled as an air line for two to three years but chose not to correct the problem.  Such circumstances do not exist here, where instead the evidence demonstrates that 1) Graco became aware of a potential issue with armrest separation during developmental testing in 2002; 2) it implemented design changes to address the problem; and 3) given the excellent injury values and lack of injury-producing kinematics even on tests where the armrest separated, had no reason to suspect that catastrophic injuries could result from any armrest separation that did occur.  (*See* SMUF at ¶6–9.)

### III.   Plaintiffs Cannot Demonstrate Causation Without the Testimony of Whitman and Ross.

If the Court grants Graco's motions to exclude certain opinions of Gary Whitman and Wayne Ross, plaintiffs cannot sustain their burden on causation as it relates to separation of the TurboBooster armrest.  They claim that even without their experts, the eyewitness testimony of Bobby Jackson and Robert Lipsmeyer is sufficient to defeat summary judgment.  That is not the case, because both Jackson and Lipsmeyer's testimony is limited to observations of the accident scene, and neither helps plaintiffs establish the essential element of their design defect claim— that a separation of the armrest caused J.M.'s shoulder belt to move out of position.  *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 228 (5th Cir. 2007) (affirming summary judgment because plaintiff could not establish causation without testimony from expert); *Hayles v. Gen. Motors Corp.*, 82 F. Supp. 2d 650, 687-58 (S.D. Tex. 1999) (holding that expert testimony was necessary to raise a genuine issue of material fact as to the existence of a defect in subject product).  Neither Jackson nor Lipsmeyer can offer any testimony that will establish that the TurboBooster had an alleged defect that proximately caused J.M.'s injuries.  Accordingly, and for the reasons set forth in Graco's opening motion and its *Daubert* motions, Graco is entitled to

summary judgment on plaintiffs' design defect claims.

## **CONCLUSION**

For the reasons stated here as well as in its opening brief, Graco respectfully requests that the Court enter an order granting it summary judgment on plaintiffs' claim for punitive damages and design defect claims.

Respectfully submitted,

/s/ Heidi Oertle
Heidi Oertle

Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile

ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on June 16, 2011, she filed the

foregoing document on all counsel of record via ECF.


/s/ Heidi Oertle
Heidi Oertle