IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

CHAD MCCUNE, et al.                        §
                                           §
        PLAINTIFFS,                        §
                                           §
V.                                         §        Case No 5:2009cv00107
                                           §
GRACO CHILDREN'S PRODUCTS, INC.,           §
                                           §
        DEFENDANT.                         §

**DEFENDANT GRACO CHILDREN'S PRODUCTS, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF GARY WHITMAN AND
WAYNE ROSS, M.D.**

Defendant Graco Children's Products, Inc. ("Graco") respectfully submits the following

reply in support of its Motion to Exclude Certain Opinions of Gary Whitman and Wayne Ross,

M.D. (Doc. #90).

**INTRODUCTION**

Plaintiffs' response to Graco's motion to exclude the opinions of Mr. Whitman and Dr.

Ross that the separation of the armrest on the subject TurboBooster caused J.M. to roll out of his

shoulder belt misses the mark completely.  Rather than demonstrate that these experts relied on

any testing or other acceptable methodology that actually establishes a relationship between a

separation of the TurboBooster's armrest and the repositioning of the shoulder belt, plaintiffs

merely fall back on the qualifications of these experts and ask the Court to accept their opinions

simply based on who they are.  This tactic, of course, has been repeatedly rejected by courts

everywhere as being nothing more than an expert's inadmissible *ipse dixit*.  *See, e.g.*, *Gen. Elec.

Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir.

1999) ([Even] "a supremely qualified expert cannot waltz into the courtroom and render opinions

unless those opinions are based on some recognized scientific method and are reliable and

relevant under the test set forth by the Supreme Court in *Daubert*.").  In fact, plaintiffs even admit in their response that there is no testing to support these experts' opinions because such testing "is not scientifically possible at the present time."  (Pls.' Resp. 10.)[1]

### I.      Mr. Whitman

Plaintiffs tout the qualifications of Mr. Whitman in the areas of mechanical engineering and occupant restraint.  He is the expert plaintiffs hired to testify that the TurboBooster is defective because the armrest can separate from the base of the seat, causing a lack of upper torso retention.  However plaintiffs, in their response, openly concede that Mr. Whitman neither conducted nor applied any testing or scientific methodology to reach this conclusion.  (Pls.' Resp. 8.)  Plaintiffs admit that the dummy's shoulder does not roll out significantly in any of the tests Graco conducted in which the armrest separates from the base.  (*Id.* ("the reality is that there is no significant 'rollout' in the frontal testing [Graco] performed . . ."); *see also* Def.'s Mot. Ex. D., G. Whitman Dep., Feb. 23, 2011, Vol. I, 44:17–22.)  Remarkably, Mr. Whitman goes on to say there is no way to test his theory because the dummies he would use to conduct such testing are too stiff. (Pls.' Resp. 4, 8.)  Instead, he simply *expects* that the shoulder belt on a real child would come off where it doesn't with a crash test dummy because "the actual kinematics of children involved in real crashes is far worse than what is seen in crash test videos."  (*Id.* at 4.)  An expert's mere expectation or subjective opinion that something can

---

[1]   Before turning to the merits of plaintiffs' argument, a response to plaintiffs' first footnote is in order.  Plaintiffs' reference to Rule 11 in that footnote is baseless and inflammatory.  Mrs. McCune herself testified that she was traveling at least ten miles per hour over the posted speed limit when she ran directly into the back of a slow moving farm tractor in broad daylight, and records produced by her own cell phone company conclusively demonstrate that she was actively using her cell phone to send and receive text messages in the minutes leading up to the accident.  Also, a photograph taken of the speedometer on her vehicle just after the accident shows the vehicle was going over 70 mph when the impact occurred.  This is just some of the evidence establishing Mrs. McCune's fault.  In fact, there is no evidence to support the contention that J.M.'s mother was operating her vehicle in a safe and non-negligent manner when the accident occurred.

happen is not enough to pass muster under a *Daubert* analysis. "The Fifth Circuit has stated that

'a reliable methodology is in all instances mandatory . . . and a subjective opinion that it is so is

not admissible.'" *Williams v. Toyota Motor Corp.*, No. 08-cv-487, 2009 WL 305139, at *3 (E.D.

Tex. 2009) (quoting *Hathaway v. Buzany*, 507 F.3d 312, 318 (5th Cir. 2007)).

The Court need only view Exhibit F to Graco's motion to conclude there is no

relationship between a separation of the armrest and the shoulder belt moving from the shoulder

to the abdomen. As Graco pointed out in its motion, in all of these tests in which an armrest

actually separated, the shoulder belt either stays in place, or actually moves *upward on the*

*child's torso*, rather than downward. Plaintiffs offer no response to these tests.[2]

## II.     Dr. Ross

Because Mr. Whitman cannot establish a connection between the armrest separating and

the shoulder belt moving from the shoulder to the abdomen, plaintiffs turn to Dr. Ross, a forensic

pathologist with no mechanical engineering background and no expertise in the design and

function of child restraints. (*See* C.V. of Dr. Ross (attached as Ex. A).) Because of his lack of

qualifications to opine about the engineering aspects of the TurboBooster and the function of the

armrest, it is no wonder that Dr. Ross plainly has it wrong when, in support of his opinion, he

---

[2]   The authority plaintiffs cite in their response actually stands for the propositions advanced in Graco's motion.
While an expert can rely on the testing of others, the underlying testing must still support the opinion advanced. *See*
*NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 790 (7th Cir. 2000) ("expert testimony may rely on the opinions or
data of others unless the testifying expert's opinion is too speculative or the underlying basis is faulty." (citing
*Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 588 (7th Cir. 2000)); s*ee also Ferrara & DiMercario v. St. Paul*
*Mercury Inc.,* 240 F.3d 1, 9 (1st Cir. 2001) (expert based his fire cause and origin opinion on his own investigation
and study, as well as relying on report of another expert who died during pendency of case and who had done a
cause and origin investigation); *compare Dura Auto Sys. of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 612-14 (7th
Cir. 2002) (finding a hydrogeology expert's opinion unreliable because the underlying information was unverifiable
and required application of knowledge outside his expertise); *Phillips v. Raymond Corp.,* 364 F. Supp. 2d 730, 743
(N.D. Ill. 2005) (finding a mechanical engineer's opinion inadmissible because of an "utter lack of [any] testing" to
support his opinion).

points to three tests in which the armrest *clearly does not separate from the base*.  This is not a

"silly semantics game," of semantics, as plaintiffs suggest.  (Pls.' Resp. 12.)  The difference is

quite real and goes to the heart of plaintiffs' defect claim.  Plaintiffs' claim the TurboBooster is

defective because its armrest can separate during an accident, not simply that it might flex or

bend:

> The safety seat failed structurally in several ways in the collision, including the
> failure of the base retention system, the failure of the mechanical fastening
> devices designed to keep the left side armrest attached to the base, and a <u>complete</u>
> separation of the left side armrest from the seat.

(Pls.' Second Am. Compl. ¶14(c) (Doc. #30) (emphasis added).)  The testimony of Dr. Ross

cited at pages 11 and 12 of plaintiffs' response unequivocally demonstrates that the armrest in

fact does not separate in any of the tests on which he relies.  For example, in test #7062206, the

test on which Dr. Ross relies most heavily, both armrests clearly remain attached to the base after

the crash test.




Armrests Attached

Armrests Attached

Pre-Test                                  Post-Test

Further, the testing Dr. Ross points to were not run under conditions and circumstances in

any way similar to the subject accident.  In particular, the testing Dr. Ross refers to were run at

different speeds and delta-V's than the subject collision; were not run at an offset angle (as

suggested by plaintiffs as being the case in the subject accident); two of those tests were run with

dummies twice the size of J.M. at the time of the collision; and none was run using the back seat

of a Ford Explorer SportTrac.  In fact, neither Dr. Ross nor plaintiffs assert that the testing he

relies upon is in any way substantially similar to the subject accident.  Reliance on testing that

does not bear substantial similarity to the facts and circumstances of the subject accident renders

the opinions based on that testing inadmissible.  *See Pillow v. Gen. Motors Corp.*, 184 F.R.D.

304, 307 (E.D. Mo. 1998) (testing conducted by others but relied upon by an expert provided an

insufficient basis for defect opinion because the tests were not sufficiently similar to subject

collision).[3]

### CONCLUSION

For the reasons stated above and in its Motion to Exclude Certain Opinions of Plaintiffs'

Experts Gary Whitman and Wayne K. Ross, M.D. (Doc. #90), Graco respectfully requests that

this Court grant its Motion and for any other relief this Court deems just and reasonable.

---

[3]  *Smith v. BMW N. Am., Inc.,* 308 F.3d 913 (8th Cir. 2002), cited by plaintiffs, is inapposite.  There, the court held that a pathologist could opine that the deployment of an airbag would have reduced the severity of plaintiff's neck injury.  The expert's opinion did not, however, address how or why the airbag was defective for failing to deploy. Here, Graco is not taking issue with Dr. Ross' conclusion that the absence of upper torso restraint caused J.M.'s injury.  Instead, Graco contends that Dr. Ross lacks the qualification and, more importantly, the basis in scientific methodology to say that the purported movement of the shoulder belt off the upper torso was caused by the armrest separation.

Respectfully submitted,

/s/ Heidi Oertle

Heidi Oertle


Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile


ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on June 16, 2011, she filed the

foregoing document on all counsel of record via ECF.


/s/ Heidi Oertle

Heidi Oertle