IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| CHAD MCCUNE, et al. § | |
| § | |
| PLAINTIFFS, § | |
| § | |
| V. § | Case No 5:2009cv00107 |
| § | |
| GRACO CHILDREN'S PRODUCTS INC., § | |
| § | |
| DEFENDANT. § | |

**PLAINTIFFS' RESPONSE TO GRACO'S "MOTION IN LIMINE TO EXCLUDE EVIDENCE OF POST-MANUFACTURE DESIGN CHANGES AND TESTING"**

Graco seeks to preclude plaintiffs from introducing evidence of post-manufacture design changes and testing related to the TurboBooster (Dkt. 139). Graco asserts that this evidence should be excluded (i) under Fed.R.Evid. 401, 402, and 403 because post-manufacture design changes are irrelevant and would inflame the jury; (ii) post-April 2005 design changes are subsequent remedial measures pursuant to Fed.R.Evid. 407; and (iii) no feasibility exception allows for the admission of post-manufacture design changes. None of these objections have merit, and Graco's motion should be denied.

Post-Manufacture Design Changes Are Relevant

The relevant dates are these: Date of manufacture of J.M.'s seat – April 2, 2005; date of sale of McCune seat – December 10, 2006; Date of accident – July 29, 2007. By this motion, Graco seeks a broad ruling that anything and everything that occurred after April 2, 2005 is *per se* irrelevant simply because it took place after the production of J.M.'s seat – even though the seat would not be sold to the McCunes for another 20 *months*. Contrary to Graco's arguments, evidence of events that occurred after April 2, 2005 and before July 29, 2007 is relevant to far more than just the question of the seat's defective and unreasonably dangerous condition.

1

The Fifth Circuit, and Texas substantive law, clearly hold that post-manufacture evidence is relevant on numerous issues. Those issues include (i) plaintiffs' claims for punitive damages, (ii) to rebut Graco's demand for a presumption under Section 82.008 concerning its alleged compliance with FMVSS 213, (iii) Graco's continuing duty to warn, (iv) the feasibility and efficacy of a safer alternative design, and (v) to impeach Graco employees and experts. *See, e.g., Rehler v. Beech Aircraft Corp.,* 777 F.2d 1072, 1084-85 (5th Cir. 1985) (evidence of post-sale, pre-accident events admissible); *Nissan Motor Co., Ltd., v. Armstrong*, 145 S.W.3d 131, 139 (Tex. 2004) (information concerning post-sale events held admissible and "quite relevant").

Post-manufacture evidence is highly probative to each of these issues. The Fifth Circuit in *Rehler* clearly held that post-sale, pre-accident evidence is admissible. 777 F.2d at 1084-85. In *Armstrong* (which was not cited by Graco at all), the Texas Supreme Court similarly held that "of course, post-sale events may sometimes be quite relevant and thus admissible." 145 S.W.3d at 139. *Armstrong* came long after every single one of the cases Graco relies on and is controlling in this case; *Armstrong* expressly and unequivocally rejects Graco's position. In sum, if "*post-sale*" evidence is "of course" admissible – even "quite relevant" according to the Texas Supreme Court – then *pre-sale*, post-manufacture evidence is obviously admissible.

Special mention is warranted with respect to the admissibility of all this evidence to rebut Graco's affirmative claim that it is entitled, under V.T.C.A. § 82.008, to a "presumption" that the TurboBooster was not defective because of its alleged "compliance" with FMVSS 213. Graco has offered no less than two experts, one an ex-employee of NHTSA, to analyze the regulations and Graco's conduct with respect thereto. Both have opined that the TurboBooster – *all TurboBoosters irrespective of the date of manufacture* – complied fully with FMVSS 213. Graco's employees have, and will, offer identical testimony at trial. Graco has offered this

testimony because, to obtain the presumption it claims to be entitled to, it must establish that the seat's "labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government . . . and that governed the product risk that allegedly caused harm." V.T.C.A. § 82.008(a).

Post-manufacture, pre-accident evidence is relevant to refute Graco's "compliance" defense and to show that its alleged "compliance" defense is meritless. This includes evidence that, just prior to J.M.'s accident, the company had internally categorized the armrest separation defect as a "compliance" issue. In addition, Graco's senior FMVSS 213 compliance engineer admitted that the armrest separation problem "could be perceived by others as a technical noncompliance" with the standard. This evidence is clearly admissible, irrespective of when these admissions were made, to refute Graco's assertions that the seat complies with the standard.

Moreover, Section 82.008 allows post-manufacture evidence to rebut the presumption – in fact, it actually allows post-*sale* evidence. Specifically, the statute expressly allows plaintiffs to introduce evidence of events which took place "after marketing" – in J.M.'s case, that marketing occurred on December 10, 2006. If events which occurred after December 10, 2006 are admissible under Section 82.008, then clearly events which occurred *before* that date – even if after the April 2, 2005 date of manufacture, are admissible. Graco's invocation of section 82.008 as an affirmative defense, by itself, requires the denial of its motion.

For all of the above reasons, the evidence Graco seeks to exclude here is clearly relevant to multiple issues in this case. Graco has not cited any case law that supports its argument that the evidence should be excluded. Surprisingly, it neglected to cite the most recent Texas Supreme Court case that expressly holds such evidence is admissible. Moreover, Graco has

completely failed to show, let alone establish, that the probative value of this evidence is outweighed by a substantial risk of unfair prejudice. Graco's Motion should be denied.

### Fed.R.Evid. 407 Does Not Apply To Post-April 2005 Design Changes

Graco next claims that the post-April 2005 design changes to the TurboBooster are inadmissible because they constitute "subsequent remedial measures" under Rule 407. This argument is completely without merit, is unsupported by the Rule itself, is rejected by the single case Graco cites, and is contrary to established Fifth Circuit precedent.

At the outset, it should be noted that Graco's attempt at making this argument is rejected by its own defense to this case. In order to qualify for exclusion under Rule 407, Graco must assert that the post-April 2005 design changes were "remedial." But not one Graco employee or expert will agree that an armrest failure constitutes any real hazard at all – in fact, every one of them specifically and expressly *deny* there is any hazard. Had Graco admitted that it knew of the risk of quadriplegia or other serious injury due to armrest failure, and admitted that it made the design changes to "remediate" that risk, the Rule might apply. But Graco denies there is any hazard and denies any need to remediate anything. Thus the "subsequent remedial measures" rule is inapplicable here.

Moreover, the post-April 2005 (but pre-accident) design changes simply are not subsequent remedial measures under the meaning of Rule 407. Specifically, the rule only applies where measures are taken "after an injury or harm allegedly caused *by an event*." Fed. R. Evid. 407 (emphasis added). Here, the "event" that caused J.M.'s injuries was the armrest failure that occurred on July 29, 2007. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 686 (5th Cir. 1991) ("[t]he 'event' to which Rule 407 speaks is the accident, not the sale); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978) (the "event" in question was the accident causing

4

the injuries). Graco totally avoids this significant qualification because it must – the collision was *after* all of the post-April 2005 manufacturing changes and testing that it seeks to exclude by its motion. Thus, Rule 407 simply does not apply.

Furthermore, and even if the "event" in question were the manufacture date, the Rule expressly provides multiple exceptions:

> [T]his rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving . . . feasibility of precautionary measures, if controverted, or impeachment.

Fed.R.Evid. 407. As set forth in plaintiffs' many briefs in this case, there are multiple other purposes for introducing this evidence that fall directly within these exceptions. For purposes of responding to this motion, however, it is clear that the evidence can, at the very least, be offered for impeachment purposes on numerous fact issues on the defect issue. In fact, post-manufacture impeachment was utilized in many of the Graco employees' depositions – otherwise, false and misleading testimony would have come in with no cross-examination. It is overwhelmingly clear that this evidence can be utilized for impeachment purposes.

The sole case that Graco relies on – *Mills v. Beech Aircraft,* 886 F.2d, 758 (5th Cir. 1989) – also fails to support its argument under Rule 407. Specifically, the *Mills* court dealt with the admissibility of post-manufacturing date changes to a shop manual for a *different model of aircraft than the one at issue.* The court found these changes were properly excluded for that reason. Here, of course, the design changes at issue pertain to the TurboBooster safety seat, not some other Graco product. In fact, the design changes at issue even relate directly to the same TurboBooster *model* that J.M. was using on the date of the accident.

Moreover, the *Mills* court distinguished the facts of its case from *Arceneaux v. Texaco*, 623 F.2d 924, 928 (5th Cir. 1980), a distinction which is important here. In *Arceneaux*, the Fifth

Circuit held that the trial court erroneously relied on Rule 407 to exclude changes that were made post-sale but pre-accident. In fact, the court stated that the timing of the design changes made it clear that the changes were not implemented in response to the "event." The same is true here – Graco adamantly denies the changes were in response to any event at all, let alone J.M.'s accident. The reasoning employed by the Fifth Circuit in these cases, as well as the rule itself, clearly shows that Rule 407 does not even arguably support the exclusion of the post-April 2005 design changes.

<u>Graco's Feasibility "Stipulation" Does Not Make The Evidence Inadmissible</u>

In the unlikely event the Court finds that Rule 407 applies here, then Graco's attempt to exclude the evidence under the "feasibility' exception is still to no avail. While Graco claims in its motion that it "does not dispute that any of the post-April 2005 design changes were feasible before 2005," this is not sufficient to preclude plaintiffs from offering this evidence. Under Texas law, "[t]echnological feasibility and economic feasibility are two different concepts that require separate proof." *Smith v. Aqua-Flo*, 23 S.W.3d 473, 478 (Tex.App. 2000); V.T.C.A. § 82.005. Consequently, Graco must concede all of the evidence sufficient to prove both concepts. It has not done so.

Moreover, "feasibility" is part of the "safer alternative design" element of plaintiffs' case. In Texas, a claimant alleging design defect must prove that: (1) there was a safer alternative design; and (2) the defect was a producing cause of the personal injury, property damage, or death for which the clamant seeks recovery. V.T.C.A. § 82.005. For purposes of the statute, a "safer alternative design" means: "a product design other than the one actually used that in reasonable probability:

> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
>
> (2) **was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge."**

V.T.C.A. § 82.005.

Thus the statute focuses on feasibility <u>as of the date the product was sold</u> – here that was December 10, 2006. Thus, at a minimum, Graco's purported "feasibility" concession does nothing to preclude the admission of evidence that post-dates the date of manufacture (April 2, 2005) but pre-dates the date of sale (December 10, 2006). Of course, most of the design changes at issue occurred during that time frame. Even the last change, the one that finally thickened the part that was failing and eliminated the problem, was discussed at length and recommended internally at Graco well before J.M.'s seat was sold. So the feasibility "admission" is not helpful to Graco.

For all the above and foregoing reasons, Graco's motion should be denied.

Respectfully submitted,

/s/ R. Douglas Gentile
Evan A. Douthit (admitted pro hac vice)
R. Douglas Gentile (admitted pro hac vice)
Douthit Frets Rouse Gentile & Rhodes, LLC
903 E. 104th Street, Suite 610
Kansas City, Missouri 64131
(816) 941-7600
(816)941-6666 Facsimile

Alan S. Loewinsohn
Loewinsohn Flegle Deary, L.L.P.
12377 Merit Drive, Suite 900
Dallas, Texas 75251-2224
(214) 572-1700
(214) 572-1717 Facsimile

Darby Doan
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
(903) 255-1000
(903) 255-0800 Facsimile

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of July, 2011, a true and correct copy of the foregoing has been served via ECF filing on all counsel of record.

/s/ R. Douglas Gentile
Counsel for Plaintiffs