IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| CHAD MCCUNE, et al. | § |
| | § |
| PLAINTIFFS, | § |
| | § |
| V. | § Case No 5:2009cv00107 |
| | § |
| GRACO CHILDREN'S PRODUCTS INC., | § |
| | § |
| DEFENDANT. | § |

**PLAINTIFFS' RESPONSE TO GRACO'S "MOTION IN LIMINE TO PRECLUDE EVIDENCE OF GRACO'S ALLEGED PROFIT MARGIN MOTIVATION"**

Graco seeks to preclude plaintiffs from offering evidence concerning its "profit margin motivation" related to the TurboBooster. It anticipates – correctly – that plaintiffs will offer evidence showing that the company failed to change the TurboBooster armrest design because of its motivation to continue production at all costs, even to increase production, so it could obtain a nearly 400% return on investment and up to 50% profit margins on the seat. Graco asserts that this evidence has no bearing on plaintiffs' claims, and that its probative value is substantially outweighed by its prejudicial effect. But this evidence is _absolutely_ relevant under Texas law to plaintiffs' punitive damages claim. Consequently, Graco's motion should be denied.

Plaintiffs do not deny that Graco is entitled to seek whatever profit the marketplace will allow. But the overwhelming evidence in this case is that it deliberately rejected needed and recommended design changes so that it could "earn," among other things, a 394% rate of return on the TurboBooster. In fact, Graco was so focused on getting the seat into production to earn these returns that it conducted its "final safety review" before any tests were even run! For the same reason, the seat was approved for production in record time – one day. When the evidence

shows, as it does here, that the company's profit goals affected its safety analysis, the "motivation" to earn them is directly relevant and probative to punitive damages.

The law on what evidence is needed in Texas to make a submissible case on punitive damages – gross negligence – is quite clear. "Gross negligence" requires a showing of two elements. First, when viewed objectively from Graco's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Second, Graco must have had subjective awareness of the risk but nevertheless proceeded in conscious indifference to the safety of others. *Lee Lewis Constr., Inc. v. Harrison*, 70 SW3d 778, 785 (Tex. 2002); *Mobil Oil Co. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Here, the evidence reflects that Graco's desire to collect a 394% IRR, with up to 50% profit margins, clouded Graco's judgment, and it is directly relevant to both of these elements.

The relevance of this evidence is further evidenced by the Texas statute that lays out the factors a jury must consider in determining the amount of exemplary damages awarded. V.T.C.A. § 41.011(a). The statutorily-mandated considerations include: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant. *Id*. Graco's "motivations" to earn seemingly large margins and returns on the TurboBooster are clearly relevant to the jury's decision on punitive damages with respect to the first five factors in this statute, as jurors may find such numbers to their analysis.

Moreover, despite Graco's claim that it "is aware of no Texas or Fifth Circuit authority holding that such evidence is relevant," the Texas Supreme Court has addressed the issue and found profitability to be directly relevant. In *Owens-Corning Fiberglas Corp. v. Malone*, 972

S.W.2d 35, 52-53 (Tex. 1998), the court stated that, in reviewing a punitive damages award, it must "give considerable weight to the degree of reprehensibility of the defendant's conduct," as well as "examine the profitability of the wrong." Here, the TurboBooster's anticipated profit margin and IRR are relevant to both considerations.[1]

First, it is common sense that the jury may find that Graco's desire to earn these kinds of returns and profits was reprehensible. Second, there is substantial evidence that the TurboBooster's profitability is the reason why, in the years that led up to the date of the McCune accident, Graco never once stopped production to get to the bottom of the armrest defect. Instead, it rejected the recommendations of its own engineers to stop production so that it could continue reaping the 394% return on investment. Graco managers in charge of production even went so far as to argue that stopping to try and solve the problem would require a "long time study" that would adversely impact "capacity" and the company's ability to fill "huge" orders from retailers. Motivated solely by sales revenues and profits, Graco simply would not, and did not, stop production for anything – even when one of its own engineers recommended stopping production to fix the defect! This evidence unquestionably relates to the reprehensibility of the wrong, and it is therefore relevant for the jury to consider in awarding a punitive damages award.

Further, Graco's decision-making exhibits exactly the type of manufacturer conduct that punitive damages in product liability actions are intended to deter. The Texas Supreme Court recognized the reasoning for punitive damages in *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 45-46 (Tex. 1994), where it cited a study on punitive damages verdicts in product liability cases that

---

[1] Graco's reliance on *In Re Norplant Contraceptive Prods. Liabl. Litig.*, 1997 WL 80526 (E.D.Tex. 1997) is not helpful for at least three reasons. First, the case was an MDL and it is unknown what state law the court was applying. Second, the court in *Norplant* provided no background facts about the evidence at issue, not even vaguely, thereby precluding its one sentence resolution of the question from being dispositive here. Finally, and most importantly, the Texas Supreme Court decided the *Malone* case after the *Norplant* ruling was issued, so the *Norplant* court – even if it was applying Texas law – did not have the benefit of the Supreme Court's holding. The views of the Texas Supreme Court – that "profitability" is relevant to punitive damages, are controlling here.

concluded: "[r]estricting this remedy reduces the incentives for safety *and may tempt corporations to put profits ahead of the public interest*. (citing William M. Landes & Richard A. Posner, The Economic Structure of Tort Law 302-307 (1987)). Here, Graco's grossly negligent decision-making was directly tied to the TurboBooster's 394% IRR and its desire for a 50% profit margin, and it proudly put its quest for those returns ahead of the public interest. Since one of the reasons behind punitive damages is to keep corporations like Graco from putting *profits* ahead of the public interest, it necessarily follows that an overzealous desire for profits – at any cost – is relevant to punitive damages.

In sum, the TurboBooster profit margin is relevant to the jury's consideration of punitive damages, and therefore it should not be excluded. The fact that Graco deliberately rejected needed and recommended design changes so that it could "earn" large rates of return and profit margins may be prejudicial to Graco, but not unfairly so. If these numbers were highly relevant to Graco when it decided to start production "at risk" and continue production in the face of dozens of test failures, the reported death of a child, and what it concedes may have been a "technical non-compliance" with the standard – and they were admittedly relevant to Graco - then the jury should get to hear about them. Graco's motion should be denied.

        Respectfully submitted,

        /s/ R. Douglas Gentile
        Evan A. Douthit (admitted pro hac vice)
        R. Douglas Gentile (admitted pro hac vice)
        Douthit Frets Rouse Gentile & Rhodes, LLC
        903 E. 104th Street, Suite 610
        Kansas City, Missouri 64131
        (816) 941-7600
        (816)941-6666 Facsimile

Alan S. Loewinsohn
Loewinsohn Flegle Deary, L.L.P.
12377 Merit Drive, Suite 900
Dallas, Texas 75251-2224
(214) 572-1700
(214) 572-1717 Facsimile

Darby Doan
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
(903) 255-1000
(903) 255-0800 Facsimile

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of July, 2011, a true and correct copy of the foregoing has been served via ECF filing on all counsel of record.

/s/ R. Douglas Gentile
Counsel for Plaintiffs