IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CHAD MCCUNE *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 5:2009cv00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**GRACO CHILDREN'S PRODUCTS INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION *IN LIMINE* (#2) REGARDING
GRACO'S "COMPLIANCE WITH FMVSS 213" DEFENSE**

Defendant Graco Children's Products Inc. ("Graco") respectfully submits the following

opposition to plaintiffs' Motion *in Limine* (#2) Regarding Graco's "Compliance with FMVSS

213" Defense (Dkt. No. 136).

**I.      Introduction**

Plaintiff's motion #2, though not so styled, is actually a request for sanctions for Graco's

supposed spoliation of TurboBoosters used since 2002 in routine crash tests.  Like their first

motion *in limine*, this motion improperly attempts to deprive Graco of relevant defenses to

plaintiffs' claims, while exaggerating the record and misstating the applicable law.

Plaintiffs first spill a lot of ink reciting supposed facts about how Graco engineers

interpret the federal standard applicable to the TurboBooster, and whether or not the armrest on

the TurboBooster is a "load-bearing element" under the meaning of that standard.  (*See* Pls.'

Mot. 3–6.)  Graco disputes plaintiffs' representations of the record on this point.[1]  However, even

---

[1]  Plaintiffs play fast and loose with the facts regarding this argument, as with others in
their motion.  To take just one example, they claim that Graco's 30(b)(6) representative falsely
testified in February 2007 that "he was only aware of *two* armrest failures" in TurboBooster

if plaintiffs were correct about what the record showed, none of this supposed evidence is relevant to the issue of whether plaintiffs have established the requisite elements for a spoliation sanction.

Moreover, plaintiffs' sniping at testing performed in this case by Graco's experts highlights their true motivations for this motion:  having conducted not one test of their own that substantiates their theory, and faced with extensive testing by Graco's experts disproving their version of events leading to J.M.'s injuries, they resort to unfounded arguments in an attempt to squelch the introduction of relevant evidence.

As to their request for spoliation sanctions, plaintiffs ignore the applicable legal standard, and do not even attempt to establish the requisite elements for a imposition of issue preclusion as a sanction.  In fact, they cannot make the necessary showing, because the evidence in the record is simply that Graco recycled crash-tested TurboBoosters following thorough written, photographic and video documentation of the tests pursuant to routine business practice, and not due to bad faith or a motive to alter the results of litigation; that Graco was never on notice, until plaintiffs served a request to produce in 2010 that they desired to inspect crash-tested

---

crash testing.  (*See* Pls.' Mot. 5 (emphasis in original).)  The actual testimony, however, is quite different:

> Q.     And how many crash tests did you have where the armrest separated from the booster seat?
>
> A.     **I don't know the specific number**.  I believe it to be a very small number, perhaps two events.  **But I don't know that specifically.**

(D. Galambos Dep. 21:18–21:22 (Dkt. No. 136, Ex. F) (emphasis added).)

TurboBoosters, that those seats could potentially be relevant to this case; and that given the extensive documentation of the crash tests, plaintiffs are not prejudiced by their absence.[2]

Plaintiffs are essentially suggesting a new duty not found in the law of the Fifth Circuit—or anywhere else—that manufacturers must preserve all tested products indefinitely just in case someone someday brings a lawsuit concerning that product.  They also suggest that even after a party has resolved a lawsuit, it must nonetheless continue to preserve every shred of potential evidence on the subject product—even though the plaintiffs in that case pursued a wholly different theory of defect and were never interested in historic examples of tested product in the first place.  This novel proposition is also unsupported in the law.  The Court should reject such a ridiculous outcome and deny plaintiffs' motion, allowing Graco to present evidence relevant to its defense in this case.

## II.      Background

Plaintiffs have misrepresented and exaggerated the record regarding Graco's recycling of TurboBooster seats and the timing and substance of the *Scifres* lawsuit and NHTSA's supposed involvement in that case.  The following context is necessary to evaluate plaintiffs' request for a sanction:

- The TurboBooster was first developed in late 2001/early 2002.  The first crash test on a TurboBooster was run on June 4, 2002.  The seat is still manufactured today, and has been tested by Graco or outside laboratories more than 300 times since 2002.

---

[2] Graco has produced to plaintiffs more than 3,500 pages of crash test results and 300 discs containing videos and still photos of the crash testing in this case regarding the TurboBooster, including all the tests identified in plaintiffs' Exhibit G.

- The Department of Transportation has contracted with outside laboratories to crash test the TurboBooster on seven separate occasions over the time period from May 2003 to May 2006.  In each of those tests, the TurboBooster was found to comply with FMVSS 213.  There is no indication in the record that the federal government preserved any of the crash-tested seats used in those tests, because, again, those tests were fully documented and video-taped, and the tested seats were photographed.

- Graco was served with the complaint in *Scifres v. Ford Motor Co.* on November 1, 2005.  J.S.'s[3] seatbelt was found unlatched after the accident, and his TurboBooster did not have the screws installed to secure the armrest to the base. Plaintiffs' theory regarding the cause of the fatal injuries in *Scifres* was that the cause of J.S.'s ejection was inertial unlatching of the vehicle seat belt. (*See* Expert Rep. Anil V. Kahdilkar 13, Dkt. No. 104, Ex. A; Expert Rep. Peter C. Bertelson 5, at ¶ 3 ("[L.S.] was ejected because his booster seat became upset, likely causing slack in the seatbelt of his restraint and this inertia-released."), Dkt. No. 104, Ex. B.)  Further, plaintiffs' theory of defect in *Scifres* as to Graco was that the TurboBooster armrest should have been secured permanently when shipped from the factory, instead of coming with a screw the user had to install.  (Dkt. No. 104, Ex. A.)

- The *Scifres* plaintiffs never requested to inspect crash-tested TurboBoosters.  (*See* Pls.' Interrogs. & Pls.' Req. Produc., *Scifres v. Ford Motor Co., et al.*, No. Civ-

---

[3] Graco is referring to the minor child involved in the *Scifres* matter by his initials.

05-1238-M, W.D. Okla. (attached as Ex. A).)

- The parties resolved *Scifres* in April 2007, and it was dismissed with prejudice on May 2, 2007, before the McCune accident even took place.

- Graco reported the *Scifres* accident to NHTSA pursuant to the Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act, which requires manufacturers to report any instances involving fatalities to NHTSA. Contrary to plaintiffs' unsupported assertion (*see* Pls.' Mot. at 8), NTHSA never "investigated" the *Scifres* accident. NHTSA did request follow-up information from Graco, which Graco provided. NHTSA never opened a formal Office of Defect Investigation on the TurboBooster, nor did it ever request to see crash-tested booster seats, or ask Graco to preserve those seats.

- Graco was served with the complaint in this case on November 2, 2009. On March 4, 2010, plaintiffs requested, for the first time, "Any actual TurboBooster seat(s) that were used in dynamic testing and that experienced any structure failure in the arm rest, the seat seam (where the top and bottom halves of the seat bottom fit together) or any involved attaching hardware." Graco made 19 crash-tested TurboBooster seats in its possession available for inspection at its facility in Ohio, and plaintiffs inspected those seats on September 26, 2010. Incidentally, none of those tested seats involved an armrest separation.

- Contrary to plaintiffs' unsupported assertion, there is no evidence in the record regarding available space at any Graco facility to store hundreds of crash-tested child restraints for indefinite time periods.

- • In addition to the TurboBooster, Graco makes or has made many other models of child restraints, all of which are crash-tested regularly from development throughout the time they are manufactured.  Each of those crash tests also generates tested product.  The duty suggested here by plaintiffs would also presumably require storage of all of those child restraints.

## III.   Argument

### A.   The Applicable Legal Standard.

Plaintiffs fail to cite the elements they must establish to warrant an evidentiary sanction in this case, and rely heavily on cases from other jurisdictions that apply a different legal standard and are not applicable here.  The law in the Fifth Circuit is that a spoliation sanction may be warranted where the party seeking the sanction can demonstrate (1) the existence of a duty to preserve the information; (2) a culpable, bad faith breach of that duty; and (3) resulting prejudice to the innocent party.  *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *Ashton v. Knight Transp., Inc.*, __ F. Supp. 2d ___, 2011 WL 734282, at *25 (N.D. Tex. Feb. 22, 2011).  "Bad faith" consists of "fraudulent intent and a desire to suppress the truth." *Id.* at *26 (citations omitted).  Mere negligence is not enough. *Vick v. Texas Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).  Where documents or other evidence are destroyed under routine procedures without bad faith, no sanction is warranted.  *Id.* (affirming denial of adverse inference where "[t]here was indication . . . that the records were destroyed under routine procedures without bad faith and well in advance of [plaintiff's] service of interrogatories"); *King*, 337 F.3d at 556 (record destruction as part of routine file maintenance did not give rise to sanction).  Plaintiffs have not attempted to, and cannot, demonstrate these elements here.

### B.    Plaintiffs Cannot Establish a Duty on Graco's Part to Preserve Crash-Tested Booster Seats.

For a spoliation sanction to lie, the defendant must have been on notice that the documents or other potential evidence at issue might be relevant to a pending or potential lawsuit.  *See King*, 337 F.3d at 556 (holding that a sanction could not lie where the evidence was disposed of three years before lawsuit was filed).  Plaintiffs cannot demonstrate that when Graco recycled crash-tested booster seats as early as 2002, it had any notice that those seats could be relevant in litigation nearly a decade later, and thus sanctions are not warranted.  *See Millenkamp v. Davisio Foods Int'l, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009) (affirming denial of sanctions when party had no notice and stating, "it was not 'wrong' to allow the evidence to spoil nearly five months before . . .[plaintiffs] contemplated any litigious intent"); *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006) (affirming denial of sanctions when party had no notice until months later and stating, "Where the spoliator has no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case"); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (affirming denial of sanctions where party had no notice and stating, "A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant").

The *Scifres* lawsuit itself did not put Graco on notice that crash-tested TurboBoosters should be preserved.  The plaintiffs had not been using their TurboBooster with the securing screws, and the child's seat belt was found unlatched after the accident.  Their theory was that the armrest separation lead to the seatbelt unlatching inertially during the rollover accident.  (*See* Def.'s Reply Mot. Summ. J., Exs. A & B, Dkt. No. 104.)  They alleged that Graco should not have allowed the consumers to assemble their own armrests.  The *Scifres* plaintiffs were never

interested in the physical evidence on crash-tested booster seats, and never sought those seats in discovery.  (*See* Pls.' Interrogs. & Pls.' Req. Produc., *Scifres v. Ford Motor Co., et al.*, No. Civ-05-1238-M, W.D. Okla. (attached as Ex. A).)

Moreover, the timing of Graco's settlement of *Scifres* further precludes a finding that Graco had a continuing duty to preserve crash-tested seats.  Even if the filing of the *Scifres* suit had triggered a duty for Graco to preserve crash-tested booster seats—which Graco disputes— plaintiffs offer no authority in support of their argument that a party has a duty to preserve evidence in a lawsuit after it was settled and dismissed with prejudice.  The absurd argument that Graco should have continued to preserved old booster seats after it settled *Scifres* is also unsupported by any authority, or by common sense.  Plaintiffs would impose a duty on manufacturers to preserve all tested products indefinitely, just in case litigation arose later. There is no such duty in the Fifth Circuit or elsewhere, as other courts in this Circuit have recognized:

> [T]o accept plaintiffs' position would be to hold, in essence, that automobile manufacturers should retain and preserve every vehicle involved in any automobile accident — or at least the serious ones — indefinitely so that the vehicle will be available for inspection and testing in case someone were to decide to sue the manufacturer at some time in the future. This is obviously not a reasonable position.

*Davis v. Ford Motor Co.*, 375 F. Supp. 2d 518, 521-22 (S.D. Miss. 2005).  This Court should similarly decline to impose such a duty here.

Plaintiffs' argument that NHTSA's "investigation" of *Scifres* further triggered a duty is wrong both factually and legally.  First, NHTSA never investigated *Scifres*.  Rather, Graco reported the death of J.S. to NHTSA pursuant to the TREAD Act.  NHTSA requested follow-up information (which Graco provided), but never opened a formal investigation, requested to see crash-tested booster seats, or asked Graco to preserve such seats.  NHTSA's request for

information from Graco, which apparently satisfied the agency with respect to that incident, did not trigger a duty for Graco to start preserving crash-tested booster seats.

Ultimately, there is simply no evidence that Graco should have known between the time period 2002 to 2007, the dates of the crash tests plaintiffs now complain about (*see* Pls.' Mot. Ex. G), that crash-tested booster seats might be relevant to the instant case, filed two years after the end of this period.  Because plaintiffs cannot demonstrate that Graco ever had a duty before this suit was brought in 2009, or plaintiffs requested the seats in 2010, to preserve those tested products, the Court should deny their request for a sanction.

### C.    Plaintiffs Cannot Establish Graco Recycled Booster Seats in Bad Faith.

Plaintiffs' motion also fails because there is not a scintilla of evidence in this case that Graco's recycling of tested TurboBoosters was in bad faith.  Rather, recycling crash-tested seats instead of storing them for any period of time is a standard Graco procedure for all child restraints, and has been for years, regardless of the outcome of the test, as Graco employee Mark LaPlante testified:

> Q.    Well, they've represented in their discovery responses in this case that all those [TurboBooster] seats from all these tests have been destroyed.
>
> A.    Uh-hum.
>
> Q.    Does that jive with what you—
>
> A.    That would be about right, yeah.  Those seats take up a lot of room and after you're done testing them or you have the video results, you have the photographs, you have –you know, the injury values, all that sort of data, what do you need the seat for.

(M. LaPlante Dep. Tr. 57:3–13 (Dkt. No. 141, Ex. A).)  There is no evidence that Graco's recycling policy was implemented in an attempt to conceal crash test results from NHTSA or the public, as plaintiffs claim.  Nor is there any evidence that Graco recycles tested TurboBoosters in

an attempt to "suppress the truth."  Instead, Graco's history of disposing of TurboBoosters is the same type of "routine procedure" the *Vick* court found was insufficient to warrant a sanction. 514 F.2d at 737.

The cases plaintiffs cite in which sanctions were imposed have completely different factual patterns, and have no application to facts like these:

- In *Rimkus Consulting Group Inc. v. Cammarata* involved "allegations of willful misconduct: the intentional destruction of emails and other electronic information at a time when they were known to be relevant to anticipated or pending litigation. The alleged spoliators are the plaintiffs in an earlier-filed, related case and the defendants in this case. The allegations include that these parties . . .concealed and delayed providing information in discovery that would have revealed their spoliation."  688 F. Supp. 2d 598, 607 (S.D. Tex. 2010).  Even then, the court found that because plaintiffs had ample evidence to prosecute their case, "the most severe sanctions of entering judgment, striking pleadings, or imposing issue preclusion are not warranted."  *Id.* at 608.

- In *Arista Records LLC v. Tschirhart*, the defendant intentionally deleted her hard drive and then attempted to conceal the steps she took to do, after she had notice of the lawsuit and notice of a court order to preserve the hard drive.  241 F.R.D. 462, 463 (W.D. Tex. 2006).  The court imposed a sanction because of her clear notice that she was required to preserve the evidence, and the prejudice to plaintiffs as a result of the loss of the "best evidence" on their claims.  *Id.* at 465.

- *Escobar v. City of Houston*, which plaintiffs cite, found no evidence of bad faith despite the destruction of potentially relevant emails, and thus declined to impose a sanction. No. 04-1945, 2007 WL 2900581, at *19 (S.D. Tex. Sept. 29, 2007).

The other cases on which plaintiffs rely are not from this circuit.  Some of them do not require the same bad faith finding as the Fifth Circuit, and thus have no precedential or even persuasive authority on this Court.  They are also distinguishable from the facts here.  *See Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989) (imposing sanctions where defendant intentionally destroyed plaintiff's employee file to subvert outcome of litigation of which it had notice); *Nat'l Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 550 (N.D. Cal. 1987) (imposing sanctions where defendant undertook document purge after plaintiffs' issuance of discovery request in order not to have to produce relevant documents in discovery); *Turner v. Hudson Transit Lines*, 142 F.R.D. 68, 76 (S.D.N.Y. 1991) (holding that a finding of bad faith was not necessary, and imposing sanctions where defendants recklessly, but not intentionally, failed to maintain records after suit was filed); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1447 (C.D. Cal. 1984) (imposing sanctions where defendant intentionally destroyed documents after being served with complaint and discovery requests for those documents); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993) (affirming exclusion of evidence where defendant failed to preserve subject car, and noting no finding of bad faith was necessary); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988) (holding that court was unable to determine based on appellate record whether sanction was warranted and remanding for consideration of issue).

Plaintiffs' motion ignores the key Fifth Circuit cases on spoliation, and the holding in *Vick* and its progeny, that where documents or other evidence are destroyed under routine procedures without bad faith, no sanction is warranted.  514 F.2d at 737 (affirming denial of adverse inference where "[t]here was indication. . .that the records were destroyed under routine procedures without bad faith and well in advance of [plaintiff's] service of interrogatories."); *see*

*also King*, 337 F.3d at 556 (finding destruction of documents pursuant to routine policy did not give rise to adverse inference).  Here, too, Graco recycled TurboBooster seats pursuant to its regular business practices well before it had notice of the first TurboBooster lawsuit in 2005 (in which plaintiffs pursued a wholly different theory of defect and never requested to see crash-tested TurboBoosters).  It continued to do so after that case, *Scifres*, was resolved—before the McCune accident even occurred, and more than two years before plaintiffs served Graco with the complaint in this case, and almost three years before plaintiffs served their discovery requests in this case.  This conduct cannot constitute bad faith, and the Court should accordingly deny plaintiffs' motion.

## D.   Plaintiffs Cannot Establish Prejudice to Their Case.

Plaintiffs do not adequately set forth why they are prejudiced by the absence of crash-tested booster seats, in light of the extensive written, photographic and video documentation of all those tests, which have been produced to plaintiffs.  They claim that the forensic evidence on these seats "undoubtedly" would have matched J.M.'s booster seat after the accident.  Such a claim is mere speculation, and it does not support a finding of prejudice.  *See Escobar*, 2007 WL 2900581, at *19 (refusing to impose sanction where plaintiffs could only speculate that destroyed evidence would have been relevant to their claims).  The fact that the injury values in all those tests were recorded at values well below the federal requirements further refutes their claim of prejudice.

Moreover, plaintiffs already have extensive evidence of the performance of the TurboBoosters in tests where armrest separation occurred, as just one photograph from a crash test journal indicates:



Because there is ample evidence of the tests in which armrests separated, plaintiffs cannot demonstrate the requisite level of prejudice to justify preclusion of Graco's defense in this case.

## IV.    Conclusion

The Court should decline to establish a new duty on manufacturers to preserve all tested products indefinitely.  Because there is no evidence that Graco recycled crash-tested booster seats in bad faith, or that plaintiffs are prejudiced by the absence of those seats, Graco requests that the Court deny plaintiffs' motion.

---

[4] *See* Journal 5687, run 7022281.

Respectfully submitted,

/s/ Heidi Oertle
Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile

Jeffrey S. Patterson
Hartline Dacus Barger Dreyer LLP
6688 N. Central Expressway, Suite 1000
Dallas, Texas 75206
(214) 346-3701
(214) 267-4201 facsimile

ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on July 29, 2011, she filed the foregoing document on all counsel of record via the Court's ECF system.

/s/ Heidi Oertle
Heidi Oertle