IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CHAD MCCUNE *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 5:2009cv00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## GRACO CHILDREN'S PRODUCTS INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* (#1) REGARDING THE CAUSE OF THE ACCIDENT AND THE "BELT BEHIND THE BACK" DEFENSE

Defendant Graco Children's Products Inc. ("Graco") respectfully submits the following opposition to plaintiffs' Motion *in Limine* (#1) Regarding (i) the Cause of the Accident and (ii) the "Belt Behind the Back" Defense (Dkt. No. 135).

### I.      Introduction

Plaintiffs' motion *in limine* #1, like many of their other motions, is nothing more than an attempt to avoid having to deal with evidence they do not like.  They begin their motion with attacks on Graco (irrelevant to the instant Motion), including a recitation of Graco's alleged financial status and supposed motivations for its actions in designing and marketing the subject TurboBooster. (Pls.' Mot. 1–2.)  Apparently, according to plaintiffs, these supposed facts justify stripping Graco of the defense that J.M.'s injuries resulted not from any design feature of the TurboBooster, but from Carmen McCune's actions in increasing the severity of the accident, and J.M.'s having been partially unrestrained at the moment of impact (what plaintiffs call the "belt behind the back" defense).  Incredibly, Plaintiffs claim this defense is a result of Graco's inability to "step up and defend the failure of its product on the merits."  (*Id.* at 2.)

It is difficult to imagine a defense that goes more to the merits, however, than one that shows the TurboBooster did not malfunction at all, and the true cause of the occurrence and injuries in question was another's negligence and misuse of the product at issue. Plaintiffs' motion attempts to deprive Graco of this defense. Neither Texas law nor long-established principles of due process would allow such a result, and the Court should deny their motion.

II.     **Argument**

    A.     **Texas Law Requires Admission of Evidence Regarding *All* Causes of J.M.'s Injuries.**

Plaintiffs simply ignore Texas law on the crashworthiness doctrine. As set forth more fully in Graco's Motion to Allow Evidence Regarding Carmen McCune's Fault in Causing the Occurrence and J.M.'s Injuries (Dkt. No. 134), Texas law requires that in crashworthiness cases the defendants be permitted to submit evidence regarding comparative causation as to all individuals whose actions or omissions combined to cause the entirety of plaintiffs' injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon 2011); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex. 1984) (holding that juries must be allowed to consider plaintiff's conduct, including both the cause of the collision and product misuse, in crashworthiness cases); *Gen. Motors Corp. v. Castaneda*, 980 S.W.2d 777, 780-81 (Tex. Ct. App. 1998) ("[I]f two or more causes produce a single injury, the jury may attribute the injury to any or all of the causes."). A consumer's unreasonable use of a product, other than the failure to discover or guard against a product defect, is likewise subject to principles of comparative fault. *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 594 (Tex. 1999) (noting that, "Public policy favors reasonable conduct by consumers regardless of whether a product is defective," and affirming submission of plaintiff's own fault to jury). These cases and the reasoning on which their holdings rest also control in this case, and together they require that the jury be allowed to consider evidence of the

acts and omissions by Ms. McCune that caused J.M.'s injuries, including her driving directly into the back of a tractor without braking or attempting to avoid the tractor, her excessive rate of speed when she struck the tractor, her text messaging just prior to the accident occurring, and her misuse of J.M.'s booster seat in a manner which failed to restrain him properly.

Disregarding *Duncan v. Cessna Aircraft Co.*, the leading case on the crashworthiness doctrine in Texas and the other cases cited above, plaintiffs focus instead on three other cases, none of which controls the instant case. In *Frazier v. Honeywell Int'l, Inc.*, 518 F. Supp. 2d 831 (E.D. Tex. 2007), the parties stipulated that a third-party in a separate vehicle was at fault for causing the accident. Further, the experts for plaintiffs and defendant admitted that the only cause of the decedent's fatal injuries was her ejection from the vehicle. *Id.* at 837. Accordingly, the question of what caused the decedent's injuries was confined to whether or not the seat belt in question was buckled and malfunctioned, or whether it was unbuckled to begin with. The conduct of the driver in another vehicle, the *Frazier* court held, therefore became immaterial to how the seat belt performed in the subject vehicle. In fact, Honeywell did not even argue that the jury should have allocated fault to the other driver. *Id.* at 840. Honeywell's expert agreed that the decedent would not have been killed had her seat belt remained latched. *Id.* at 837.

The *Frazier* court excluded evidence about the ways in which the other driver was negligent in causing the accident because the parties stipulated that she was the sole cause of the collision. *Id.* at 840. Here, there is no such stipulation. While plaintiffs, in an eleventh hour, desperate tactical move, say they "admit" that Ms. McCune was fully responsible for the accident, Graco has not so stipulated. In reality, Ms. McCune refused to accept responsibility for causing the collision in her *sworn* testimony *given in this case*:

Q.    You believe it was your fault that with [*sic*] you hit the tractor?

A.    **No, it was not my fault that I hit the tractor.**

Q.    Okay.  Why do you think it was not your fault that you hit the tractor?

A.    If it was my fault that I hit the tractor, then I probably would have seen the tractor
and hit it deliberately.  It was not my fault that I hit the tractor.  I didn't see the
tractor. There were other people in part of me hitting that tractor, so –I do not
deny that yes, I was part of it, but **I will not take full responsibility**—

Q.    Okay.

A.    **--for hitting it.**

(C. McCune Dep. 203:6–19, Aug. 19, 2010 (emphasis added).)

Now, on the eve of trial, plaintiffs suddenly want to admit that the accident was in fact
Ms. McCune's sole responsibility after all.  Plaintiffs want to use a vague reference to Ms.
McCune being "distracted" to preclude evidence of the identity and nature of that distraction.
Specifically, plaintiffs intend to claim that Ms. McCune was distracted by her children fighting
over a toy in the back seat of the vehicle which coincidentally allowed Ms. McCune to view the
position of J.M.'s shoulder belt, thus enabling her now to testify that J.M. was in fact wearing his
shoulder belt properly at the time of the accident.  However, at the same time Ms. McCune says
she was turned around to observe J.M., the evidence will show instead that Ms. McCune was
using her cell phone to send and receive text messages right up to the time of the collision.  (*See,
e.g.*, Dkt. No. 45, Ex. C, McCune AT&T Records (indicating nine text messages exchanged
between 12:38 p.m. and 1:59 p.m.); Dkt. No. 45, Ex. A, Police Report (indicating time of
accident as 2:00 p.m.).)  Graco should be allowed to introduce this evidence to challenge Ms.
McCune's version of how the accident came about, including her expected testimony that while
she was distracted, she noticed that J.M.'s belt was on his torso properly.  In *Frazier*, what was
going on in a vehicle separate from the vehicle in which the subject injuries took place was held
to be irrelevant in light of both parties' stipulation that the driver of that other vehicle was 100%
at fault for the collision.  In stark contrast, this case does not implicate a third-party's conduct

that went on in a separate vehicle.  Rather, the evidence of what occurred inside the subject Ford Sport Trac before the accident is directly relevant, indeed vital, to the claims and defenses in this case.  Accordingly, the holding in *Frazier* does not apply because it is factually inapposite.

Moreover, Graco will show that Ms. McCune failed to restrain J.M. in his booster seat properly—an omission that has nothing to do with the cause of the accident at all, but relates only to the cause of J.M.'s injuries.  *Frazier* does not even address the consumer's misuse of a product—something Texas law clearly allows the jury to consider.  *See Sanchez*, 997 S.W.2d at 595 (holding that defendant should be allowed to present evidence that plaintiff's own negligence played a role in causing accident); *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 202 (5th Cir. 2006) (holding that evidence of plaintiff's failure to wear his seat belt was admissible in crashworthiness case).

*General Motors v. Burry*, 203 S.W.3d 514 (Tex. Ct. App. 2006), also differs from the facts of the instant case in several material respects.  In *Burry,* the defendant was allowed to present evidence of the driver's negligence in causing a plaintiff passenger's injuries, including the circumstances that lead to the collision, and the jury in fact allocated 51% of the fault to that party.  *Id.* at 525, 543–44.  The court excluded only two types of evidence:  plaintiffs' allegations against the driver, who had been a named defendant, and the testimony of an officer who investigated the accident at the scene.  The District Court ruled that since the parties stipulated, and parties' experts agreed, that the other driver's conduct contributed to the injured passenger's injuries, not just the collision itself, the allegations in plaintiffs' complaint against the driver were cumulative, as was the testimony of the officer that the driver violated applicable traffic laws (which was also stipulated).  Here, the McCunes are <u>not</u> admitting that the conduct of Ms. McCune caused J.M.'s injuries — just that her distracted driving caused the collision.  Contrary

to plaintiffs' assertion, *Burry* does not hold that evidence of another's fault in causing the accident is prejudicial or inadmissible pursuant to Federal Rules of Evidence 402 or 403. Instead, *Burry* stands for the simple proposition that cumulative evidence, under factual circumstances which are not present in the instant case, should be excluded.

*Green v. Schutt Sports Mfg. Co.*, 369 Fed. App'x 630 (5th Cir. 2010), a case brought against a football helmet manufacturer, actually supports the admission of Ms. McCune's conduct in causing J.M.'s injuries. *Green* dealt with the admission of evidence of assumption of risk in a case involving a neck injury sustained while playing football. The trial court admitted evidence that the tackling technique the player employed was a contributing cause of his injuries. *Id.* at 635. The Fifth Circuit upheld the admission of this evidence, holding that it was not error to allow evidence of how the plaintiff was using the product at issue to establish his comparative fault. *Id.* at 636. To the extent *Green* is applicable to this case, it supports the admissibility of evidence that Ms. McCune misused the TurboBooster in failing to secure J.M. with both the lap and shoulder belt while he was seated in the TurboBooster.

### B. Chad Crane's Testimony Does Not Preclude Evidence of Carmen McCune's Negligence.

Plaintiffs' next novel theory is that because Chad Crane, a Graco employee, testified that when designing a car seat, he does not consider whether the accident came about because an armadillo or deer ran out in front of the car, or whether the driver was on her phone at the time of the accident, the doctrine of quasi-estoppel precludes Graco from introducing evidence of Ms. McCune's negligence. (*See* Pls.' Mot. 8–9.) This theory is unavailing for several reasons.

First, the doctrine of quasi-estoppel does not apply at all to tort causes of action. *See In re Boehme*, 256 S.W.3d 878, 888 (Tex. Ct. App. 2008) (noting that "[g]enerally, quasi-estoppel is applied in contract actions," and declining to extend application of the doctrine outside the

contracts context).  Graco is aware of no case, nor have plaintiffs cited one, applying the doctrine in the context of a torts claim.  *Eckland Consultants, Inc. v. Ryder, Stillwell, Inc.*, on which plaintiffs attempt to rely, is a breach of contract case.  176 S.W.3d 80, 81 (Tex. Ct. App. 2004).

The law is clear that Mr. Crane's testimony does not bind Graco or limit its defense at the trial of this matter.  Even an employee's Rule 30(b)(6) testimony "is admissible against the party designating the representative but is not 'binding' on the entity for which the witness testifies in the sense of preclusion or judicial admission."  *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, __ F. Supp. 2d __, 2011 WL 837736, at *25 n.11 (S.D. Tex. March 9, 2011) (citing C. Wright *et al.*, *Federal Practice & Procedure* § 2013 (2d ed. 1994)).  In this case, Mr. Crane was not designated as Rule 30(b)(6) witness—plaintiffs noticed him specifically to be deposed.  In fact, plaintiffs elected never to take a deposition pursuant to Fed. R. Civ. P. 30(b)(6) in this case.  There is no authority for plaintiffs' proposition that Mr. Crane's testimony as an individual witness can have a preclusive effect as to Graco's defenses in this case.

Finally, contrary to plaintiffs' argument, Mr. Crane's testimony does not even contradict Graco's defense in this case.  Mr. Crane testified in response to objectionable questions calling for a lay witness's conclusion regarding the term crashworthiness, that he attempts to design car seats to reduce the risk of injuries in accidents, regardless of their cause.[1]  This testimony does not contradict or preclude Graco's defense that the subject TurboBooster was not defective, and that J.M.'s injuries were caused not by any aspect of his booster seat, but rather Ms. McCune's negligence in speeding, text messaging while driving, and failing to restrain J.M. properly prior

---

[1] Graco has objected to plaintiffs' designation of portions of Mr. Crane's testimony cited in their motion.  Graco asserts that those portions of Mr. Crane's testimony are not admissible in this case in the first instance.

- 7 -

to the accident.  The Court should reject plaintiffs' argument that Mr. Crane's testimony precludes Graco's defense.

### C.    Graco's Theory that J.M.'s Seatbelt Was Behind His Back Is Amply Supported.

Plaintiffs next argue that Graco should be precluded from showing that J.M.'s injuries resulted from his seat belt being behind his back because the theory was "created out of thin air by Graco's experts."  (*See* Pls.' Mot. at 9.)  The Court should disregard this portion of plaintiffs' argument because it is a *Daubert* challenge on the sufficiency of Graco's experts' opinions, yet plaintiffs did not raise the issue in the *Daubert* motions they filed.  The deadline for filing *Daubert* motions was on May 20, 2011, and plaintiffs have therefore waived this argument by making it two months late.  *See Hernandez v. Gen. Motors Corp.*, No. C-04-319, 2001 WL 36103819, at *1 (S.D. Tex. July 3, 2001) (declining to consider motions *in limine* that raised challenges to validity of foundation and reliability of expert testimony because the *Daubert* deadline had passed, and noting, "Challenges to expert testimony may be waived for failure to adhere to deadlines.").

Above all, plaintiffs' argument is without merit, because Graco's experts' opinions are adequately supported.  The bases for their opinions that J.M.'s belt was behind his back, as set forth more fully in their Rule 26 reports, including the following evidence in the record in this case:

- Ms. McCune's admission, on the MySpace page she wrote for J.M. after the accident but before this lawsuit was filed, that "**I took my shoulder strap off just minutes before our crash & the impact made my lap belt break my lower lumbar & backless booster seat**."  (Dkt. No. 45, Ex. D, MySpace Page (emphasis added).)

- Physical evidence of marks, smearing, and deformation on the subject vehicle seatbelt and seatbelt assembly at J.M.'s seating position.  (*See* Van Arsdell Rep. (Dkt. No. 83, Ex. A.).)

- Testing conducted by Dr. Van Arsdell that corroborates Graco's theory.  (*Id.*)

- The pattern of J.M.'s injuries.  (*See* Corrigan Rep. (Ex. A to Resp. to Motion in Limine #3).)

According to plaintiffs, the testimony of just one witness, Bobby Jackson, precludes reference to all of this evidence.  Mr. Jackson offered testimony that Carmen McCune's Ford Explorer passed him before the accident, that he could see through that vehicle's tinted window, on a bright, sunny day, into the backseat as it passed him, and that J.M. was wearing his seat belt and was well-behaved.  (*See* Dep. Bobby Jackson at 10–13 (attached as Ex. B).)  In response to objectionable, leading questions using a photograph taken by plaintiffs' expert of a surrogate in a booster seat, Mr. Jackson testified that upon arriving at the scene of the accident, he observed J.M.'s belt in front of him.  (*Id.* at 26–42.)  Graco certainly has the right to challenge Mr. Jackson's testimony as not credible and to present evidence (including physical evidence left on the seat belts at J.M.'s seating position) to contradict Mr. Jackson's version of events, and the jury should be allowed to be the arbiter of that conflict.

In any case, there is no precedent for this Court's precluding Graco's defense, or evidence in support thereof, just because it may be contradicted by other evidence in the record.  Rather, such circumstances go to credibility, not admissibility.  *See Dalton v. Toyota Motor Sales, Inc.*, 703 F.2d 137, 140 (5th Cir. 1983) ("[I]t is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.") (internal quotations marks and citations omitted).  Nor is an expert's opinion excluded simply because of contradictory evidence in the record.  *See Primrose Operating Co. v. Nat'l Am. Ins.*, 382 F.3d 546, 562 (5th Cir. 2004) (affirming denial of motion to strike opinions of expert who relied on some facts in the record, while disregarding others); *United States v. Norris*, 217 F.3d 262, 270 (5th Cir. 2000) (affirming denial of motion to strike

opinions of expert whose tests reflected the inconsistencies in the record); *Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d 953, 958 (S.D. Tex. 2008) (denying plaintiff's motion to exclude expert testimony based on his disregard of inconsistent factual information).  Accordingly, the Court should reject plaintiffs' argument that Mr. Jackson's testimony bars Graco from presenting evidence, including expert testimony, that J.M.'s seatbelt was behind his back at the time of the collision.

> ### D.   Graco's Experts Are Entitled to Rely on Testing Performed for This Case.

Finally, plaintiffs argue that testing performed by Graco's child restraint expert is not admissible because it is not substantially similar to the subject accident.  (*See* Pls.' Mot. at 13–15.)  Plaintiffs never attempted to challenge this testing in the *Daubert* motion they filed to bar Dr. Van Ardell's testimony.  (*See* Dkt. #83).  This argument, made more than two months after the deadline for filing *Daubert* motions has passed, is therefore waived.  *See Hernandez*, 2001 WL 36103819, at *1.

Plaintiffs' argument about Dr. Van Arsdell's testing also lacks substantive merit.  They ignore or miss the purpose of Dr. Van Arsdell's testing.  Dr. Van Arsdell performed a total of six tests, all performed at the principle direction of force and delta-V that plaintiffs' accident reconstruction expert opined were present in the actual accident.  These tests were all performed using an actual 2005 Explorer Sport Trac exemplar vehicle mounted to a crash test sled.  In two of these tests, the restraint was configured as plaintiffs claim it was at the time of the accident— shoulder belt across J.M.'s torso with eight inches of slack in the lap belt.  The armrest did not separate in those two tests, and, most importantly, the shoulder belts in both tests remained on the shoulder, and the dummy's upper torso remained restrained.  In two other tests, Dr. Van Arsdell wanted to see how the shoulder belt might move when the armrest actually separated,

and so he promoted separation by not installing the screws and not securing the armrest fully into the seat's base. Those tests were designed to determine whether the shoulder belt moves off shoulder as a result of the armrest separating from the base — in essence testing the central theory of the plaintiffs' experts in this case. In neither of those tests did the shoulder belt move off of the dummy's shoulder.[2] Moreover, the results of Dr. Van Arsdell's tests indicate that the forensic marks left on J.M.'s seatbelt are consistent with his shoulder belt behind his back. Because those tests were designed to assess particular issues in this case, and not to simulate the entire accident, plaintiffs' argument that the testing was "rigged" is off the mark.

Moreover, the substantial similarity requirement "is not applied or is highly diluted" when an expert's experiment is offered to show a scientific principle. *Fisher v. R.D. Werner Co., Inc.*, 1 F.3d 1236 (5th Cir. 1993) (citing *McCormick On Evidence* § 202, at 601–03 (3d ed. 1984); *Young v. Illinois Cent. Gulf R. Co.*, 618 F.2d 332, 338 (5th Cir. 1980)) (affirming admission of impact-experiment videotape, which satisfied the "most basic requirement" that the subject products be the same); *accord Muth v. Ford*, 461 F.3d 557, 566 (5th Cir. 2006) (finding "substantial similarity" is not required when "demonstrative evidence is offered only as an illustration of general scientific principles"). Dr. Van Arsdell's testing satisfies this standard.

Indeed, the same argument plaintiffs advance here was rejected in a case on which they rely, *Frazier v. Honeywell Int'l, Inc.*, 518 F. Supp. 2d 831, 839 (E.D. Tex. 2007). The *Frazier* court specifically rejected the argument that crash test videos were inadmissible, as not substantially similar to the conditions of the accident, because the expert was relying on the videos to show "what happens during impact when a [seatbelt] buckle comes unbuckled." *Id.* In

---

[2] Plaintiffs' experts performed no testing of their own to substantiate, prove or disprove their theory.

these situations, cross-examination, if applicable, can adequately inform the jury of any dissimilarity between the tests and the conditions of the accident. *Id.*; *see also More, JC, Inc. v. Nutone Inc.*, No. No. A-05-CA-338 LY, 2007 WL 4754173, at \*7 (W.D. Tex. Mar. 21, 2007) ("Questions about the dissimilarities in the tests should affect the weight that the jury gives the tests, rather form a basis to exclude the tests and resulting opinions altogether.").

Likewise here, plaintiffs are free to cross examine Dr. Van Arsdell on his testing methods.  In fact, Dr. Van Arsdell's report discloses clearly that his testing was intended to create armrest separation. (Van Arsdell Rep. at 9.)  His report also discloses how he obtained armrest separation. (*Id.*)  But in their effort to misdirect, plaintiffs argue that these tests are "truly the epitome of junk science at its worst" and offered merely to show "that a shoulder belt behind the back can pull off an armrest and that this is what happened to J.M." (Pls.' Mot. at 14.)  Plaintiffs' argument overlooks, and invites this Court to overlook, the scientific principles in Dr. Van Arsdell's testing.  Contrary to plaintiffs' misguidance, Dr. Van Arsdell's testing showed, through admissible scientific principles, that the kinematics with and without armrest separation are comparable for similar seat belt configurations, and that armrest separation did not promote shoulder belt "roll out." (Van Arsdell Rep. at 12–15.)  The Court should therefore deny plaintiffs' motion to exclude his testing.

**Conclusion**

This Court should deny plaintiffs' attempt to squelch evidence they do not like, and properly allow the jury to weigh any contradictions in the evidence in this case.  For the reasons set forth above, Graco respectfully requests that the Court deny plaintiffs' Motion *in Limine* Regarding (i) the Cause of the Accident and (ii) the "Belt Behind the Back" Defense (Dkt. No. 135).

Respectfully submitted,

/s/ Heidi Oertle
Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile

Jeffrey S. Patterson
Hartline Dacus Barger Dreyer LLP
6688 N. Central Expressway, Suite 1000
Dallas, Texas 75206
(214) 346-3701
(214) 267-4201 facsimile

ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on July 29, 2011, she filed the foregoing document on all counsel of record via the Court's ECF system.

/s/ Heidi Oertle
Heidi Oertle