**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **CHAD MCCUNE, et al.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 5:09-CV-107** |
| | § | |
| **GRACO CHILDREN'S PRODUCTS, INC., et al.,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**O R D E R**

Before the Court are Plaintiffs' Motions in Limine (Dkt. Nos. 135-138, 143, 145, and 149) and Defendant's Responses (Dkt. Nos. 164-168 and 170-171).

Also before the Court are Defendant's Motions in Limine (Dkt. Nos. 133-134, 139-142, 144, and 146–147), Plaintiffs' Responses (Dkt. Nos. 153-157, 159-163), Defendant's Replies (Dkt. Nos. 177-180 and 182), and Plaintiffs' Sur-Reply (Dkt. No. 183).

On August 8, 2011, the Court held a hearing regarding these motions (hereinafter "August 8th Hearing"). Having considered all relevant papers and pleadings and counsels' arguments, the Court finds that Plaintiff's Motions in Limine should be **granted in part** and **denied in part** as set forth below. The Court also finds that Defendant's Motions in Limine should be **granted in part** and **denied in part** as set forth below.

**I. Plaintiffs' Motions in Limine**

**A.     No. 1 - Cause of the Accident and Belt Behind the Back Defense (Dkt. No. 135)**

Plaintiffs move in limine to exclude any evidence as to the cause of the accident. Plaintiffs state they admit that Carmen McCune's Ford struck the rear of the tractor because she

was distracted and Mrs. McCune accepts full responsibility for causing the collision between her car and the tractor. Dkt. No. 135 at 2. Because Mrs. McCune accepts full responsibility for causing the collision, Plaintiffs argue that any evidence regarding any alleged cell phone use by Mrs. McCune, how distracting cell phone use is, how Mrs. McCune was driving in the minutes and hours prior to the crash, or the reasons or motivations that may have led to her being distracted are irrelevant, cumulative, prejudicial, and inadmissible under Fed. R. Evid. 402 and 403. Plaintiffs submit that this case focuses on whether or not the failure of the TurboBooster was a producing cause of J.M.'s injuries and not on the cause of the accident itself.

Plaintiffs also move in limine to exclude any evidence or testimony alleging that J.M.'s shoulder belt was behind his back at the time of the collision. Dkt. No. 135 at 9. Plaintiffs argue that undisputed eyewitness testimony shows that J.M.'s shoulder belt was in front of him at the time of the collision and Defendant should not be allowed to reference this theory in front of the jury or offer expert opinion or testimony that J.M.'s shoulder belt was behind him.

Defendant responds that Texas law requires admission of evidence regarding all causes of J.M.'s injuries. Dkt. No. 171 at 2. Defendant argues that the jury should be allowed to consider evidence of the acts and omissions by Mrs. McCune that caused J.M.'s injuries, including her driving directly into the back of the tractor without braking or attempting to avoid the tractor, her excessive rate of speed at the time of the collision, her text messaging just prior to the accident, and her misuse of the TurboBooster. Defendant argues that it should be allowed to introduce evidence regarding Mrs. McCune's actions to challenge her version of how the accident occurred, and her testimony that she had noticed that J.M.'s shoulder belt was properly positioned.

Defendant further responds that it has the right to challenge the eyewitness' version of events and observations regarding J.M.'s shoulder belt. Dkt. No. 171 at 9. Defendant argues that evidence supporting its defense should not be precluded just because other evidence in the record may contradict it. Defendant further argues that Plaintiffs' arguments regarding Defendant's experts' opinions and testimony are properly raised in *Daubert* motions and not in the context of motions in limine.

At the August 8th Hearing, Plaintiffs' counsel reiterated that Plaintiffs have stipulated that Mrs. McCune has accepted full responsibility for the collision. Plaintiffs' counsel also explained that he believes that testimony and evidence regarding the speed of Mrs. McCune's vehicle is admissible but that information regarding her cell phone usage in the vehicle prior to the collision is not.

"[I]t should be the unusual case in which a court refuses to accept an offer to stipulate. Courts generally should be receptive to stipulations that will minimize the prejudicial aspects of evidence. The saving in time and in risk of prejudice may be substantial." *Briggs v. Dalkon Shield*, 174 F.R.D. 369, 374, n. 8 (D. Md. 1997) (*citing* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 403.04[3], at 403-45 (2d ed.1997)). The Court is inclined to accept Plaintiffs' stipulation regarding Mrs. McCune. The Court's acceptance of Plaintiffs' stipulation minimizes the need for the parties to present evidence regarding Mrs. McCune's level of fault in causing the collision and renders the Court's imposed time limits for trial even more appropriate. The question that now remains is whether Defendant is still allowed to present evidence and testimony regarding the cause of the collision

Plaintiffs argue that evidence relating to the cause of the accident is inadmissible under

Rules 402 and 403 because Mrs. McCune accepts full responsibility for the collision. Defendant responds that it is entitled to present to the jury undiluted evidence regarding Mrs. McCune's actions in the vehicle prior to the accident so that the jury can properly determine proportionate responsibility for J.M.'s injuries. Fed. R. Evid. 403 states "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Mrs. McCune has admitted that she was distracted while driving and that is why she collided with the tractor. She has accepted full responsibility for the collision. Additionally, Mr. McCune, in a complaint that he filed against Mrs. McCune, has stated that J.M. suffered injuries due to Mrs. McCune's negligence. In light of these admissions regarding Mrs. McCune's actions, the Court finds that evidence of Mrs. McCune's cell phone use prior to the collision would be cumulative and would unfairly prejudice the Plaintiffs. Accordingly, testimony and evidence regarding any alleged cell phone use by Mrs. McCune, how distracting cell phone use is, how Mrs. McCune was driving in the minutes and hours prior to the crash, or the reasons or motivations that may have led to her being distracted is cumulative, prejudicial, and inadmissible under Fed. R. Evid. 402 and 403.

However, if Plaintiffs present evidence or testimony that shortly prior to the collision, Mrs. McCune turned around and observed that the shoulder belt was properly positioned across J.M.'s torso, Plaintiffs may have then opened the door to testimony regarding Mrs. McCune's actions while driving prior to the collision. Defendant may then be entitled to present rebuttal evidence regarding any alleged cell phone use by Mrs. McCune, how distracting cell phone use is, and the reasons or motivations that may have led to her being distracted such that she could

not have observed the location of the shoulder belt across J.M.'s torso.

Accordingly, Plaintiff's motion in limine regarding evidence as to the cause of the accident is hereby **CONDITIONALLY GRANTED**.  If Defendant believes that Plaintiffs have opened the door regarding Mrs. McCune's cell phone usage prior to the collision, counsel for Defendant should approach the bench.

Plaintiffs also seeks to exclude any evidence or testimony regarding the "behind the back" theory because they claim that this theory is contradictory to eyewitness accounts of the accident. However, Plaintiffs ignore the fact that Defendant is entitled to rebut eyewitness testimony with other evidence and testimony.

Plaintiffs also argue that Defendant's experts should not be allowed to opine regarding the "behind the back" theory.  However, Plaintiffs' arguments are more appropriate for a *Daubert* motion regarding the admissibility of Defendant's experts' opinions than in a motion in limine. Nonetheless, the Court will address the merits of Plaintiffs' arguments.

At the August 8th Hearing, Plaintiffs explained that they main objection is to some tests that Defendant's expert Dr. William Van Arsdell performed.  Specifically, Plaintiffs object that two of the six tests (Tests 5 and 6) performed by Dr. Van Arsdell featured TurboBoosters that had armrests that were not properly secured, contrary to the TurboBooster that J.M. used. Plaintiffs argue that these tests were not alike the subject collision and should be excluded.

"In order for an experiment of this type to be admissible in evidence, it is not required that all the conditions shall be precisely reproduced, but they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed."  *Barnes v. General Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977).  At the

August 8th Hearing, Defendant appears to agree with Plaintiffs in that tests 5 and 6 are not substantially similar to the subject accident.  However, Defendant argues that these tests were run to show what would happen to the seat belt if the arm rest had separated from the seat at the speed that Plaintiffs' expert believe Mrs. McCune was traveling at.  Accordingly, Plaintiff's motion in limine regarding the "behind the back" theory is hereby **DENIED.**  However, Defendant may only present evidence and testimony regarding these two tests by Dr. Van Arsdell for the limited purpose of show what would happen to the seat belt if the arm rest had separated from the seat.

**B.      No. 2 - Defendant's "Compliance with FMVSS 213" Defense (Dkt. No. 136)**

Plaintiffs argue that Defendant should not be allowed to offer evidence or testimony regarding the TurboBooster's compliance with FMVSS 213 because Defendant destroyed all of the TurboBooster seats that were tested and had armrests that completely separated from the seat. Dkt. No. 136 at 2.  Plaintiffs argue that the TurboBoosters that failed in the FMVSS 213 testing would have been "plausible" evidence on the issue of compliance and that Defendant's destruction of these seats was spoilation of evidence.  Plaintiffs further allege that Defendant should have been aware of its duty to preserve these TurboBoosters because litigation and a federal inquiry were pending.  The litigation commenced in late 2005, and the NHTSA request for information relating to the litigation took place in 2006.  Plaintiffs argue that their inability to examine these TurboBoosters is highly prejudicial to its case.

Defendant respond that it had "recycled crash-tested TurboBoosters following thorough written, photographic and video documentation of the tests pursuant to routine business practice."  Dkt. No. 164 at 2.  Defendant states that it was never on notice, until Plaintiffs served

a request to produce in 2010, that the crash-test TurboBoosters would be relevant to the case. Defendant also asserts that given the extensive documentation of the crash tests, Plaintiffs are not prejudiced by the absence of the TurboBoosters. Defendant further disputes that in the litigation Plaintiffs reference, the plaintiffs never sought the crash-tested TurboBoosters during discovery. Furthermore, the litigation settled in 2007 and Defendant argues that it did not have a duty to preserve the seats after that case had settled.

Plaintiffs have never brought up the possibility that Defendant had potentially engaged in the spoilation of evidence in this case. If Plaintiffs believe that Defendant had improperly destroyed relevant evidence, it should have raised these issues in a motion for sanctions and not shortly before trial in a motion in limine. Plaintiffs have not shown that Defendant's recycling of crash-test TurboBooster seat was done in a willful attempt to destroy evidence relevant to this litigation. Accordingly, Plaintiffs' motion in limine regarding compliance with FMVSS 213 is hereby **DENIED**. If evidence showing that Defendant willfully destroyed evidence relevant to this litigation arises during trial, then an adverse inference instruction to the jury might be appropriate at that time.

**C.      No. 3 - Safety Belt Use of S.P. (Dkt. No. 149)**

Plaintiffs argue that no reference should be made to the alleged cause of the injuries sustained by S.P. Specifically, Plaintiffs want to keep Defendant from mentioning or alluding to S.P., who was also in the car during the accident, having her shoulder belt behind her back at the time of the collision and that she should have been in a child safety seat. Dkt. No. 149 at 2. Plaintiffs argue that S.P. has never been a claimant or plaintiff in this case and has not been mentioned in relation to Defendant's affirmative defenses. Plaintiffs also argue that Arkansas

law must be applied on any claim that S.P. was not using her seat belt properly because the accident occurred in Arkansas. Plaintiffs further argue that S.P.'s medical records and medical condition are privileged under Texas law. Finally, Plaintiffs argue that use of evidence showing S.P.'s seat belt use to show that Mrs. McCune is a bad mother to S.P. as well J.M. is an improper attack on Mrs. McCune's character that is prohibited.

Defendant responds that it does not intend to show that Mrs. McCune was a bad mother or that she was habitually a bad and careless mother. Dkt. No. 168 at 4. Rather, Defendant intends to offer S.P.'s injuries and her seatbelt usage for the same or similar reasons that Plaintiffs and their experts have proffered. Defendant further responds that Plaintiffs are estopped from arguing that Arkansas law applies to S.P.'s seatbelt usage because Plaintiffs have consistently taken the position that Texas law governs during the pendency of this case. Even if Plaintiffs were not estopped from arguing Arkansas law applies, Defendant asserts that Plaintiffs' argument that Arkansas law applies merely because the accident happened in Arkansas is meritless. Defendant argues that under the "most significant relationship" test, Texas law should apply because Texas is where the TurboBooster was purchased and where Plaintiffs reside. Finally, Defendant argues that no physician-patient privilege applies to S.P.'s medical records because Plaintiffs have already disclosed and communicated those records to their experts as part of this case and Plaintiffs' experts have relied on those medical reports.

On balance, the Court finds that evidence and testimony regarding S.P.'s injuries and medical reports are irrelevant and inadmissible under Rule 402. However, even if this evidence is relevant under Rule 402, Plaintiffs have shown that evidence regarding S.P.'s injuries, including S.P.'s medical records, may be unfairly prejudicial to Plaintiffs and thus would be

inadmissible under Rule 403.  However, this evidence may become admissible if Plaintiffs

introduce testimony, argument, or evidence regarding S.P.'s injuries or physical well-being after

the collision.  Therefore, Plaintiffs' motion in limine regarding the seatbelt use by S.P. and S.P.'s

medical records is hereby **CONDITIONALLY GRANTED**.  If Defendant believes that

Plaintiffs have opened the door regarding S.P.'s injuries, medical records, and seatbelt usage,

counsel for Defendant should approach the bench.

**D.      No. 4 - Use of Statistical Evidence (Dkt. No. 137)**

Plaintiffs have withdrawn their motion in limine to exclude exhibits or evidence that

contain or reference statistical databases.

Plaintiffs move in limine to exclude evidence regarding the absence of prior similar

occurrences.  Plaintiffs state that Graco will likely argue that the jury cannot find that the

TurboBooster is defective because there is an absence of a large number of complaints.  Plaintiffs

urge that this "negative inference" evidence and argument should be excluded because it was not

previously disclosed and is irrelevant, prejudicial, confusing and lacks foundation.

Defendant responds that it does not intend to introduce evidence regarding the lack of

other incidents involving armrest separations on the TurboBooster unless Plaintiffs open the door

by introducing evidence of other TurboBooster incidents.  If Plaintiffs open the door, Defendant

submits that it would be entitled to introduce evidence of the total number of TurboBoosters sold

and the small number of overall complaints in comparison.

If Plaintiffs offer evidence or testimony regarding other similar incidents involving

TurboBoosters, Defendant should be allowed to introduce evidence comparing the number of

TurboBoosters sold with the number of complaints.  Accordingly, Plaintiffs' motion in limine

regarding the lack of other incidents is hereby **CONDITIONALLY GRANTED**.  If Defendant

believes that Plaintiffs have opened the door regarding other similar incidents, counsel for

Defendant should approach the bench.

**E.      No. 5 - Observations of Jennifer and William Cummings (Dkt. No. 138)**

Plaintiffs move in limine to exclude the testimony of Mr. and Mrs. Cummings ("the

Cummings") who were in a car that the Mrs. McCune passed prior to the collision.  Plaintiffs

submit that the Cummings observed passing maneuvers by Mrs. McCune that occurred 20-30

minutes prior to the crash.  Plaintiffs argue that these observed events have no bearing on what

happened at the moment of impact and would be cumulative of Mrs. McCune's admission of

responsibility.  Furthermore, these observations would be unfairly prejudicial, minimally

probative, and cumulative.  Plaintiffs also argue that the Cummings' opinions regarding the

speed of Mrs. McCune's vehicle is inadmissible under Fed. R. Evid. 701 because their opinions

lack foundation and are speculative guesses.

Defendant responds that Mrs. McCune had actually passed the Cummings' vehicle

several times, the last time being only one minute prior to the collision.  Dkt. No. 165.

Defendant submits that the Cummings actually witnessed the collision and have testified that

they did not observe Mrs. McCune applying the brakes or taking evasive action until the moment

of impact.  Defendant argues that the Cummings are eye witnesses and their testimony is

relevant.  Defendant also argues that the Cummings' testimony regarding Mrs. McCune's speed

is admissible under Fifth Circuit law.

As the Court held above with respect to Plaintiffs' first motion in limine, Plaintiffs have

agreed that evidence regarding the speed of Mrs. McCune's vehicle is admissible while other

evidence regarding the cause of the collision, including Mrs. McCune's actions leading up to the collision, with the exception of her speed, is not admissible. *See supra* I.A. Accordingly, Plaintiffs' motion in limine regarding Mr. and Mrs. Cummings' testimony is hereby **GRANTED-IN-PART and DENIED-IN-PART**. Mr. and Mrs. Cummings may not testify that Mrs. McCune was driving erratically prior to the subject collision, but they may testify regarding the speed of Mrs. McCune's vehicle.

## F.   No. 6 - J.M.'s MySpace Page (Dkt. No. 143)

Plaintiffs move in limine to exclude comments written by Mrs. McCune after the collision on a MySpace page created for J.M. In her comments, Mrs. McCune wrote, from the perspective of J.M., that "I took my shoulder strap off just minutes before our crash & the impact made the lap belt break my lower lumbar and backless booster seat." Plaintiffs argue that these comments are inadmissible under Fed. R. Evid. 402 and 403 because they are not probative and are unfairly prejudicial, would confuse the issues and mislead the jury. Specifically, Plaintiffs argue that Mrs. McCune and other witnesses have testified that they observed that the should belt was position in front of J.M. both before and after the collision. Plaintiffs also argue that the MySpace comments are inadmissible under Fed. R. Evid. 701 because they are in admissible opinions on medical causation of J.M.'s injuries.

Defendant responds that Mrs. McCune's own statements are relevant regarding how the TurboBooster was used at the time of the collision. Dkt. No. 167. Defendant argues that Mrs. McCune's MySpace comments do not constitute expert testimony but are her factual observations regarding J.M.'s use of the TurboBooster. Defendant further argues that even if Mrs. McCune's MySpace comments are opinion testimony, they would still be admissible under

Fed. R. Evid. 801(d)(2)(A) as admissions of a party-opponent.  Defendant also argues that Mrs.

McCune's MySpace comments provide a first-hand account of J.M.'s use of the TurboBooster

would be helpful to the jury to understand the issues.  Finally, Defendant argues that Mrs.

McCune's MySpace comments are admissible as impeachment evidence in the event that Mrs.

McCune testifies at trial in a manner inconsistent with the statements she made on the MySpace

page.

Mrs. McCune's statements on J.M.'s MySpace page are her statements regarding the

collision and is not opinion testimony as urged by Plaintiffs.  These statements reflect one

possible version of the events surrounding the collision as told by Mrs. McCune and is clearly

probative of the issues in this case.  Given that these comments were made by Mrs. McCune,

Plaintiffs have not shown how these statements would be unfairly prejudicial to Plaintiffs.

Accordingly, Plaintiffs' motion in limine regarding Mrs. McCune's comments on J.M's

MySpace page is hereby **DENIED**.

**G.      Motions in Limine Nos. 7-18 (Dkt. No. 145)**

      *1.      No. 7 - Reference to Approval of the TurboBooster by the NHTSA*

Plaintiffs move in limine to exclude any mention or suggestion that the federal

government or the NHTSA has approved the TurboBooster for use as a child restraint device.

Defendant agrees.  Dkt. No. 189.  Accordingly, Plaintiff's motion in limine regarding approval of

the TurboBooster by the NHTSA is hereby **GRANTED**.

      *2.      No. 8 - Existence of the Black Box or Plaintiffs' Objections to the Downloading of*
             *Information from the Black Box*

Plaintiffs move in limine to exclude any testimony or suggestion that Plaintiffs opposed

the downloading and decoding of data from the RCM/"Black Box." Plaintiffs also argue that there is no evidence as to what data the RCM is supposed to contain so any reference to the kind of data that might be in the RCM would be speculative.

Defendant responds that it will not offer evidence regarding Plaintiffs' attempts to block access to the RCM or why the RCM was never downloaded. However, Defendant also states that it reserves the right to refer to the existence of the RCM and that the lack of data from the RCM impaired the accident reconstruction analysis in this case. Defendant argues that Plaintiff's own expert testified that any information regarding delta-V contained in the RCM would be relevant to his analysis. The lack of RCM data goes to the credibility of Plaintiffs' experts' conclusions about the severity of the crash and is relevant information.

At the August 8th Hearing, Defendant's counsel stated that both Plaintiffs' and Defendant's experts have stated that data from a "Black Box" or RCM would be relevant for accident reconstruction purposes. The RCM information from Mrs. McCune's vehicle is not available to either party. Thus, the existence of the RCM and the information that could possibly be stored in it is not relevant to the issues that the jury has to decide. Accordingly, this motion in limine is hereby **GRANTED**.

> 3.    *No. 9 - Testimony that Graco's Witnesses or Employees Use or Have Used the TurboBooster*

Plaintiffs move in limine any testimony regarding Graco's witnesses' or employees' use of the TurboBooster. The parties have reached an agreement on this motion in limine. Dkt. No. 189. Accordingly, Plaintiffs' motion in limine regarding Graco's witnesses' or employees' use of the TurboBooster is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendant shall be

permitted to elicit testimony from witnesses who were involved in "field testing" the TurboBooster during the design process.

4.     *No. 10 - Chad McCune's Claims Against Carmen McCune*

Plaintiffs move in limine to exclude evidence of Chad McCune's law suit against Carmen McCune seeking damages on behalf of S.P and J.M. Plaintiffs argue that Graco will use this law suit to argue that Mrs. McCune was at fault for the accident and injuries to J.M. Plaintiffs submit that the lawsuit is not probative on the issue of causation of J.M.'s injuries.

Defendant states that it will not reference the existence of Mrs. McCune's automobile insurance or why Mr. McCune sued her in a state court proceeding. However, Defendant submits that Mr. McCune's admissions in his complaint filed in the state court case are relevant to this case because they relate directly to Defendant's affirmative defense that Mrs. McCune's negligence was the cause of J.M.'s injuries. Defendant states that Mr. McCune's admissions can be introduced in a way as not to reference any collateral sources.

Plaintiffs have not shown how Mr. McCune's own admissions in his complaint in the state court case against his wife would be unfairly prejudicial. Accordingly, Plaintiffs' motion in limine regarding Mr. McCune's state court case against Mrs. McCune is hereby **DENIED** with respect to Mr. McCune's admissions in the complaint filed in the state court case. However, Plaintiffs may offer testimony to explain the circumstances surrounding Mr. McCune's lawsuit against Mrs. McCune, including the role of insurance, if any.

5.     *No. 11 - Opinions from the Investigating Police Officer Regarding the Cause of the Crash*

Plaintiffs move in limine to exclude comments and conclusions from the investigating

police officer that Mrs. McCune's careless and inattentive driving was a contributing cause of the accident.  Plaintiffs argue that the officer's opinions are clearly "expert" in nature and his testimony would violate Fed. R. Evid. 701.

Defendant responds that Arkansas State Trooper Hitchcock investigated the McCune accident and prepared a report containing his findings as a result of that investigation.  Defendant argues that Trooper Hitchcock will testify only as to the results of his investigation and his observations at the scene of the accident.  Defendant further argues that Trooper Hitchcock is entitled to offer his opinions or inferences based on his perceptions in conducting the investigations so long as those opinions or inferences are helpful to the jury.

As discussed previously, Mrs. McCune has stipulated to her acceptance of full responsibility for the subject collision and the Court has accepted her stipulation.  As a result, Trooper Hitchcock's proposed testimony regarding Mrs. McCune's erractic and inattentive driving being a contributive cause of the collision would be redundant and cumulative..  Accordingly, Plaintiffs' motion in limine regarding Trooper Hitchcock's opinions regarding the cause of the subject collision is hereby **GRANTED**.

6.  *No. 12 - Expert Opinions on Medical Causation that are not Stated to A Reasonable Medical Probability*

Plaintiffs move in limine to exclude expert opinions on medical causation that are not stated to a reasonable medical probability.  Plaintiffs argue that Graco's expert on causation, Catherine Corrigan, is an engineer with expertise on biomechanics and not a medical doctor.  Plaintiffs argue that she is not qualified to testify on any subject to a reasonable medical probability standard.  Plaintiffs submit that Defendant has not disclosed any expert who is a

medical doctor and can testify on the subject of medical causation. Accordingly, Plaintiffs argue that any opinions that Defendant intends to offer on medical causation are inadmissible, irrelevant, and prejudicial.

Defendant responds that Plaintiffs' motion in limine is an attack on Ms. Corrigan's qualification and the foundation for her opinions, which should have been properly brought in a *Daubert* motion. Defendant also argues that Plaintiffs's argument that a non-medical doctor is precluded from offer causation opinions is incorrect, and that as a biomechanics expert, Ms. Corrigan is qualified to offer injury causation opinions.

As Defendant has pointed out, Plaintiffs' arguments regarding Ms. Corrigan's qualifications are more appropriate for a *Daubert* motion regarding the admissibility of Defendant's experts' opinions than a motion in limine. Even if Plaintiffs had raised this issue timely in a *Daubert* motion, the Court believes that Ms. Corrigan's testimony would still be admissible. Ms. Corrigan is testifying regarding injury causation and is not making a medical diagnosis. Accordingly, Plaintiffs' motion in limine regarding expert opinions on medical causation is hereby **DENIED**.

### 7. *No. 13 - Generic Benefits of Belt-Positioning Booster Seats*

Plaintiffs have withdrawn their motion in limine to exclude expert testimony regarding the alleged benefits of belt-positioning booster seats. Dkt. No. 189.

### 8. *No. 14 - Evidence of collateral Sources that are Responsible for J.M.'s Medical Benefits*

Plaintiffs move in limine to preclude Graco from suggesting or referencing that private insurance and Medicaid has made or will make nay payments for J.M.'s medical care. Defendant

does not oppose this motion.  Dkt. No. 189.  Accordingly, this motion in limine is hereby

**GRANTED**.

    *9.      No. 15 - Plaintiffs' and J.M.'s "Prior Acts"*

Plaintiffs seek to exclude evidence or references to historical acts or events which took

place in the lives of Plaintiffs prior to the accident.  Plaintiffs assert that photos or J.M.'s prior

activities will be offered to show that Mrs. McCune is a bad mother, that she has a bad character

for "due care," and that it proves she was acting the same way on the date of the accident.

Defendant responds that Plaintiffs have designated photographs of Mrs. McCune to cast

her in a positive light relative to her care for J.M.  Defendant states that to the extent Plaintiffs

seek to introduce these photographs at trial, Graco reserves the right to rebut that evidence with

other evidence refuting that image of Mrs. McCune.  Defendant further states that to the extent

Plaintiffs' motion relates to photographs of J.M. taken in the days immediately preceding the

accident in which J.M. is seated in the TurboBooster with the shoulder belt behind his back,

Defendant intends only to use these photos as reference to Plaintiff's use of the TurboBooster

and not to "smear" Mrs. McCune.  Finally, Defendant objects to this motion in limine as being

vague and does not put Defendant on notice of what evidence would be precluded at trial

The parties have reached an agreement that this motion in limine can be granted with

respect to Mrs. McCune's deposition exhibits 13, 14, 15, and 16.  Dkt. No. 189.  However, the

motion in limine remains pending with respect to Graco trial exhibits 11-15.

Graco trial exhibits 11-15 were taken just days prior to the subject collision and

purportedly show J.M. seated in a car with the shoulder belt improperly positioned.  At the

August 8th Hearing, Defendant's counsel represented that she did not intend to offer these

pictures to prove habit. The Court requested copies of these exhibits for review at the August 8th Hearing.

Having reviewed these photographs, the Court does not believe that they are relevant to the issues that the jury has to decide. These photographs were taken days prior to the subject collision and, if Defendant is not intending to use them to show habit, they are not relevant to the issues of causation of J.M.'s injuries nor do they have any relevance to the safety of the TurboBooster. Accordingly, this motion in limine is hereby **GRANTED**.

10.      *No. 16 - "Stuck" Speedometer*

Plaintiffs seek to exclude all evidence regarding the stuck speedometer on Mrs. McCune's vehicle because it is not a reliable evidence to show the speed at which Mrs. McCune was traveling at the time of the collision.

Defendant responds that courts have regularly recognized the position of the speedometer needle after a collision is properly considered to determine a vehicle's speed at the time of the accident. Defendant further argues that Plaintiff's argument goes to the weight and not the admissibility of the stuck speedometer. The Court agrees. This motion in limine is hereby **DENIED**.

11.      *No. 17 - Non-Disclosed Experts*

Plaintiffs move in limine to exclude non-disclosed expert opinions. Defendant agrees. Dkt. No. 189. Accordingly, the Court hereby **GRANTS** Plaintiffs' motion in limine regarding non-disclosed expert testimony.

12.      *No. 18 - Evidence of Mrs. McCune's Bad Character*

Plaintiffs move in limine to exclude any character smearing evidence regarding Mrs.

McCune that Defendant might seek to introduce at trial, including her high school pregnancy and prior relationships. Defendant agrees. Dkt. No. 189. Accordingly, to the extent that this motion in limine does not overlap with Plaintiffs' motion in limine regarding Plaintiffs' and J.M.'s prior acts, it is hereby **GRANTED**.

## II. Defendant's Motions in Limine

**A.    Evidence Regarding Other TurboBooster Incidents (Dkt. No. 133)**

Defendant moves in limine to exclude evidence regarding other accidents in which the armrest on the TurboBooster separated from the base. This evidence consists of reports from the NHTSA database, the complaint and other documents from the *Scifres v. Ford Motor Co.* lawsuit, and the complained and other documents in the *Smith v. Newell Rubbermaid* lawsuit. Defendant argues that this evidence is inadmissible because they are not substantially similar to the McCune's accident, constitute hearsay, and any probative value they might have is outweighed by the undue prejudice to Defendant.

Plaintiffs respond that the two lawsuits and one NHTSA report that they seek to introduce are admissible for a variety of reasons. Dkt. No. 159. Plaintiffs submit that the *Scifres* case, which was filed in October 2005, involved an armrest separation on a TurboBooster that was the same model number as J.M.'s TurboBooster. Plaintiffs argue that the *Scifres* case serves as proof of notice to Defendant that shoulder belts can pull out armrests and that a more robust design was needed. Plaintiffs further argue that the *Scifres* case is relevant to show Defendant's conscious indifference to the problem of armrest separation., and to impeach the testimony of Defendant's employees that the only hazard it eve knew involving armrest separations was that the armrest could fly around the interior of the car and hit someone in the head.

Plaintiffs submit that the *Smith* case, which was filed in February 2009, involved allegations that the armrest came off the TurboBooster and created a loss of shoulder belt restraint. Plaintiffs argue that the *Smith* case is relevant as proof of notice to Defendant that shoulder belts can pull out armrests and that the armrest is a load-bearing structural element of the seat even though it was filed after this case. Plaintiffs further argue that the *Smith* case is relevant as proof that the loss of an armrest can cause a loss of shoulder belt restraint, which is a serious hazard. Plaintiffs also submit that the *Smith* case is relevant to impeach Defendant's witnesses and experts.

Finally, Plaintiffs submit that the one NHTSA Database report they seek to admit featured an incident involving the same model TurboBooster as the one J.M. used, the report was publicly available seven months before J.M.'s seat was manufactured, and the child was paralyzed as a result of the child safety seat failure. Plaintiffs argue that they are offering this report as notice of an incident of a serious spinal injury that may have resulted from armrest failure. Plaintiffs also state that they are offering the report to show Defendant's conscious indifference to the armrest problem.

Defendant replies that the Texas Supreme Court has cautioned that trial courts must carefully consider the bounds of similarity, prejudice, confusion, and sequence before admitting evidence of other accidents involving a product. Dkt. No. 182. Defendant submits that the *Scifres* and *Smith* cases are not substantially similar to the McCune accident and that too little information is known about the incident described in the NHTSA database report to provide adequate foundation for its admissibility. Specifically, Defendant argues that it did not learn of the *Scifres* and *Smith* cases under after the manufacture and sale of the McCune's booster seat.

Defendant also submits that there is no proof that Defendant ever received notice of the NHTSA report. Therefore, Plaintiffs are precluded from relying on these cases and the NHTSA report to prove notice, defect, and Defendant's alleged conscious indifference.

Defendant also argues that Plaintiffs cannot demonstrate substantial similarity between these incidents and the McCune accident. Defendant points out that in both the *Scifres* and *Smith* cases, screws were not installed on the armrest in the TurboBooster, unlike J.M.'s TurboBooster which had the screws installed. Defendant further points out that in both the *Scifres* and *Smith* cases , plaintiffs had alleged defects in the vehicles involved in the incidents, whereas here, Plaintiffs have not alleged any defects in their car.

Finally, Defendant argues that these other incidents are not rendered admissible just because Plaintiffs seek to use them for impeachment purposes or to address actions Defendant took after it made J.M.'s TurboBooster.

The Fifth Circuit has held that "[w]hen evidence of other accidents or occurrences is offered for any purposes other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and circumstances at issue." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993). When evidence is offered solely to show notice, the proponent of such evidence must establish reasonable similarity. *Id.* at 580. In this case, the separation of the armrest from the seat of the TurboBooster is a key issue. The Court hereby **CONDITIONALLY GRANTS** this motion in limine. The Court will be better able to decide on the admissibility of these other similar incidents after the Court has heard testimony at trial.

**B.  Evidence Regarding Carmen McCune's Fault in Causing the Accident and J.M.'s Injuries (Dkt. No. 134)**

Defendant asks the Court to allow it to present evidence of Mrs. McCune's role in causing J.M.'s injuries.  The Court previously addressed this issue in its ruling on Plaintiffs' Motion in Limine No. 1 and granted Plaintiffs' request to exclude evidence and testimony regarding the cause of the accident.  *Supra* I.A.  For the same reasons, this motion in limine is hereby **DENIED**.

**C.  Evidence of Post-Manufacture Design Changes and Testing (Dkt. No. 139)**

Defendant seeks to preclude Plaintiffs from introducing evidence of post-manufacture design changes and testing related to the TurboBooster that occurred after J.M.'s TurboBooster had been manufactured, including internal discussion relating to these changes.  Defendant anticipate that Plaintiffs will attempt to offer evidence of design changes made to TurboBooster models designed after April 2005, when J.M.'s TurboBooster was manufactured.  Specifically, Defendant believes that Plaintiffs will likely focus on design changes that occurred in July 2005, and April 2007.

Defendant argues that the relevant issue in this case is whether the design of the booster seat used by J.M. was unreasonably dangerous and design changes developed and implemented after the manufacture of J.M.'s booster seat are not relevant to that issue. Defendant argues that even if the Court finds this evidence to be relevant, its low probative value is substantially outweighed by the confusion and unfair prejudice it would inject into the trial.

Defendant also submits that the record demonstrates that Defendant implemented additional design changes on the TurboBooster armrest after J.M.'s booster seat was made

-22-

because armrest separations during crash testing was observed. The crash testing was intended to certify TurboBoosters to a new version of the federal standard applicable to child car seats that went into effect in August 2005 and was not applicable to J.M.'s booster seat when it was made. Defendant argues that such a response could be perceived by the jury as an admission that the design used on J.M.'s booster seat was defective, and should be found inadmissible pursuant to Fed. R. Evid. 407.

Finally, Defendant anticipates that Plaintiffs may argue that proving feasibility of an alternative design justifies introducing evidence of design changes. However, Defendant does not dispute that any of the post April 2005 design changes were feasible before 2005. Because it does not dispute feasability, Defendant argues that feasibility is not an issue and post-manufacture design changes should be excluded.

Plaintiffs respond that events that occurred after the manufacture of J.M.'s booster seat and prior to its purchase is relevant to more than just the question of the seat's defective and unreasonably dangerous condition. Dkt. No. 160. Plaintiffs argue that post-manufacture evidence is relevant to Plaintiffs' claims for punitive damages, to rebut Defendant's demand for a presumption concerning its compliance with FMVSS 213, Defendant's continuing duty to warn, the feasibility and efficacy of a safer alternative design, and to impeach Defendant's employees and experts.

Plaintiffs argue that post-manufacture, pre-accident evidence is relevant to refute Graco's compliance with FMVSS 213 defense. Plaintiffs point to evidence that shows that Defendant, prior to J.M.'s accident, had internally categorized the armrest separation issue as a "compliance" issue. Plaintiffs argue that this evidence is admissible to refute Defendant's assertion that the

seat complies with the standard.

Plaintiffs also argue that post-April 2005 design changes are not subject to Fed. R. Evid. 407 because Graco has not asserted that th post-April 2005 design changes were remedial. Plaintiffs take the position that for Rule 407 to apply, Defendant must admit that the design changes are remedial. Finally, Plaintiffs state that a "safer alternative design" is an element of Plaintiffs' case. Texas statute states that a safer alternative design is one that was economically and technologically feasible at the time the product left the control of the manufacturer or seller. V.T.C.A. § 82.005. Thus, argue Plaintiffs, even though Defendant has admitted to feasibility, its admission does not preclude the admission of evidence that post-dates the date of manufacture by pre-dates the date of sale.

Defendant replies that it has withdrawn its affirmative defense regarding compliance with FMVSS 213 and it is not among the contested issues of law or fact to be tried in this case. Dkt. No. 177. Thus, argues Defendant, Plaintiffs' argument that they are entitled to use evidence of post-manufacture design changes to refute Defendant's compliance defense is unavailing. Defendant further argues that an analysis of Rule 407 focuses on whether a post-manufacture design can be construed as an admission of a defective design. Defendant argues that because Plaintiffs' entire purpose for introducing evidence of post-manufacture design changes is to argue to the jury that these changes show a design defect that Defendant knew about, evidence of these design changes is inadmissible pursuant to Rule 407.

Defendant also submits that Plaintiffs have not identified what testimony would be impeached by evidence of post-manufacture design changes. Defendant argues that use for impeachment purposes cannot make this inadmissible evidence admissible. Finally, Defendant

states that it has conceded both technologic and economic feasibility, and thus, evidence of post-manufacture design changes offered to show feasibility is not admissible.

Plaintiffs sur-reply that even though Defendant withdrew its affirmative defense regarding compliance with FMVSS 213, Defendant has not withdrawn its motion for summary judgment that is based on the fact that the seat complies with the standard, Defendant has not withdrawn any exhibits or expert opinions based on compliance, and Defendant has not indicated that it will not cross-examine Plaintiffs' experts on their opinions regarding non-compliance. Dkt. No. 183.

Fed. R. Evid. 407 states, in part, "[W]hen, after an event, measures are taken which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." The McCune accident occurred on July 29, 2007. The parties have identified two specific design changes implemented by Defendant, both of which occurred prior to the McCune accident. Defendant has stated that the July 2005 design change was made in response to testing that was intended to certify TurboBoosters to a new version of the federal standard. Accordingly, the July 2005 design change is not subject to Rule 407. *Arceneaux v. Texaco, Inc.*, 623 F.2d 924, 928 (5th Cir. 1980). Likewise, the April 2007 design change is also not subject to Rule 407 because it took place prior to the McCune accident and was not taken in response to the McCune accident. *Id.* However, design changes that took place after July 29, 2007, could be construed by the jury as an admission that J.M.'s TurboBooster was defective. Accordingly, design changes that occurred after July 29, 2007, are subject to Rule 407 and not admissible. Because Defendant has conceded both technologic and economic feasibility, the feasibility exception to Rule 407

does not apply because feasibility is not in controversy. *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 763-64 (5th Cir. 1989).

Defendant argues that Plaintiffs' argument that they are entitled to use evidence of post-manufacture design changes to refute Defendant's compliance defense is unavailing because Defendant has withdrawn the compliance defense. However, Defendant is still arguing that J.M.'s TurboBooster complied with FMVSS 213. Dkt. No. 173 at 7. Plaintiffs are entitled to present evidence to refute Defendant's compliance argument. However, evidence regarding the July 2005 and April 2007 design changes are irrelevant for this purpose because the July 2005 design change was made in response to a new version of a federal standard that went into effect in August 2005. The April 2007 design change is likewise irrelevant because the TurboBooster would have been subject to a different version of a federal standard than J.M.'s TurboBooster.

Accordingly, Defendant's motion in limine is hereby **GRANTED** with respect to the July 2005 and April 2007 design changes as well as any design changes that occurred after July 29, 2007. Defendant's motion in limine is hereby **DENIED** with respect to any other design changes that occurred between April 2005 and July 29, 2007.

**D.    References to Corporate Affiliation of Graco Children's Products (Dkt. No. 140)**

Defendant moves in limine to bar references to Defendant's size, its parent corporation's size, and Defendant's corporate affiliations. Defendant argues that these references should be excluded because they are irrelevant and could unfairly prejudice Defendant.

Plaintiffs respond that they agree that no evidence of Defendant's net worth will be presented. Dkt. No. 156. Plaintiffs further state that the name of Newell Rubbermaid Inc. ("Newell"), Graco's parent corporation, appears on many documents that have been produced in

this case.  Plaintiffs argue that Newell was involved with the TurboBooster, from a control standpoint, at all levels.  Plaintiffs further argue that Newell was involved in the decision making process for the TurboBooster, and Plaintiffs are entitled to show corporate complicity and show that the decision make that was implemented by Graco regarding the TurboBooster was ratified by high level corporate managers and executives.

Defendant replies that Plaintiffs' filings in this case establish that any reference to Newell is irrelevant because Newell is not a party in this case, Plaintiffs' complaint does not name or reference Newell, and Plaintiffs' contested issues of fact and law do not name or reference Newell or raise issues of piercing the corporate veil.  Dkt. No. 179.  Defendant submits that Plaintiffs' corporate complicity argument is irrelevant and is a prejudicial argument made to evoke a corporate conspiratorial bias.

Plaintiffs have not shown why Newell's existence as Defendant's corporate parent is of consequential relevance in this case.  Newell is not named or referenced by Plaintiff in its pleadings and is not a party to this case.  Accordingly, this motion in limine is hereby **GRANTED** with respect to Defendant's size, its parent corporation's size and Defendant's relationship or interactions with its corporate parent.  Given the fact that the Newell name appears on many of the documents produced by Defendant in this case, this motion in limine is hereby **DENIED** with respect to the existence of Defendant's corporate parent.  Plaintiffs may explain that the Newell name appears on Defendant's documents because Newell is Defendant's corporate parent, but may make no argument, suggestion, or mention of Newell's involvement in Defendant's business activities, Newell's control over Defendant, or Newell's net worth.

**E.      Spoilation of Evidence (Dkt. No. 141)**

Defendant moves in limine to exclude any suggestion that Defendant's routing recycling of TurboBooster restraints after crash testing stemmed from a bad faith motivation to suppress facts or evidence.  Defendant explains that it is its customary practice to recycle TurboBooster seats after they have been tested.  Defendant argues that there is no evidence on the record to show that the recycling of crash test TurboBooster seats was done in bad faith or in an attempt to conceal evidence.  Defendant also argues that 19 booster seats were made available to Plaintiffs for inspection and the TurboBooster seats that Plaintiffs complain were improperly destroyed were disposed off before Plaintiffs filed suit in this case.  Finally, Defendant argues that Plaintiffs cannot demonstrate any prejudice to their case due to the absence of the tested TurboBoosters because all of the tests were documented in writing and by photograph and video.

Plaintiffs respond that the crash tested TurboBoosters are unique evidence that might be useful to plaintiffs to NHTSA investigators seeking to understand why armrests rip off TurboBoosters.  Dkt. No. 162.  Plaintiffs argue that Defendant knew that the tested TurboBoosters were the subject of pending litigation and that Plaintiffs in future litigations would want to see forensic evidence on the tested TurboBoosters.

This issue arose in conjunction with Plaintiffs' Motion in Limine No. 2.  There, Plaintiffs sought to exclude all testimony and evidence showing that the TurboBooster complies with FMVSS 213.  *Supra* 4-6.  As the Court noted above, Plaintiffs have never brought up the possibility that Defendant had potentially engaged in the spoilation of evidence in this case.  Given the seriousness of the issue, if Plaintiffs believe that Defendant had improperly destroyed relevant evidence, it should have raised these issues in a motion for sanctions instead of doing so

at the last minute in the context of motions in limine.  To this day, Plaintiffs have not filed a motion for sanctions against Defendant for spoilation of evidence.  Plaintiffs have not shown that Defendant's recycling of crash-test TurboBooster seat was done in a willful attempt to destroy evidence relevant to this litigation.  Accordingly, Defendant's motion in limine regarding the spoilation of evidence is hereby **GRANTED**.

**F.     Defendant's Alleged Profit Margin Motivation (Dkt. No. 142)**

Defendant moves in limine to exclude argument and evidence that would suggest that Defendant filed to change the design on the armrest of the TurboBooster because of a motivation to continue production and increase sales and profits.  Defendant argues that such a suggestion would be unduly prejudicial to Defendant and is not relevant to Plaintiffs' product liability claims.

Plaintiffs respond that evidence showing profit margin motivation is relevant under Texas law to Plaintiffs' punitive damages claim.  Dkt. No. 163.  Plaintiffs argue that evidence is overwhelming that Defendant rejected recommended design changes to the TurboBooster so that it could earn a 394% rate of return on the TurboBooster.  Plaintiffs also argue that this evidence is also relevant to the calculation of the amount of exemplary damages awarded.

At the August 8th Hearing, Plaintiffs' counsel represented to the Court that he did not intend to show how much net profit Graco realized by its sale of TurboBoosters.  However, he indicated that he intended to offer testimony regarding the existence of large orders for TurboBoosters that Defendant wanted to fill as well as the 300+% rate of return that Graco realized on these orders.

Evidence regarding any alleged profit margin motivation on the part of Defendant is not

relevant to the determination of liability for punitive damages.  *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 40 (Tex. 1998) (holding that "evidence about the profitability of a defendant's misconduct . . . is admissible when the defendant offers it in mitigation of punitive damages.").  Furthermore, evidence regarding the profitability of a defendant's alleged misconduct "is only relevant and admissible at trial about the amount of punitive damages."  *Id.* at 41. Accordingly, this motion in limine is hereby **GRANTED-IN-PART and DENIED-IN-PART**.  Plaintiffs may not present any testimony or evidence regarding the amount or percentage of the profits Defendant realized on the sale of TurboBoosters.  However, Plaintiffs may present evidence and testimony regarding Defendant's motivation to continue production and increase sales and profits.

**G.     Failure to Report Armrest Separations to NHTSA or Speculation about NHTSA's Response to a Petition for Finding of Inconsequentiality (Dkt. No. 144)**

Defendant moves in limine to prohibit Plaintiffs from arguing or referring to whether Defendant should have reported armrest separations that occurred during Defendant's internal crash tests to NHTSA.  Defendant argues that any argument based on a purported failure to report to NHTSA is irrelevant to Plaintiffs' product liability claims.  Defendant also argues that there is no private cause of action for a violation of FMVSS 213 and that Plaintiffs have not brought any claim against Defendant based on an alleged failure to report to NHTSA.  Defendant argues that allowing the jury to speculate as to why Defendant did not report armrest separations to NHTSA improperly invites the jury to assume that there was a violation of FMVSS 213 and implies that Defendant attempted to hid a violation of federal testing standards.  Finally, Defendant also asks that Plaintiffs be kept from speculating about NHTSA's response to a petition for finding of

inconsequentiality from Defendant regarding the TurboBooster armrest because there is no foundation for any witness to offer such a speculative opinion.

Plaintiffs respond that one of Defendant's defenses is that the TurboBooster complies with FMVSS 213 and that Plaintiffs are entitled to rebut Defendant's evidence in this regard by showing that Defendant's compliance is meritless. Dkt. No. 157. Plaintiffs also argue that this evidence is admissible because Texas law expressly states that Plaintiffs may rebut the presumption of non-liability created by compliance with regulations by offer evidence that the manufacturer withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue. V.T.C.A. § 82.008(b).

Defendant has not shown how the probative value of evidence and argument about Defendant's failure to report armrest separations to NHTSA is outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. However, Plaintiffs have not shown how speculation about NHTSA's response to a petition for finding of inconsequentiality is relevant to the issues at hand nor have Plaintiffs refuted Defendant's argument that such speculation lacks foundation. Accordingly, Defendant's motion in limine regarding Defendant's failure to report is hereby **DENIED** and Defendant's motion in limine regarding speculation about NHTSA's response to a petition for finding of inconsequentiality is hereby **GRANTED**.

## H.    TurboBooster Recall or Post-Sale Warnings (Dkt. No. 146)

Defendant moves in limine to preclude any arguments that Defendant should have recalled the TurboBooster or provided post-sale warnings following the date of manufacture. Defendant argues that there is no duty to recall under Texas law and there is no probative value

to such evidence. Defendant further argues that such argument would be unduly prejudicial to Defendant.

Plaintiffs respond that Defendant's argument misinterprets and misapplies Texas law. Dkt. No. 161. Plaintiffs submit that they do not claim a post-sale duty to warn, but instead, claim that up to the date of the accident, Defendant breached its continuing duty to warn of, or remedy, a defect it knew of before the sale. Plaintiffs argue that Defendant knew that the "armrest issue" was a problem that needed a design fix and that the separation problem raised safety concerns.

Plaintiffs further argue that even if Defendant's duty to warn of the armrest defect ended after it sold the TurboBooster to J.M.'s grandmother, Defendant had assumed a post-sale duty to warn and did not fulfill that duty. Plaintiffs submit that Defendant's development manager or sustaining engineering testified that if Graco had found that the armrest separation was a compliance issue and that a defect needed to be fixed, Defendant would have done a recall because it was required by law and the right thing to do.

Defendant replies that Plaintiffs are asking the Court to ignore precedent and to impose on Defendant a duty that does not exist under applicable substantive law. Dkt. No. 178. Defendant states that Plaintiffs have asserted that Defendant voluntarily assumed a post-sale duty to warn because certain of Defendant's employees, in response to hypothetical questions, agreed that certain actions could be taken to provide information to consumers after sale of a product. Defendant submit that Plaintiffs have provided no support for this proposition. Defendant argues that the assumption of a duty to warn is predicated on the affirmative steps of a party. Defendant asserts that because it has not taken any affirmative steps to institute a post-sale recall or retrofit, it does not have a continuing duty to do so as a matter of law.

Under Texas products liability law, a manufacturer has no duty to warn about a product after it has been manufactured and sold. *McLennan v. Eurocopter Corp. Inc.*, 245 F.3d 403, 430 (5th Cir. 2001). Instead, a manufacturer's duty to warn is determined at the time the product leaves the manufacturer. *Bryant v. Giacomini, S.p.A* 391 F.Supp. 2d 495, 503 (N.D. Tex. 2005). The two exceptions to this rule are: 1) where the manufacturer regains some significant control over the product; and 2) where a manufacturer assumed a post-sale duty and then did not use reasonable means to discharge that duty. *Id.* In the latter instance, it must also be established that the Plaintiffs' injury was a proximate result of the breach of that assumed duty. *Id.*

As Defendant has pointed out, neither exception applies in this situation. There has been no evidence presented that Defendant ever regained control of J.M.'s booster seat or that Graco has taken affirmative steps to assume a post-sale duty to warn. Accordingly, this motion in limine is hereby **GRANTED**.

I.       **References to the Death of C.M. (Dkt. No. 147)**

Defendant moves in limine to bar references to the death of C.M., a deceased minor child of Plaintiffs. Plaintiffs agree. Dkt. No. 189. Accordingly, this motion in limine is hereby **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED this 8th day of August, 2011.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE