**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| CHAD MCCUNE *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 5:2009CV00107 |
| | § | |
| GRACO CHILDREN'S PRODUCTS INC., | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT GRACO CHILDREN'S PRODUCTS INC.'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant Graco Children's Products Inc. ("Graco"), after the close of Plaintiffs' case and pursuant to FED. R. CIV. P. 50(a), moves the Court for entry of judgment as a matter of law on each of the claims asserted by Plaintiffs. In support of its motion, Graco states as follows:

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 50(a) instructs that a grant of judgment as a matter of law is proper where "a party has been fully heard on an issue during jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." The motion should be granted where the evidence so strongly favors one party that a "reasonable trier of fact could not arrive at a contrary verdict." *Turner v. Purina Mills, Inc*., 989 F.2d 1419, 1421 (5th Cir. 1993).

**ARGUMENT**

**I. PLAINTIFFS HAVE NOT PRODUCED LEGALLY SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT A MARKETING DEFECT IN THE TURBOBOOSTER WAS A PRODUCING CAUSE OF J.M.'S INJURIES.**

Plaintiffs did not produce legally sufficient evidence at trial to support each of the five factors of their marketing defect claim:

> (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed, (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.

*Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 305–06 (Tex. Ct. App.—Houston [1st Dist.] 1999, pet. denied).

Plaintiffs have not produced legally sufficient evidence to support the first two elements because they have not established that shoulder rollout can arise from the intended use of the product. Nor have plaintiffs shown that Graco actually knew or should have known that armrest separations resulted in a child's loss of upper torso restraint, because none of the tests run by Graco exhibited a shoulder rollout following an armrest separation.

The sole basis of Plaintiffs' defective marketing theory is that Graco failed to warn Plaintiffs that the armrest could come out in a crash. But "[i]n marketing defect cases, the defective or unreasonably dangerous condition of the marketed product arises *not from the product itself*, but because the seller fails to warn the user of an improper use of the product." *Lemond v. Lone Star Gas Co.*, 897 S.W.2d 378, 386 (Tex. Ct. App.—Fort Worth 1994) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 897 S.W.2d 755 (Tex. 1995)); *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 883 (Tex. Ct. App.—Houston [1st Dist.] 2006, no pet.). Thus, Plaintiffs' marketing defect claim is merely an improper restatement of their design defect claim.

Further, Texas law supplies a presumption that an adequate warning would have been followed, but not where there is evidence that the warning would not have been followed. *Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007). There is no evidence that

Plaintiffs read any of the materials that accompanied the TurboBooster, including the instruction manual. Plaintiffs therefore have no evidence with which to establish that any different warning would have been followed or altered the outcome of this accident. Graco is therefore entitled to judgment on plaintiffs' marketing defect claims. *Id.* (affirming summary judgment for defendant where purchaser of Ford vehicle testified he would have bought the vehicle regardless of warnings regarding blind spot); *Scott v. Dorel Juvenile Group*, ___ F. Supp. 2d ___, 2011 WL 778581, at *4 (N.D. Tex. Mar. 7, 2011) (granting summary judgment for manufacturer where purchaser of cabinet lock admitted she never read warnings because "even if the alleged superior warning had been on the package, Plaintiff cannot show it would have affected [the purchaser's] conduct").

Finally, Plaintiffs have "provided no evidence of what the 'proper warnings, guidelines and instructions' should have been" with respect to armrest separation. *Shaw v. Trinity Highway Prods., LLC*, 329 S.W.3d 914,  919 (Tex. Ct. App.—Dallas 2010). This failure is also fatal to their marketing defect claim. *Id.*

## II.  PLAINTIFFS' MARKETING DEFECT CLAIM FAILS FOR THE ADDITIONAL REASON THAT THERE IS NO LEGALLY RECOGNIZED CAUSE OF ACTION FOR FAILING TO WARN OF A DESIGN DEFECT.

Graco is entitled to judgment as a matter of law on Plaintiffs' marketing defect claims because there is no legally recognized cause of action for failing to warn of a design defect. *Lemond*, 897 S.W.2d at 386 (citation omitted); *Benavides*, 189 S.W.3d at 883.

Plaintiffs' styling of their design-defect claim as a marketing-defect claim calls upon the jury to hold Graco liable for a design defect without requiring the jury to find all elements required for a design defect under Section 82.005 of the Texas Civil Practice & Remedies Code. To the extent that a marketing defect question is predicated solely on a design defect, the failure to include all the elements of a design defect in the marketing defect question seeks in an

improper way to avoid Section 82.005.  Second, such a theory of marketing defect would violate Texas law by imposing a non-existent post-sale duty to warn of defects in a product's design. "Texas courts generally do not recognize any post-sale duty to warn of product hazards arising after the sale," *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 430 (5th Cir. 2001), and no exception to that general rule applies here, *see* Order at 33, Aug. 8, 2011 (Doc. No. 191). Plaintiffs' marketing defect claim must therefore fail.

### III.   THERE IS NO LEGALLY SUFFICIENT EVIDENTIARY BASIS TO SUPPORT A FINDING THAT J.M.'S INJURIES RESULTED FROM GROSS NEGLIGENCE ATTRIBUTABLE TO GRACO.

Graco is entitled to judgment as a matter of law on Plaintiffs' claims for exemplary damages because the evidence presented at trial did not meet the standards required by the Texas Civil Practice & Remedies Code:

> Gross negligence has two requirements:
> (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others.

*Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).  There is no evidence in this record that rises to the level of gross negligence on the part of Graco.  Plaintiffs claim that Graco knew armrests could detach from the base, causing the loss of upper torso restraint.  Plaintiffs presented no such evidence.

Nonetheless, Graco undertook measures to strengthen the connection between the armrest and base by adding a screw and changing the screw boss.  It did so in order to prevent the armrest from detaching and posing a potential safety hazard of a loose object to an occupant inside the vehicle, which obviously has nothing to do with the nature or extent of J.M.'s injuries. Graco had no objective awareness that an armrest separation could cause the occupant to flex too

far forward and sustain serious injuries.  Plaintiffs therefore cannot satisfy the Texas standard for

their gross negligence claim:

> Objectively, the defendant's conduct must involve an 'extreme degree of risk,' a
> threshold significantly higher than the objective 'reasonable person' test for
> negligence. Extreme risk is a function of both the magnitude and the probability
> of the anticipated injury to the plaintiff.. The 'extreme risk' prong is not satisfied
> by a remote possibility of injury or even a high probability of minor harm, but
> rather 'the likelihood of serious injury' to the plaintiff. . . An act or omission that
> is merely thoughtless, careless, or not inordinately risky cannot be grossly
> negligent. Only if the defendant's act or omission is unjustifiable and likely to
> cause serious harm can it be grossly negligent.. In other words, the plaintiff must
> show that the defendant knew about the peril, but his acts or omissions
> demonstrated that he didn't care.

*F.D.I.C. v. Schreiner*, 892 F. Supp. 869, 877–78 (W.D. Tex. 1995) (citations omitted).

There is no evidence that Graco had actual knowledge that a child could experience

injuries such as J.M. sustained here as a result of an armrest separation during the crash.  Indeed,

Graco performed hundreds of crash tests in which the measured injury values were well under

the federal requirements set forth in Federal Motor Vehicle Safety Standard (FMVSS) 213, the

standard applicable to child car seats, including the TurboBooster.   Independent testing

conducted by the National Highway Traffic Safety Administration (NHTSA) reached the same

result, evidence of which was acknowledged by Mr. Whitman.  Graco had no objective reason to

believe that an armrest detachment could produce the serious injuries  J.M. sustained, because

even in those sled tests where the armrest separated, there is no evidence that upper torso

restraint was lost.

## IV.    THE EVIDENCE CONCLUSIVELY SHOWS THAT CARMEN MCCUNE'S NEGLIGENCE PROXIMATELY CAUSED J.M.'S INJURIES.

The evidence conclusively proved that Carmen McCune's negligence was the proximate

cause of the injuries sustained by J.M.  First, Plaintiffs have conceded that Carmen McCune's

negligence in driving while distracted was the sole cause of the accident. (*See* Joint Final Pretrial Order at 4 (Doc. No. 173).)

Moreover, the evidence also shows that Mrs. McCune's negligence was also the sole proximate cause of J.M.'s injuries. Plaintiff Chad McCune admitted that J.M. "sustained personal injuries and incapacities due to the negligence" of Carmen McCune. (Pl.'s Original Pet. 1, at ¶II, No. 417-02490-2008, Dist. Ct. Tex. (DX 19A); Chad McCune Trial Test., Aug. 17, 2011.) He further admitted that Carmen McCune was "guilty of certain acts or omissions which constitute lack of ordinary care or negligence proximately causing the injuries and damages." (Pl.'s Original Pet. 2, at ¶III; Chad McCune Trial Test.) Chad McCune's admission that Carmen McCune's negligence was the cause of J.M.'s injuries is supported by the testimony of Plaintiffs' accident reconstruction expert, Jerry Wallingford, who testified that Carmen McCune's rate of speed increased the severity of the accident by as much as 40% compared to what it would have been had she been traveling the speed limit. The uncontroverted evidence shows that J.M.'s injuries were caused by the severity of the accident, which in turn was caused by Ms. McCune's negligent acts.

Carmen McCune's negligence in causing J.M.'s injuries is also evidenced by her misuse of J.M.'s TurboBooster and her failure to ensure that he was properly restrained at the time of the accident. Ms. McCune's admission on the MySpace page she wrote for J.M. that, "I took my shoulder strap off just minutes before our crash and the impact made my lap belt break my lower lumbar and backless booster seat," proves her negligence in misusing the TurboBooster.

As a result of this evidence, and because the Court precluded Graco from presenting any additional evidence of Carmen's negligence regarding her erratic driving or her text messaging, Graco is entitled to judgment as a matter of law on this point.

## V. THE EVIDENCE CONCLUSIVELY SHOWS THAT CARMEN MCCUNE'S PERCENTAGE OF RESPONSIBILITY FOR J.M.'S INJURIES IS 100%.

The evidence proved conclusively that Carmen McCune's percentage of responsibility for J.M.'s injuries is 100%. Although Ms. McCune has now taken full responsibility for causing the accident, the relevant legal question is what percentage of responsibility is attributed to her "causing or contributing to cause in any way the harm" to J.M. "by negligent act or omission" or "by other conduct or activity that violates an applicable legal standard." TEX. CIV. PRAC. & REM. CODE § 33.003. Under this all-encompassing statutory standard, the evidence of Ms. McCune's percentage of responsibility for J.M.'s injuries is stark, including:

- her driving in excess of the maximum posted speed limit at a rate estimated by Plaintiffs' expert Jerry Wallingford to be between 60 mph and 71 mph, increasing the severity accident by as much as 40%, according to Mr. Wallingford;

- her driving so distractedly as not to see an 8,000 pound tractor on a sunny day with no adverse road conditions;

- her failing to brake or take evasive steering before hitting an 8,000 pound tractor directly in front her car's path;

- her failure to ensure J.M. was properly restrained in the TurboBooster;

- Chad McCune's admission that Carmen McCune's negligence was the proximate cause of J.M.'s injuries.

Nor have Plaintiffs established that any alleged defect in the TurboBooster's armrest had anything to do with J.M.'s injuries:

- Plaintiffs' experts Gary Whitman and Wayne Ross testified that there were no tests of any kind, including the sled tests on which they purported to rely, in which the armrest detached from the TurboBooster *and* the crash dummy's shoulders rolled out from under the shoulder belt restraint;

- both experts further admitted that no test in which the armrest separated during a sled test showed injury criteria indicative of an injury such as J.M.'s, or even one that came close to the level required by the applicable federal safety standard;

- Whitman testified that if he ran a test in which the armrest broke it was "very unlikely" that the Hybrid III's shoulders would roll out from under the restraint; and

- Ross agreed that there is no sled test that could be run that would validate Plaintiffs' theory that the armrest caused J.M.'s shoulders to roll out from under the shoulder belt restraint.

The overwhelming evidence in this case establishes that it was Carmen McCune's negligence in misusing the subject TurboBooster and in causing and increasing the severity of the accident that was the sole proximate cause of J.M.'s injuries. Her percentage of responsibility must be 100%.

**VI.   THE EVIDENCE CONCLUSIVELY SHOWS THAT CARMEN MCCUNE'S PERCENTAGE OF RESPONSIBILITY EXCEEDS 50%.**

For the reasons discussed above, the overwhelming evidence of Carmen McCune's negligence and the resulting accident compel the finding that Carmen McCune was more than 50% responsible for J.M.'s injuries.

**VII.   UNDER CHAPTER 33 OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE, THE RESPONSIBILITY OF CARMEN MCCUNE AS A "CLAIMANT" IN THIS CASE IS IMPUTED TO EVERY OTHER CLAIMANT IN THIS CASE, INCLUDING J.M. AND CHAD MCCUNE.**

The plain and unambiguous language Chapter 33 of the Texas Civil Practice & Remedies Code requires the responsibility of all claimants to be weighed collectively in determining whether the "claimant" bears more than 50% of responsibility for the injuries at issue so as to bar recovery against a defendant. TEX. CIV. PRAC. & REM. CODE §§ 33.001, 33.011.

The statute dictates that "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." *Id.* § 33.001. In 2003, Section 33.011 was amended to define the term "claimant" as "includ[ing]" not only "the person who was injured," *id.* § 33.011(1)(A), but also "*any person who is seeking has sought or could seek recovery of damages for the injury* . . . of that person," *id.* § 33.011(1)(B) (emphasis added). When this definition is

applied to the term "claimant," in Section 33.001, it is apparent that the responsibility of any person who is seeking recovery of damages for injury to a person must be assessed in determining whether the percentage responsibility of the "claimant" is greater than 50%. *See id.* §§ 33.011, 33.001.

Chad McCune, Carmen McCune, and J.M. all fall within the definition of the term "claimant" because each "is seeking" recovery for the injury of J.M. *Id.* § 33.011(1). Moreover, Ms. McCune has stipulated that she is a "claimant" for purposes of that statute. (*See* Joint Final Pretrial Order at 5.) Thus, if Carmen McCune's is more than 50% responsible for J.M.'s injuries, all claims asserted by "claimant"—J.M., Carmen McCune, and Chad McCune—against Graco are barred. In *Drilex Systems, Inc. v. Flores*, 1 S.W.3d 112 (Tex. 1999), the Texas Supreme Court interpreted a prior version of Section 33.011(1)'s definition of "claimant" to require that all plaintiff family members seeking recovery for the death of their father to be treated as a single claimant with respect to another section of that chapter—Section 33.012(a) and (b). In 2003, the legislature amended section 33.011 to define "claimant" not only as all those seeking recovery, but all those who "could seek" recovery for the injury to another. Here, there is no question that Mr. and Mrs. McCune, as J.M.'s parents, are seeking recovery for injuries he sustained. Therefore, they satisfy the definition of "claimant" under section 33.011.

**VIII. UNDER CHAPTER 33 OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE, WHEN THE CLAIMANT'S PERCENTAGE OF RESPONSIBILITY EXCEEDS 50%, NO RECOVERY CAN BE HAD AND DEFENDANT IS ENTITLED TO A TAKE-NOTHING JUDGMENT IN ITS FAVOR.**

Carmen McCune's claimant status is fatal to all Plaintiffs' ability to recover against Graco because all of the evidence and testimony presented at trial overwhelmingly demonstrated that Carmen McCune was more than 50% responsible for the injuries sustained by J.M. TEX. CIV. PRAC. & REM. CODE § 33.001 ("a claimant may not recover damages if his percentage of responsibility is greater than 50 percent.") Mrs. McCune's responsibility is imputed against J.M.

and Chad McCune for the purposes of determining whether the proportionate responsibility of the "claimant" exceeds 50%, *see id.* § 33.011(1), so Graco is entitled to a take-nothing judgment.

## IX. THERE IS NO LEGALLY SUFFICIENT EVIDENCE TO SUPPORT THE SUBMISSION OF ANY OF THE PLAINTIFFS' SIX ASSERTED THEORIES OF LIABILITY TO THE JURY.

### A. *Plaintiffs Have Not Produced Legally Sufficient Evidence to Support a Finding that a Design Defect in the TurboBooster Was a Producing Cause of J.M.'s Injuries.*

Plaintiffs have not produced legally sufficient evidence to establish any of the three required elements of their design defect claim: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); TEX. CIV. PRAC. & REM. CODE § 82.005(a). Plaintiffs have failed to provide sufficient evidence to support a jury verdict that the TurboBooster was "unreasonably dangerous." *Am. Tobacco Co. v. Grinnell*, 851 S.W.2d 420, 426–27 (Tex. 1997); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (holding that the unsupported *ipse dixist* opinion of an expert cannot constitute substantial evidence). As noted above, plaintiffs have failed to demonstrate a causal link between armrest separation and shoulder rollout, or armrest separation and injury-producing kinematics.

Further, Plaintiffs' evidence that Graco could have designed the TurboBooster so that the armrests would not detach does not mitigate their failure to produce substantial evidence that an armrest failure could cause a child to roll out from under the shoulder belt. The mere criticism that a product could have been designed better is "not sufficient for liability; the claimant must also show that the product was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *Hernandez v. Tokai Corp.*, 2 S.W.3d

251, 254–55 (Tex. 1999).  Because Plaintiffs have presented no such evidence here, their design defect claim cannot withstand judgment as a matter of law.

Plaintiffs also failed to produce legally sufficient evidence to demonstrate that a "safer design alternative" existed.  They lack sufficient empirical evidence to show that armrest separation actually causes shoulder rollout.  Because no evidence shows that shoulder rollout is caused by armrest separation, Plaintiffs' proposed safer alternative design would not have "prevented or significantly reduced the risk" of J.M.'s injury.  *Id.*

Plaintiffs' design defect claim also fails because, assuming *arguendo* that armrest separation does foster shoulder rollout, they have nonetheless failed to produce substantial evidence of a safer alternative design that cures that separation.  Plaintiffs have presented no expert testimony regarding what changes to screw boss thickness or dimension would result in a sufficiently high probability that the armrests would not detach so as to qualify as a safer alternative design under applicable law.  *See Smith v. Louisville Ladder Co.*, 237 F.3d 515, 519–20 (5th Cir. 2001) (holding that expert's testimony that proposed design alteration "would diminish the possibility" of injury was insufficient, as a matter of law, to establish a safer alternative design.").  Whitman's testimony that he looked at an unspecified number of TurboBoosters with the thickened, widened and lengthened screw boss alone is not sufficient to show a probability that the issue was resolved.  *See id.*

Finally, the evidence presented at trial was legally insufficient to show that the alleged armrest defect was a "producing" cause of J.M.'s injury.  The Texas Supreme Court has recognized that this third factor cannot be satisfied absent competent expert testimony and objective proof that a particular defect caused the injury to the Plaintiff.  *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004).  The testing relied upon by Plaintiffs establishes

that armrest separation does not cause shoulder rollout. However, Plaintiffs' theory is that shoulder rollout is what caused J.M.'s injuries. As Plaintiffs are unable to establish by substantial evidence a connection between the alleged defect—armrest separation—and his injuries, the evidence cannot support a jury verdict for Plaintiffs on their design defect claim.

## X. PLAINTIFFS' NEGLIGENCE CLAIMS ARE SUBSUMED BY THEIR STRICT LIABILITY CLAIMS FOR DESIGN DEFECT AND MARKETING DEFECT.

Plaintiffs are barred as a matter of law from recovering on their negligence causes of action against Graco where those causes of action are premised on the same defect theories that underlie their strict liability claims because, where "'the allegations and evidence are directed to whether the product is 'unreasonably dangerous' and no other potentially negligent conduct is alleged or the subject of evidence,' the negligence theories are subsumed by the strict liability theories asserted." *Romo v. Ford Motor Co.*, ___ F. Supp. 2d ___, 2011 WL 2836315, at *6 (S.D. Tex. June 24, 2011) (citation omitted); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. Ct. App.—Dallas 2004, pet. denied); *see Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1998). Alternatively, plaintiffs' negligence claims are barred because they have not established the underlying marketing or design defect required under Texas law for a finding of liability on their negligence theories.

CONCLUSION

For the aforementioned reasons, Graco prays for a judgment as a matter of law on all issues.

Respectfully submitted,

/s/ Heidi Oertle
Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois 60606
312-258-5500
312-258-5600 facsimile

John B. Greer III
Texas Bar No. 08420000
Greer & Miller
3512 Texas Boulevard
Texarkana, Texas 75503
(903) 791-9300
(903) 791-9301 facsimile

Jeffrey S. Patterson
Hartline Dacus Barger Dreyer LLP
6688 N. Central Expressway, Suite 1000
Dallas, Texas 75206
(214) 346-3701
(214) 267-4201 facsimile

ATTORNEYS FOR DEFENDANT
GRACO CHILDREN'S PRODUCTS INC.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on August 18, 2011, she filed the foregoing document on all counsel of record via the Court's ECF system.

.

/s/ Heidi Oertle
Heidi Oertle